UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AARON WILLIAMS,<br><br>      Plaintiff,<br><br>  v.<br><br>PILLPACK LLC,<br><br>      Defendant. | C19-5282 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Plaintiff's Motion for Class Certification, docket no. 29. Having reviewed all papers and evidence filed in support of the motion, and in opposition,[1] the Court enters the following Order:

**Background**

**1. Defendant's Telemarketing Campaign**

Defendant PillPack LLC is a full-service pharmacy that delivers medications in multi-dose packaging to patients' homes. Swindle Decl. at ¶ 2 (docket no. 62). In March 2018, Defendant engaged a company called Performance Media Strategies, Inc. ("Performance Media") to telemarket its services. *See* Hunt Decl. at ¶ 2 (docket no. 63);

---

[1] Because the facts and legal arguments are adequately presented in the papers submitted, the Court concludes that oral argument is not necessary.

ORDER - 1

Anderson Decl. at ¶¶ 4–5 (docket no. 34).  The following month, Defendant executed a PillPack Insertion Order ("Agreement"), hiring Performance Media as an independent contractor to generate live customer leads and transfer those leads to Defendant's call center ("Campaign").  Agreement, Ex. 28 (docket no. 128).  Around that time, Defendant was purportedly informed that the calls "would be placed using a prerecorded voice system which is sometimes described . . . as an Avatar or an IVR (interactive voice response) system."  Anderson Decl. at ¶ 7.  Defendant was also purportedly informed that a third party—a company called Prospects DM—would place the calls.  *See id.*[2]

Throughout the Campaign, from March 2018 to June 2019, Performance Media engaged Prospects DM to place calls and transfer them to Defendant's call center.  Anderson Decl. at ¶ 8.  Prospects DM obtained the called parties' contact information from three companies:  Little Brook Media, Sharecare Inc., and Yodel Technologies LLC.  *See* Grant Decl. at ¶ 4, Ex. 34 to Sealed Motion (docket no. 37-17).[3]  Yodel obtained at least some of that contact information from a fourth company, Fluent Inc.  *See* Barsky Decl. at ¶ 6 (docket no. 69).  Those companies collectively operate dozens of websites on which individuals may consent to be called by the companies or their "Marketing Partners."  *See id.* at ¶¶ 4, 7–8; Hebard Decl. at ¶ 2 (docket no. 64).

2.     **Calls to Plaintiff**

In March 2019, Plaintiff Aaron Williams received a prerecorded call advertising a pharmacy service on his cell phone and was transferred to Defendant's call center.  *Id.* at

---

[2] Defendant denies any knowledge of Prospects DM.  *See* Hunt Decl. at ¶ 5.

[3] The Declaration of Joshua Grant, Prospects PM's principal, was filed under seal, but the parties cite or quote this declaration throughout their briefs, which were not filed under seal.  *See, e.g.*, Motion (docket no. 29 at 12), Response (docket no. 60 at 11, 23).

ORDER - 2

¶ 7. After Plaintiff asked for Defendant's name and address, he was transferred to Defendant's customer care line. *Id.*; Call Transcript, Ex. 12 to Hebard Decl. Plaintiff told Defendant's employee to "please stop calling people with the automated phone call" and that "[i]t's not appropriate to call people on their cell phones for marketing purposes." Call Transcript, Ex. 13 to Hebard Decl. Plaintiff also warned that Defendant "is on notice that . . . if [he] receive[s] another phone call [he] will sue." *Id.* According to Defendant, when Plaintiff was "transferred over to the customer care team," it lost the ability "to track" Plaintiff. Swindle Dep., Ex. 4 to Fairchild Decl. (docket no. 61 at 27).

In April 2019, Plaintiff received another call on his cell phone, which "appeared to repeat the same prerecorded message [he] had received" earlier. Williams Decl. at ¶ 8. Defendant maintains that Plaintiff's number is associated with a person named Michael Morgan, who consented to receive calls to that number on one of Yodel's websites in April 2018. *See* Sponsler Expert Report at ¶¶ 20–21, 24, Ex. 10 to Fairchild Decl. Plaintiff testified that he did not "enter or authorize anyone else to enter [his] cell number or the name Michael Morgan into [that] website." Williams Decl. at ¶ 9. Plaintiff also submitted evidence that he has used that cell number continuously since 2008, and that he registered the number on the National Do Not Call Registry ("DNC Registry") in late 2010. *Id.* at ¶¶ 4–6 & Exs. 1–3 (docket no. 33).

### 3. Plaintiff's Class Action

Plaintiff filed a class action complaint against Defendant, asserting two causes of action under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*: (1) a violation of § 227(b)(1) for calls made using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice and (2) a violation of § 227(c) for

ORDER - 3

calls placed to numbers listed on the DNC Registry. *See* First Amended Complaint (docket no. 6). In July 2020, Plaintiff filed this Motion for Class Certification ("Motion"), docket no. 29.[4] The Court deferred ruling on the Motion, after requesting that the parties file supplemental briefing; and it granted the parties' motions to file supplemental evidence in support of, or in opposition to, the Motion. *See* Minute Orders (docket nos. 131, 133). Having been fully advised, the Court now rules as follows:

**Discussion**

    **1.**    **Class Certification Standard**

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), the party seeking certification must show, first, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Plaintiff relies on Rule 23(b)(3), which requires him to show that "questions of law or fact common to class members predominate over any questions affecting only

---

[4] Plaintiff has also moved, *see* Reply (docket no. 90-1 at 7–11), to strike the Declarations of Daniel J. Barsky, docket no. 69 & Ex. 1 to docket no. 79, and portions of the Declaration of Sarah Hebard, docket no. 64 & Exs. 2–10. In granting Defendant's motion for leave to file Barsky's Supplemental Declaration, the Court denied Plaintiff's motion to strike in part. *See* Minute Order (docket no. 133). The Court now DENIES Plaintiff's motion to strike the remaining declarations and exhibits.

ORDER - 4

individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[5]

### 2. Plaintiff's Proposed Class and Sub-Class

Plaintiff seeks to certify a proposed class ("Class") and transfers subclass ("Subclass") as follows:

> All persons or entities within the United States who between March 13, 2018 and June 16, 2019, received a non-emergency telephone call promoting goods or services on behalf of PillPack, LLC, as part of the PillPack Performance Media campaign:
>
> (i) to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or prerecorded voice; or
>
> (ii) to a cellular or residential telephone number that had been registered on the national Do Not Call Registry for at least 31 days and who received more than one call as part of the PillPack Performance Media campaign within any twelvemonth period.
>
> Transfers Sub-Class: All Class members who were transferred at least once to a PillPack call center on the DNIS [Dialed Number Identification Service] 866-298-0058.

Motion (docket no. 29 at 19).

### 3. Rule 23(a)'s Requirements Are Satisfied.

#### a. Numerosity

To demonstrate numerosity under Rule 23(a)(1), Plaintiff relies on evidence that there are at least 419,334 members of the proposed Class who received one or more calls using an ATDS or an artificial or prerecorded voice, including at least 35,535 members of

---

[5] Defendant appears to argue that Plaintiff must satisfy an implied threshold "ascertainability" prerequisite. Response (docket no. 60 at 29–31). To the extent Defendant argues that Plaintiff must demonstrate "administratively feasible" ways to identify class members, *see, e.g., id.* at 22, the Ninth Circuit has rejected that requirement. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124–25, 1124 n.4 (9th Cir. 2017). Nor does the Court agree that the proposed Class and Subclass definitions lack clear or objective parameters. *See id.* at 1124 n.3 & n.4.

ORDER - 5

the proposed Subclass who were transferred to Defendant's call center at least once. *See* Hansen Rebuttal Report at ¶¶ 4–6, 16, 19, Ex. 11 to Terrell Decl. (docket no. 30-11). Plaintiff also presented evidence that there are at least 78,047 members of the proposed Class who received one or more calls to a residential telephone number listed on the DNC Registry, including 4,875 members of the proposed Subclass who were transferred to Defendant's call center at least once. Verkhovskaya Rebuttal Report at ¶¶ 60–65 (docket no. 30-14). "Joinder of so many persons would undoubtedly be impractical," *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1304 (D. Nev. 2014), and Defendant does not challenge this point.

      **b.**      **Commonality**

"[T]he test of commonality" under Rule 23(a)(2) "is subsumed by the predominance requirement" under Rule 23(b)(3). *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). "Predominance requires at least one common question, as does Rule 23(a)(2), but also requires that the common question, or questions, outweigh the noncommon questions." *Kristensen*, 12 F. Supp. 3d at 1304; *see* 1 William Rubenstein, Newberg on Class Actions § 3:27 (5th ed. 2020 update). The Court analyzes whether the commonality test is met within its discussion of Rule 23(b)(3). *See infra* Section 4(a).

      **c.**      **Typicality**

Plaintiff must also show that his "claims or [the] defenses . . . are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members

ORDER - 6

have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted). "Typicality refers to the nature of the claim or defense . . . not to the specific facts from which it arose or the relief sought." *Id*.

Plaintiff submitted evidence that he and the other Class members were called by the same caller on behalf of Defendant, during the same time period, using the same ATDS or prerecorded voice, or on a number registered on the DNC Registry (or all of the above). *See* Hansen Rebuttal Report at ¶¶ 4–6, 16, 19; Verkhovskaya Rebuttal Report at ¶¶ 60–65. Plaintiff also submitted evidence that the members of the Subclass, like Plaintiff, were transferred to Defendant's call center at least once. *See* Hansen Rebuttal Report at ¶¶ 6, 19; Verkhovskaya Rebuttal Report at ¶ 61. Likewise, Plaintiff's purported injury is the same as the Class members. *See* 47 U.S.C. §§ 227(b)(3), 227(c)(5).

Defendant responds that the typicality requirement is not satisfied because Plaintiff was called on a cell phone number based on consent provided by a different individual, Michael Morgan; whereas other Class members consented to be called "through other channels, . . . which indisputably obtained TCPA-compliant 'prior express written consent' to receive autodialed or prerecorded voice marketing calls." Response (docket no. 60 at 27). Defendant, however, has not presented evidence that any of the other Class members, let alone Michael Morgan, provided TCPA-compliant consent. As explained below, *see infra* Section 4(a)(i), the present record shows that some of the Class members may have consented to be called by third parties—but not by or on behalf of *Defendant*, or *before* the Class members were actually called. *See Kristensen*, 12 F. Supp. 3d at 1305, 1307–08 (concluding typicality requirement was satisfied despite defendant's express consent defense); *cf. Berman v. Freedom Fin. Network, LLC*, 400 F.

ORDER - 7

Supp. 3d 964, 986–87 (N.D. Cal. 2019) (concluding plaintiff's "claims [were] reasonably coextensive with class members' claims," but ruling that "litigation of the express consent and mandatory arbitration defenses . . . threaten[ed] to overwhelm other issues").

Defendant also points out that the website on which Plaintiff's cell number was allegedly inputted is one of more than 50 websites operated by Yodel, which is one of three companies that sold Prospects DM the Class members' contact information. *See* Hebard Decl. at ¶ 2 & Ex. 1. Yodel, in turn, purchased at least some of the Class members' contact information from Fluent. *See* Barsky Supp. Decl. at ¶¶ 3–8, Ex. 1 to Motion (docket no. 79). While it is unclear whether Plaintiff's contact information was sourced from Fluent or Yodel, it is undisputed that his contact information was *not* sourced from Little Brook Media or Sharecare, as depicted in the following chart:



The Court concludes that resolving certain liability issues with respect to Plaintiff's claims will not necessarily resolve such issues with respect to the claims of the proposed Class members whose contact information was obtained from Little Brook Media or Sharecare. *See* Response (docket no. 60 at 27); *see also McCurley v. Royal Seas Cruises*, 331 F.R.D. 142, 161 & n.10 (S.D. Cal. 2019) (noting plaintiffs narrowed

ORDER - 8

the proposed class based on the websites on which they allegedly provided consent), *amended by* No. 17-cv-00986, 2020 WL 4582686 (S.D. Cal. Aug. 10, 2020) (decertifying class in part, because Prospects DM could not produce accurate call records).  If the Class is limited to the called parties whose contact information was obtained from Yodel or Fluent, like Plaintiff, Defendant's consent defense would presumably be the same or similar for all Class members.  *See Berman*, 400 F. Supp. 3d at 987.  The Court will therefore narrow Plaintiff's proposed class definition to include only the called parties whose telephone number was obtained by Prospects DM from Yodel or Fluent.  *See* Motion (docket no. 29 at 19).

### d. Adequacy

Plaintiff must further show that he will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine adequacy, the Court "resolve[s] two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citation omitted).  Defendant does not challenge the adequacy of Plaintiff's counsel to prosecute this action on behalf of the Class.  *See infra* Section 5.  With respect to Plaintiff, Defendant merely raises the same arguments as raised in its typicality challenge, *see* Response (docket no. 60 at 27–28), which the Court has partially resolved by narrowing the proposed Class definition.  The Court has not otherwise identified any conflicts of interest between Plaintiff and the other Class members, and it finds that Plaintiff is motivated to vigorously prosecute the action.  *See*

Motion (docket no. 29 at 23–24).  The Court therefore appoints Plaintiff Aaron Williams to serve as Class Representative.

**4.      Rule 23(b)(3)'s Requirements Are Satisfied.**

   **a.      Predominance**

"[T]he predominance inquiry under Rule 23(b)(3) asks whether 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'"  *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).  The common questions must have the "capacity . . . to generate common answers apt to drive the resolution of the litigation." *Id.* (quoting *Dukes*, 564 U.S. at 350).

Plaintiff identifies several common issues that will generate common answers, including: (1) whether Defendant can be held liable for the calls placed by Prospects DM, (2) whether the calls used an ATDS or a prerecorded voice, (3) whether the calls were made to numbers on the DNC Registry, (4) whether the called parties gave valid consent, and (5) whether Defendant's actions were negligent or "willful and knowing," affecting the amount of statutory damages at issue.  The Court agrees that these common questions have the capacity to generate common answers apt to drive the resolution of this action.

Defendant responds that some of these issues will require individualized inquiry and points to other individualized issues that might predominate, including: (1) whether the Class members provided valid consent, (2) whether they were the subscribers or general users of their numbers, (3) whether the calls used an ATDS or a prerecorded

voice, (4) whether the calls were made to residential lines, and (5) whether the Class members registered their numbers on the DNC Registry.  The Court addresses each issue.

### i.  Whether Class members gave valid consent

The TCPA exempts from liability calls made with the "prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A).  The statute authorizes the Federal Communications Commission ("FCC") to prescribe regulations to implement the relevant requirements of the TCPA.  *Id.* §§ 227(b)(2), (c)(1)–(4).  In 2012, the regulations were amended to require that a call using an ATDS or a prerecorded voice—which "introduces an advertisement or constitutes telemarketing," or is made to a "residential line"—must have been made with the "prior express written consent of the called party."  47 C.F.R. §§ 64.1200(a)(2), (a)(3); *see Rules and Regulations Implementing the TCPA of 1991*, 27 FCC Rcd 1830, 1838 (2012).  "[P]rior express consent is an affirmative defense, not an element of a TCPA claim."  *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 n.3 (9th Cir. 2017).

For purposes of this Motion, the Court considers whether "[t]he consent defenses that [Defendant] has advanced and for which it has provided supporting evidence may be sufficiently similar or overlapping to allow [Plaintiff] to satisfy the predominance requirement of Rule 23(b)(3) with respect to those defenses."  *True Health*, 896 F.3d at 932.  "If so, a class or subclass of plaintiffs to whom such defenses apply may be certified, provided of course that the other requirements of Rule 23 are also satisfied."  *Id*.

Defendant concedes that it carries the burden to show that proposed Class members consented, in writing, to receive the telemarketing calls at issue.  *See* Defendant's Supp. Brief (docket no. 139 at 2, 6).  Defendant nonetheless argues that

ORDER - 11

individual-consent inquiry is necessary because "Prospects DM called consumers based on consent that was provided on numerous different websites, with different user interfaces and different consent language." Response (docket no. 60 at 18). A review of Fluent's and Yodel's websites, however, reveals that they all contain the same or similar opt-in forms with some variation of the following message:

**CONFIRM YOUR INFORMATION**
to finish your registration

FIRST NAME        LAST NAME

EMAIL             ZIP CODE

DATE OF BIRTH     PRIMARY PHONE
/ /               - -

(You must be 18 years or older)

By checking the box below I request and consent to receive phone sales calls and text messages - Msg and data rates may apply - from CAC and our **Marketing Partners** on the landline or mobile number I provided even if I am on a federal or State do not call registry. I understand these calls may be generated using an autodialer and may contain pre-recorded messages and that consenting is not required to participate in the offers promoted.

For SMS message campaigns: Text STOP to stop and HELP for help. Msg & data rates may apply. Periodic messages; max. 30/month.

☐ **I CONFIRM** that all of my information is accurate and consent to be called and texted as provided above.

**Continue »**

Fluent Website Screenshot, Barsky Decl. at ¶ 7; *see* Yodel Website Screenshots, Hebard Decl. at ¶ 2 & Exs. 2–10. The proposed Class members apparently consented only through these website opt-in forms. Determining whether that method of consent is valid would not require case-by-case analysis, as opposed to consent based on "individual communications and personal relationships." *True Health*, 896 F.3d at 932 (concluding that the predominance requirement is satisfied if "there is little or no variation" in the

ORDER - 12

consent method). Further, a review of Fluent's and Yodel's procedures to obtain such consent should produce a common answer. *See Kristensen*, 12 F. Supp. 3d at 1307.

More critically, Defendant does not dispute that during the relevant period, the website opt-in forms failed to list "PillPack" as a Marketing Partner who could call the proposed Class Members. *See* Defendant's Supp. Brief (docket no. 139 at 2–5); *see also* Swindle Dep., Ex. 9 to Terrell Decl. (docket no. 30-9 at 18–19). Defendant argues that it may avoid TCPA liability so long as the called parties provided *written* consent to be called by Prospects DM, and that once called, the called party need only provide *oral* consent to be transferred to Defendant. *See* Defendant Supp. Brief (docket no. 139 at 2). The Court cannot identify any language in the TCPA or the regulations to support that argument, as the regulations expressly require that callers inform the called parties that their consent will "authorize[] the *seller* to deliver *or cause to be delivered* . . . telemarketing calls using an [ATDS] or an artificial or prerecorded voice." *See* 47 C.F.R. § 64.1200(f)(8)(i)(A) (emphasis added);[6] *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("[C]onsent to receive promotional material by [a third party] . . . cannot be read as consenting to the receipt of [defendant's] *promotional material*." (emphasis added)); *Van Patten*, 847 F.3d at 1046 ("[T]he FCC has established no rule that a consumer who gives a phone number to a company has consented to be contacted for any reason.").

---

[6] Defendant relies, confusingly, on cases involving consent that expressly authorizes *sellers*, or their affiliates or agents, to place the calls. *See, e.g.*, *Van Patten*, 847 F.3d at 1046. Here, there is no dispute that Defendant is the "seller" whose pharmacy services were being advertised, *see* 47 C.F.R. § 64.1200(f)(9). Moreover, Defendant disclaims any agency relationship with Prospects DM. *See* Defendant's Supp. Brief (docket no. 139 at 5).

ORDER - 13

Even assuming that written consent to be called by Prospects DM was sufficient for purposes of the TCPA, Defendant has not presented evidence that the website opt-in forms listed Prospects DM (or one of its fictitious names) as a Marketing Partner *before* the Class members were called.  *See* Fluent Website Screenshots, Barsky Decl. at ¶¶ 7–8 (failing to indicate the date on which the screenshot of the Marketing Partners webpage was captured); Yodel Website Screenshots, Hebard Decl. at ¶ 2 & Exs. 2–10 (same).  Indeed, the record reveals that Prospects DM did not register one of the fictitious names it used in the Campaign until July 2018, nearly four months after the Campaign was launched.  Registration Certificate, Ex. 6 to Fairchild Decl.  Perhaps it goes without saying, but prior express consent to call a particular telephone number must be given before the call in question is placed.  *See Meyers v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012).  Defendant has not identified a single instance in which a proposed Class member gave *prior* written consent.

On the current record, the Court concludes that the lack-of-consent issue has the capacity to generate a common answer.  *See Kristensen*, 12 F. Supp. 3d at 1307.

    **ii.**  **Whether the Class members were the subscribers or general users of the called numbers**

Defendant also argues that Plaintiff has not proposed any reliable method to determine whether the Class members were the subscribers or regular users of the phone numbers called.  Response (docket no. 60 at 21–22).  Plaintiff's expert has proposed a "reverse-append" process to identify Class members.  Verkhovskaya Expert Report at ¶¶ 51–59 (docket no. 30-12).  The Court concludes that Plaintiff's proposed methodology is an adequate starting point to identify the aggregate number of TCPA violations in this case.  *See N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1171 (9th Cir. 2020)

(endorsing "a reverse lookup to identify the current subscriber" to ensure telemarketer's TCPA compliance). To the extent that Defendant presents evidence that certain Class members are not the subscribers or customary users of the called numbers, the Court could adopt measures to filter out those Class members. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 244–45 (D. Ariz. 2019); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017).

### iii. Whether artificial or prerecorded voices were used

Defendant further argues that individualized inquiries and proof will be necessary to determine whether any particular call was placed using an artificial or prerecorded voice. Response (docket no. 60 at 23). Defendant relies on evidence that Prospects DM employees "generally play[ed] recorded snippets to conduct the call[s], but sometimes interject[ed] with live voice or conduct[ed] the entire call with live voice." *Id*. Defendant, however, does not identify even one call in which a live voice was used exclusively. From the beginning of the Campaign, Defendant was aware that "an avatar recording" was being used to make the calls. Email, Ex. 21 to Terrell Decl. (docket no. 30-21 at 2). One of Defendant's employees testified that he understood that a "prerecorded person" would "introduce the service," that an agent would select "different prerecorded responses," and then "transfer [the call] over to PillPack." Seastrand Dep., Ex. 23 to Terrell Decl. (docket no. 30-23 at 5–6); *see also* Rust Murray Decl., Exs. F–G (docket no. 113) (call recordings showing that Defendant was on notice that a "robocaller" or "recorded thing" was being used during the Campaign).

Nor does Defendant address its potential liability for the calls made using a ViciDial dialing system—a system that is, in Plaintiff's expert's opinion, an "ATDS," or

ORDER - 15

"a predictive dialer" with "the capacity to dial stored numbers automatically." Hansen Expert Report at ¶¶ 21, 28–29, Ex. 10 to Terrell Decl. (docket no. 30-10). The Court concludes that, on the present record, individual inquiry is not necessary to resolve whether the calls at issue were conducted using an ATDS or a prerecorded voice. Whether such technologies actually violate the TCPA is yet another issue capable of generating a common answer that is apt to drive the resolution of this litigation.

### iv. Whether residential lines were called

Defendant likewise maintains that Plaintiff has not proposed a reliable means of identifying residential phone numbers without individual inquiry. Response (docket no. 60 at 23–25). Plaintiff's expert excluded from the list of proposed Class members "all telephone numbers that were associated with any types of business and/or government" using LexisNexis data, and proposed other methods to "cross-check the business identification process." Verkhovskaya Expert Report at ¶¶ 43–50 & n.2; *see also* Verkhovskaya Rebuttal Report at ¶¶ 28–36; *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623, 2020 WL 7391299, at *6 (N.D. Cal. July 22, 2020) ("[S]everal courts have approved of [] Verkhovskaya's [method] . . . as this type of data is reasonably relied upon by experts in the field."). Plaintiff's method reliably excludes non-residential numbers from the proposed Class list.

### v. Whether the numbers were properly registered on the DNC registry

Defendant next argues that there is no reliable method of determining whether the Class members registered their own telephone numbers on the DNC Registry, which is necessary to assert a TCPA claim. *See* Response (docket no. 60 at 26). The Court does not read the TCPA regulations so narrowly as to require a called party to personally

ORDER - 16

register his or her own number on the DNC Registry.  As the regulations also clarify, "do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the *consumer* or the telephone number is removed from the database administrator." 47 C.F.R. § 64.1200(c)(2) (emphasis added).  The Court is also persuaded by the Eleventh Circuit's decision in *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019), which noted that Article III standing is satisfied where, as here, "the class [is] based on calls to individuals on the [DNC Registry], since those whose numbers are on the Registry and nevertheless received marketing calls suffered an injury that is traceable to [defendant's] misconduct." *Id.* at 1271; *see id.* at 1276 (identifying individualized standing questions where the class was based on an *internal* do-not-call list).  Using the DNC Registry, which is maintained by the federal government, Plaintiff can reliably identify the aggregate number of Class members who received the calls at issue.  *See Briseno*, 844 F.3d at 1132.

In sum, Plaintiff has identified several common issues that are susceptible to classwide proof, and which have the capacity to generate common answers that will drive the resolution of this action.  The individualized issues raised by Defendant do not threaten to overwhelm these common issues.  To the extent Defendant develops evidence in support of its defenses, necessitating individual inquiry, the Court may take remedial action, including decertifying the Class.  *See Kristensen*, 12 F. Supp. 3d at 1308.

    **b.**  **Superiority**

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In this case, Class members do not have a strong interest in controlling the prosecution or defense in

ORDER - 17

individual actions, *see* Fed. R. Civ. P. 23(b)(3)(A), as the statutory "damages suffered by each putative class member are not large." *Kristensen*, 12 F. Supp. 3d at 1308 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001)).  Although district courts have reached different conclusions on this issue, the Court is of the opinion that "[t]he $500 statutory damage amount for each violation, even if increased to $1,500 for willful violations, is insufficient to incentivize individual actions." *Id*.  Plaintiff also represents that there are "no other cases challenging the calls at issue here."  Motion (docket no. 29 at 31); *see* Fed. R. Civ. P. 23(b)(3)(B).  Nor is there any indication that concentrating the litigation of claims in this Court would be undesirable, or that managing this class action poses unique difficulties.  *See* Fed. R. Civ. P. 23(b)(3)(C)–(D).  The Court therefore concludes that a class action is superior to the other available methods for adjudicating this case.

    **5.**    **Class Counsel**

Defendant does not challenge the appointment of Plaintiff's counsel as Class Counsel.  After reviewing counsels' qualifications and their ability to fairly and adequately represent the interests of the Class, *see* Fed. R. Civ. P. 23(a)(4), 23(g), the Court approves Terrell Marshall Law Group PLLC, Smith & Dietrich Law Offices PLLC, and Paronich Law PC as Class Counsel.  *See* Terrell Decl. at ¶¶ 2–7 (docket no. 30); Smith Decl. ¶¶ 2–9 (docket no. 32); and Paronich Decl. at ¶¶ 3–7 (docket no. 31).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    Plaintiff's Motion to Certify Class, docket no. 29, is GRANTED in part.

(2)    Under Rule 23(c), the following amended Class and Subclass are certified:

ORDER - 18

All persons or entities within the United States, whose telephone number was obtained by Prospects DM from Yodel Technologies, LLC or Fluent, Inc., and who between March 13, 2018, and June 16, 2019, received a non-emergency telephone call promoting goods or services on behalf of PillPack, LLC, as part of the PillPack Performance Media campaign:

(a) to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or prerecorded voice; or

(b) to a cellular or residential telephone number that had been registered on the national Do Not Call Registry for at least 31 days and who received more than one call as part of the PillPack Performance Media campaign within any twelvemonth period.

Transfers Sub-Class: All Class members who were transferred at least once to a PillPack call center on the Dialed Number Identification Service at: 866-298-0058.

(3) Plaintiff Aaron Williams is appointed as Class Representative.

(4) Under Rule 23(g), Terrell Marshall Law Group PLLC, Smith & Dietrich Law Offices PLLC, and Paronich Law PC are appointed as Class Counsel.

(5) Plaintiff's Motion to Strike, *see* docket no. 90-1 at 7–11, is DENIED.

(6) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 12th day of February, 2021.

　　　　　　　　　　　　　　　　　　　　　　　／s／ Thomas S. Zilly
　　　　　　　　　　　　　　　　　　　　　　　Thomas S. Zilly
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

ORDER - 19