1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AARON WILLIAMS, on behalf of himself
and all others similarly situated,

                        Plaintiff,

      v.

PILLPACK, LLC,

                        Defendant.

CASE NO. 19-5282 RJB

ORDER

This matter comes before the Court on Plaintiffs' Motion to Modify the Class Definition (Dkt. 178), Defendant PillPack, LLC's ("PillPack") Motion to Decertify the Class (Dkt. 187) PillPack's motion to limit the class definition (Dkt. 187), Plaintiffs' Amended Motion to Approve Notice Plan (Dkt. 171), Plaintiffs' Second Amended Motion to Approve Notice Plan (Dkt. 217), and the Plaintiffs' Motion to File Documents under Seal or in Open Court (Dkt. 214). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

In this class action, the Plaintiffs allege that PillPack violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. §227 *et. seq.* Dkt. 6. The class was certified on

February 12, 2021.  Dkt. 140.  Plaintiffs filed their original Motion to Approve Notice Plan on

March 12, 2021.  Dkt. 145.  After the motion was continued so that the parties could engage in

further discovery, with leave of court, the Plaintiffs filed their Amended Motion to Approve

Notice Plan (Dkt. 171).  Their original motion (Dkt. 145) was stricken as moot.  Dkt. 173.  As a

result of new information gained through discovery, the Plaintiff now moves to modify the class

definition (Dkt. 178) and in his reply proposed another variation in the class definition (Dkt.

195).  PillPack was given an additional opportunity to respond and did so (Dkt. 205).  The day

these motions were noted for consideration, the Plaintiffs filed their Second Amended Motion to

Approve Notice Plan.  Dkt. 217.

    For the reasons provided below, the Motion to Modify the Class Definition (Dkt. 178 as

amended in Dkt. 195) should be denied without prejudice, PillPack's motion to decertify the

class (Dkt. 187) granted, PillPack's motion to limit the class definition (Dkt. 187) should be

denied without prejudice, and the Amended Motion to Approve Notice Plan (Dkt. 171) and

Second Amended Motion to Approve Notice Plan (Dkt. 217) should be denied as moot.  The

Plaintiffs' Motion to File Documents Under Seal or in Open Court (Dkt. 214) should be granted,

in part, and denied, in part.

## I.  <u>FACTS</u>

    The facts and procedural history in the February 12, 2021 Order (Dkt. 140) are as follows:

> Defendant PillPack LLC is a full-service pharmacy that delivers medications in
> multi-dose packaging to patients' homes. Swindle Decl. at ¶ 2 (docket no. 62). In
> March 2018, Defendant engaged a company called Performance Media Strategies,
> Inc. ("Performance Media") to telemarket its services. *See* Hunt Decl. at ¶ 2
> (docket no. 63); Anderson Decl. at ¶¶ 4–5 (docket no. 34). The following month,
> Defendant executed a PillPack Insertion Order ("Agreement"), hiring
> Performance Media as an independent contractor to generate live customer leads
> and transfer those leads to Defendant's call center ("Campaign"). Agreement, Ex.
> 28 (docket no. 128). Around that time, Defendant was purportedly informed that
> the calls "would be placed using a prerecorded voice system which is sometimes

described . . . as an Avatar or an IVR (interactive voice response) system." Anderson Decl. at ¶ 7. Defendant was also purportedly informed that a third party—a company called Prospects DM—would place the calls. *See id*. [Defendant denies any knowledge of Prospects DM. *See* Hunt Decl. at ¶ 2.] Throughout the Campaign, from March 2018 to June 2019, Performance Media engaged Prospects DM to place calls and transfer them to Defendant's call center. Anderson Decl. at ¶ 8. Prospects DM obtained the called parties' contact information from three companies: Little Brook Media, Sharecare Inc., and Yodel Technologies LLC. *See* Grant Decl. at ¶ 4, Ex. 34 to Sealed Motion (docket no. 37-17).3 Yodel obtained at least some of that contact information from a fourth company, Fluent Inc. *See* Barsky Decl. at ¶ 6 (docket no. 69). Those companies collectively operate dozens of websites on which individuals may consent to be called by the companies or their "Marketing Partners." *See id.* at ¶¶ 4, 7–8; Hebard Decl. at ¶ 2 (docket no. 64).

In March 2019, Plaintiff Aaron Williams received a prerecorded call advertising a pharmacy service on his cell phone and was transferred to Defendant's call center. *Id.* at ¶ 7. After Plaintiff asked for Defendant's name and address, he was transferred to Defendant's customer care line. *Id.*; Call Transcript, Ex. 12 to Hebard Decl. Plaintiff told Defendant's employee to "please stop calling people with the automated phone call" and that "[i]t's not appropriate to call people on their cell phones for marketing purposes." Call Transcript, Ex. 13 to Hebard Decl. Plaintiff also warned that Defendant "is on notice that . . . if [he] receive[s] another phone call [he] will sue." *Id.* According to Defendant, when Plaintiff was "transferred over to the customer care team," it lost the ability "to track" Plaintiff. Swindle Dep., Ex. 4 to Fairchild Decl. (docket no. 61 at 27).

In April 2019, Plaintiff received another call on his cell phone, which "appeared to repeat the same prerecorded message [he] had received" earlier. Williams Decl. at ¶ 8. Defendant maintains that Plaintiff's number is associated with a person named Michael Morgan, who consented to receive calls to that number on one of Yodel's websites in April 2018. *See* Sponsler Expert Report at ¶¶ 20–21, 24, Ex. 10 to Fairchild Decl. Plaintiff testified that he did not "enter or authorize anyone else to enter [his] cell number or the name Michael Morgan into [that] website." Williams Decl. at ¶ 9. Plaintiff also submitted evidence that he has used that cell number continuously since 2008, and that he registered the number on the National Do Not Call Registry ("DNC Registry") in late 2010. *Id.* at ¶¶ 4–6 & Exs. 1–3 (docket no. 33).

Dkt. 140, at 3.  The February 12, 2021 Order certified a class and subclass as follows:

Class: All persons or entities within the United States, whose telephone number was obtained by Prospects DM from Yodel Technologies, LLC or Fluent, Inc., and who between March 13, 2018, and June 16, 2019, received a non-emergency telephone call promoting goods or services on behalf of PillPack, LLC, as part of the PillPack Performance Media campaign:

1

2

        (a) to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or prerecorded voice; or

3

4

        (b) to a cellular or residential telephone number that had been registered on the national Do Not Call Registry for at least 31 days and who received more than one call as part of the PillPack Performance Media campaign within any twelvemonth period.

5

6

        Transfers Sub-Class: All Class members who were transferred at least once to a PillPack call center on the Dialed Number Identification Service at: 866-298-0058.

7

8

Dkt. 140.  In its discussion on typicality, the Court noted "it was undisputed that [Plaintiff

9

Williams'] contact information was not sourced from Little Brook Media or Sharecare." *Id.*  It

10

also noted that PillPack raised a defense that the parties called consented to the calls on websites

11

operated by entities other than Yodel and Fluent.  *Id.*  The Court noted that "Defendant, however,

12

has not presented evidence that any of the other Class members, let alone Michael Morgan,

13

provided TCPA-compliant consent."  *Id.*, at 7.  It further held that "the present record shows that

14

some of the Class members may have consented to be called by third parties - but not by or on

15

behalf of *Defendant*, or *before* the Class members were actually called."  *Id.* (*emphasis in*

16

*original*).  In certifying a class and subclass which was smaller than that proposed by the

17

Plaintiff and in order to address PillPack's concern, the Order explained that:

18

        The Court concludes that resolving certain liability issues with respect to Plaintiff's claims will not necessarily resolve such issues with respect to the claims of the proposed Class members whose contact information was obtained from Little Brook Media or Sharecare.

19

20

        If the Class is limited to the called parties whose contact information was obtained from Yodel or Fluent, like Plaintiff, Defendant's consent defense would presumably be the same or similar for all Class members. The Court will therefore narrow Plaintiff's proposed class definition to include only the called parties whose telephone number was obtained by Prospects DM from Yodel or Fluent.

21

22

23

24

ORDER - 4

1    *Id.*, at 8-9.   PillPack's motion for reconsideration of the February 12, 2021 Order was denied.

2    Dkt. 144.

3         The Plaintiff filed his initial Motion to Approve Notice Plan and proposed excluding those

4    numbers Sharecare Inc. identified as having given to Prospects DM.  Dkt. 145.  Pillpack opposed

5    the motion.  Dkt. 148.  It noted that Plaintiff failed to exclude numbers from one of the other

6    sources of numbers for Prospects DM, Little Brook Media, and that the group of people the

7    Plaintiff proposed sending notice to was generally overbroad.  Dkt. 148.  After reviewing the

8    parties' submissions, the Court ordered the parties to file a Joint Status Report (Dkt. 157) which

9    they did (Dkt. 158).  The Court then granted the Plaintiff's unopposed request for an extension of

10   time to complete discovery described in the Joint Status Report.  Dkt. 159.  It renoted the Motion

11   to Approve Notice Plan, and a briefing schedule was set if the parties wished to file an Amended

12   Motion and responses.  *Id.*

13        The case was reassigned to the undersigned on July 12, 2021.  Dkt. 171.

14        On August 6, 2021, the Plaintiff filed the instant Amended Motion to Approve Notice Plan

15   (Dkt. 171) in which he states that he now has the phone numbers provided by Little Brook Media

16   and has excluded them as well as the numbers provided by Sharecare.  The Plaintiff states that he

17   has excluded other numbers for various reasons in his list of class members to receive notice.

18   Dkt. 171.  He moves to send notice to 378,428 potential class members.  *Id.*  On August 20,2021,

19   Pillpack filed its response, opposing the Amended Motion to Approve Notice Plan, arguing that

20   the revised notice list is vastly overbroad. Dkt. 174.  In reply, the Plaintiff indicated that based on

21   new deposition testimony, he was filing a motion to modify the class definition.  Dkt. 180.

22        In his September 8, 2021, Moton to Modify the Class Definition, the representative

23   Plaintiff, Mr. Williams, acknowledges that discovery has now revealed that his phone number

24

1   was not "obtained by Prospects DM from Yodel Technologies, LLC or Fluent, Inc." as is

2   required under the current class definition.  Dkt. 178.  Accordingly, he is not a member of the

3   class he represents.  The class now moves to remove the limitation that the class member's

4   information must be obtained by Prospects DM from Yodel Technologies, LLC or Fluent, Inc.

5   *Id.*

6          In support of their motion to modify the class definition, the Plaintiffs rely on call records

7   ("call records") produced by Prospects DM purporting to "reflect[] calls 'placed by Prospects

8   DM or its call center vendors as part of the PillPack telemarketing campaign.'"  Dkt. 178, at 6

9   (*citing* Dkt. 37-17).  While the Plaintiffs contend that these records include calls placed to the

10  representative Plaintiff's phone number ( *Id.* (*citing* Dkt. 30-10))  PillPack points out that class

11  representative Plaintiff Williams' number is not on that call records list.  His number is alleged

12  to appear on an opt-in consent list maintained by Yodel, not on Prospects DM's call records.

13  Dkt. 179, at 2-3.

14         On October 4, 2021, Defendant filed its opposition to the motion to modify the class

15  definition and moves to decertify the class.  Dkt. 187.  The Defendant argues that newly acquired

16  evidence indicates that 230,747 people who are currently included in the class definition

17  provided consent to receive PillPack marketing calls.  *Id.*  These numbers were sourced from

18  Fluent's websites (Fluent is a Yodel vendor) and were called during the relevant period.  *Id.*

19  (Whether the class members consented to these calls is one of Defendant's affirmative defenses;

20  a defense which it contends defeats class certification). The Defendant further argues that there is

21  additional evidence that at least another of Yodel's vendors, Citadel, ran a website that expressly

22  included PillPack as one of the entities where people consented to receive calls about PillPack

23  for at least a part of the relevant period.  *Id.*  The Defendant also maintains that new evidence

24

1   indicates that some of the numbers on Prospects' call records (upon which the Plaintiff relies as

2   class members) were not transferred to PillPack, but to a different company, ExactCare

3   Pharmacy.  *Id.*  In light of the new discovery, the Defendant argues that the Plaintiff's concession

4   that he is not a member of the class requires decertification, that the Court should decline to

5   certify the same overbroad class that was the subject of the prior motion to certify the class, and

6   to the extent the Court redefines the class, it should be limited to those whose phone numbers

7   were sourced from the website sweepstakescentralusa.com, the location from which Plaintiff's

8   number was acquired.  *Id.*

9          After PillPack's response was filed, on October 6, 2021, Josh Grant, Prospects DM's

10  corporate representative, was deposed.  During that deposition, Prospects DM indicated that the

11  call records that the Plaintiffs rely upon to establish the class members were either sent to

12  Prospects DM by email from Yodel or Mr. Grant downloaded the information directly from

13  Yodel's system, for which he claimed to have access.  Dkt. 206-1, at 2-5.  Mr. Grant notes that

14  he doesn't have an email with the list, so asserts that he must have produced it by downloading

15  the list from Yodel's system.  Dkt. 206-1, at 7. (Yodel asserts that it did not create or send the

16  call record that Prospects DM produced.  Dkt. 206-2.  It states that it did not make any of the

17  calls on the Plaintiff's call record, either.  Dkt. 206-2)  Prospects DM acknowledges that Yodel

18  may not have known that the calls were for PillPack because Prospects DM and, in turn its' call

19  vendors, were hired by Performance Media to make calls on behalf of at least two other

20  pharmacy vendors using a generic call script.  Dkt. 206-1, at 8-11.  Those other pharmacy

21  vendors included ExactCare and CareZone.  Dkts. 206-1, at 15 and 27 and 206-4.  According to

22  Prospects DM, 95% of their call data came from Yodel.  Dkt. 206-1, at 12.  Prospects DM

23  further indicated that not all calls were made with an avatar system; some calls were conducted

24

by live agents for quality control purposes.  Dkts. 206-1, at 24 and 216, at 22-24.  Prospects DM

states that there is nothing in the call records that track live agent calls and so the live agent calls

are not reflected in the call records it produced to the Plaintiffs.  Dkt. 206-1, at 24-25.

On October 8, 2021, the Plaintiffs filed their reply.  Dkt. 195.  In it they propose changes

to the initial proposed modification of the class definition.  *Id.*  Including the proposed changes

offered in the reply, the Plaintiffs move have the class definition modified as follows:

> All persons or entities within the United States who between March 13, 2018 and
> June 16, 2019, received a non-emergency telephone call placed by Prospects DM
> promoting PillPack LLC's goods or services, as part of the PillPack Performance
> Media campaign:
>
> (i) to a cellular telephone number through the use of an automatic telephone
> dialing system or artificial or prerecorded voice; or
>
> (ii) to a cellular or residential telephone number that had been registered on the
> national Do Not Call Registry for at least 31 days and who received more than
> one call as part of the PillPack Performance Media campaign within any
> twelvemonth period.
>
> Excluded from the class are persons or entitles: (1) whose telephone numbers
> were obtained from the www.rewardzoneusa.com, nationalconsumercenter.com,
> or surveyvoices.com websites operated by Fluent, Inc. between June 19, 2017 and
> May 3, 2019 or (2) whose calls were transferred to ExactCare Pharmacy but not
> PillPack.

*Id*. and Dkt. 195.  The Plaintiffs do not seek modification of the Transfers Sub-Class definition

which is:

> Transfers Sub-Class: All Class members who were transferred at least once to a
> PillPack call center on the Dialed Number Identification Service at: 866-298-
> 0058.

Due to the change in the Plaintiff's proposed amended class, PillPack was granted leave,

and filed, an updated response.  Dkt. 205.  PillPack opposes the newly modified version, arguing

that the Plaintiff's new proposed class definition does not cure the flaws.  *Id.*  It maintains that

the Plaintiff cannot satisfy key requirements of Fed. R. Civ. P. 23. *Id.* The Plaintiffs filed a supplemental reply. Dkt. 211.

On October 29, 2021, the Plaintiffs filed their Second Amended Motion to Approve Notice Plan. Dkt. 217. This is the day that the Plaintiffs' Motion to Modify the Class Definition (Dkt. 178), PillPack Motion to Decertify the Class (Dkt. 187) and the Plaintiffs' Amended Motion to Approve Notice Plan (Dkt. 171) were noted for consideration. Although under Local Rule W.D. Wash. 7 the Plaintiffs' Second Amended Motion to Approve Notice Plan (Dkt. 217) should not have been noted for the same day it was filed, because the class should be decertified, no further briefing on this motion is required. Additionally, the Plaintiffs' Motion to File Documents under Seal or in Open Court (Dkt. 214) should also be addressed at this time.

This opinion will first address the class definition related motions (Dkts. 178 and 187), then the motions related to class notification (Dkts. 171 and 217), and lastly, the Plaintiffs' motion to file documents under seal (Dkt. 214).

## II.     DISCUSSION

### A.  CLASS DEFINITION RELATED MOTIONS

Fed. R. Civ. P. 23 governs class actions and their certification. To certify a class under Rule 23, a plaintiff must first demonstrate: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation of the class. Rule 23(a). Second, the class "must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). In the order certifying the class, the Court held that the Class satisfied Rule 23(b)(3), which required a showing the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and effectively adjudicating the controversy." Dkt. 140, at 4-5 (*quoting* Rule 23(b)(3)).

Under Rule 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." "The power of the district court to alter or amend class certification orders at any time prior to a decision on the merits is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims." *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016)(*internal quotation marks and citations omitted*).

### 1. Motions to Modify Class Definition

The Plaintiff's motion to modify the class definition (Dkt. 178) should be denied without prejudice. The Plaintiff's newly proposed class definition suffers from the very deficiencies that the Court was attempting to address in the original order on certification. The class is no longer able to meet the typicality or commonality requirements of Rule 23(a)(2)-(3) or the predominance requirement of Rule 23(b)(3). Each will be considered below; the analysis of the commonality and the predominance requirements are related in this case and so will be considered together.

### a. Typicality Requirement under Rule 23(a)(3)

Rule 23(a)(3) requires that the representative Plaintiff's claims or defenses are typical of the class. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012). "Whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct

1    inform the analysis." *Gonzalez v. United States Immigration & Customs Enf't*, 975 F.3d 788,

2    809 (9th Cir. 2020)(*internal quotation marks and citations omitted*).

3            Considering the evidence, the Plaintiffs have failed to demonstrate that the representative

4    Plaintiff's claims are typical of the newly proposed class.  The Plaintiffs point to the call records

5    produced by Prospects DM to show who is in the class.  The representative Plaintiff's number is

6    not in the call records upon which he relies to establish membership, even in the newly defined

7    class.  Some of the members of the newly defined class do not have the same injuries as the

8    representative Plaintiff.  The class is presently proposed to include calls to a cellular number

9    using "an automatic telephone dialing system or an artificial or prerecorded voice" or to a

10   cellular number or residential number "on the national Do Not Call registry . . ." Prospects DM

11   acknowledges that some of the numbers on the call records list were handled by live agents and

12   not by an avatar like the Plaintiff's call.  There is no way to determine which of the numbers on

13   the call records list were handled by a live agent so there is no way to know which of the class

14   members were treated in this manner.  Further, as will be discussed more thoroughly below in

15   the discussion on the commonality and predominance requirements, contrary to the situation at

16   the time the class was initially certified, PillPack has now shown that some of the class members,

17   as newly defined, consented to be called by PillPack before the calls were made to them.

18   Accordingly, the Plaintiff's claims have not been shown to be typical of the newly proposed

19   class.

20           *b.  Commonality and Predominance Requirements under Rule 23(a)(2)
                 and 23(b)(3)*

21           To meet Rule 23(a)(2)'s commonality requirement, the class's claims must depend on a

22   "common contention."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "That

23   common contention, moreover, must be of such a nature that it is capable of classwide

24

1   resolution—which means that determination of its truth or falsity will resolve an issue that is

2   central to the validity of each one of the claims in one stroke." *Id.*

3        The Plaintiffs argue that the proposed newly defined class has a "common contention" of

4   "whether, under the TCPA, an opt-in to calls from a third party is prior express written consent

5   to calls promoting PillPack's services." *Id.* Under the Plaintiffs' theory, if the question to this

6   answer is "no," then the issue regarding consent for the class could be resolved "in one stroke."

7        The Plaintiffs have failed to demonstrate that a common contention exists in the newly

8   proposed class definition in order to meet Rule 23(a)(2). Whether opt-in to calls from a third

9   party constitutes valid consent under the TCPA is not a common question for all newly proposed

10  class members. For example, one of Yodel's vendors, Citadel Marketing Group, who provided

11  Yodel with some of the data Plaintiff alleges was used to make the calls, expressly included

12  PillPack within the scope of their consent for at least a part of the relevant period. Dkt. 208-1, at

13  24-31. Defendant also points to other websites from which call data was sourced that included

14  PillPack as one of the "marketing partners" from which people consented to receiving calls. Dkt.

15  206-5 and 206-6. Plaintiff's "common contention" only covers a portion of the issues raised

16  regarding consent of the newly proposed class. Moreover, the individualized issues of consent

17  will predominate over this common question, and so the Plaintiff cannot meet the requirements

18  of Rule 23(b)(3).

19       "Under Rule 23(b)(3), a court must find that the questions of law or fact common to class

20  members predominate over any questions affecting only individual members, and that a class

21  action is superior to other available methods for fairly and efficiently adjudicating the

22  controversy." *Stromberg v. Qualcomm Inc*., 14 F.4th 1059 (9th Cir. 2021)(*internal quotation*

23  *marks and citations omitted*). The court's "inquiry focuses on the relationship between

24

the common and individual issues and tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Id.* (*internal quotation marks and citations omitted*).

"[T]he predominance inquiry under Rule 23(b)(3) asks whether common questions

present a significant aspect of the case and they can be resolved for all members of the class in a

single adjudication." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th

Cir. 2018)(*internal quotation marks and citations omitted*).  "[C]ommon questions must have the

capacity to generate common answers apt to drive the resolution of the litigation." *Id.*  While

"defenses that must be litigated on an individual basis can defeat class certification, when one or

more of the central issues in the action are common to the class and can be said to predominate,

the action may be considered proper under Rule 23(b)(3)." *Id.*  PillPack, as the party asserting

the defense that the called parties consented to the calls, has the burden of proof on that issue.

*Id.,* at 931-932.

The Plaintiffs fail to show that there is a common contention for the class.  The common

contention to which Plaintiffs point (whether an opt-in to calls from a third party is prior express

written consent to calls promoting PillPack's services) will not resolve the issue of consent for

all members of the proposed class.  If the answer to the common contention is no, that is that opt-

in to calls from third parties did not constitute valid consent, that still does not resolve the

question of consent for some members of the class.  As stated above, PillPack, who has the

burden to prove its consent defense, has pointed to evidence that some of the newly proposed

class members consented to the calls.  An individualized examination of each of those numbers

and their opt-in websites would be required to determine whether the consent was consistent with

the TCPA.  PillPack has shown that the opt-in language varies significantly on these various

websites.  The original order certifying the class limited the source of the contact information for

class members (Yodel or Fluent) in order to avoid this type of individualized inquiry.  The

Plaintiff acknowledges that his information did not come from Yodel or Fluent.  The prior order

found that his contact information did not come from the other of Prospects DM's vendors (Little

Brook Media or ShareCare) either.  Additionally, not all calls from the call records list were sent

to either PillPack or ExactCare.  (The newly proposed class definition excludes calls to

ExactCare).  PillPack points out that some calls were also sent to CareZone, further destroying

predominance.  Where, as here, the class claims are based on individualized inquires, those

questions will predominate and the Class cannot meet the requirements of Rule 23(b)(3).

### c.  *Conclusion*

The Plaintiffs' motion to redefine the class as presently proposed (Dkt. 178) should be

denied without prejudice.  The proposed class attempts to bring in too many people, resulting in

too many individualized inquiries.  While they may be able to define a much narrower class, they

have not proposed to do so in this motion.

### 2.  PillPack's Motion to Decertify Class or Limit the Definition

The Defendant's motion to decertify the class (Dkt. 187) should be granted.  The Plaintiff

is no longer a member of the original class.  The newly proposed class definition fails to meet the

requirements under Rule 23.  The Plaintiff fails to address whether the proposed limits to the

class definition offered by PillPack met the Rule 23 requirements.  He has that burden, (*Dukes*, at

345) accordingly, to the extent PillPack's motion to modify the class definition to just those

people whose contact information was sourced from the same website as Plaintiff Williams'

information, that motion (Dkt. 187) should be denied without prejudice.

## B.  PLAINTIFF'S MOTIONS TO AMEND NOTICE PLAN

1       The Plaintiff's Amended Motion to Approve Notice Plan (Dkt. 171) and Second

2   Amended Motion to Approve Notice Plan (Dkt. 217) should be denied as moot.

3       **C.  PLAINTIFFS' MOTION TO SEAL**

4       In support of their supplemental reply, the Plaintiffs filed certain pleadings under seal,

5   including the deposition of Josh Grant, the Fed. R. Civ. P. 30(b)(6) deponent of Prospects DM

6   (Dkt. 216, at 1-28), a document produced by third party Byte Success (Dkt. 216-1) and two

7   additional documents (Dkt. 216-2 and 216-3) previously filed under seal and ordered to remain

8   under seal by order dated January 8, 2021 (Dkt. 126).  The Plaintiffs also filed their supplemental

9   reply under seal (Dkt. 211) and filed a redacted version (Dkt. 219).

10      The Plaintiffs filed a Motion to File Documents Under Seal or in Open Court (Dkt. 214)

11  which was noted for consideration for November 19, 2021.

12      First, as to the deposition of Josh Grant, the Fed. R. Civ. P. 30(b)(6) deponent of Prospects

13  DM (Dkt. 216, at 1-28), PillPack filed this portion of his deposition under seal with an

14  accompanying motion.  That motion to keep Mr. Grant's deposition under seal was denied on

15  October 26, 2021.  Dkt. 207.  Accordingly, that portion of the Plaintiffs' motion (Dkt. 214)

16  should be denied for the reasons provided in that October 26, 2021 order (Dkt. 207).  The

17  Plaintiffs should be ordered to file an unredacted copy of this deposition on or before **November**

18  **12, 2021**.

19      The document produced by Byte Success (Dkt. 216-1) which is the subject of this motion to

20  seal, contains financial account information.  Accordingly, pursuant to Local Rule Western

21  District of Washington 5.2, it should remain under seal.

22      The last pleadings subject to the motion to seal are emails originally filed under seal in the

23  record (Dkts. 102 and 103) and refiled under seal again here (Dkts. 216-2 and 216-1).  Contrary

24

to the Plaintiffs' assertion, the Court ruled on their prior motion to seal these emails (refiled at

Dkts. 216-2 and 216-3) on January 8, 2021 (Dkt. 126).  That prior order (Dkt. 126)  remains in

effect and those pleadings should remain under seal.  Accordingly, the Plaintiffs' motion to keep

those emails (Dkts. 216-2 and 216-3) under seal should be granted.

### III.   <u>ORDER</u>

Therefore, it is hereby **ORDERED** that:

- The Plaintiffs' Motion to Modify the Class Definition (Dkt. 178) **IS DENIED WITHOUT PREJUDICE**;

- PillPack's Motion to Decertify the Class (Dkt. 187) **IS GRANTED**;

- PillPack's motion to limit the class definition (Dkt. 187) **IS DENIED WITHOUT PREJUDICE**;

- The Plaintiffs' Amended Motion to Approve Notice Plan (Dkt. 171) and Second Amended Motion to Approve Notice Plan (Dkt. 217) **ARE DENIED AS MOOT;**

- The Plaintiffs' Motion to File Documents under Seal or in Open Court (Dkt. 214) **IS DENIED** as to the deposition of Josh Grant (Dkt. 216, at 1-28), and **GRANTED IN ALL OTHER RESPECTS**; and

- The Plaintiff **SHALL FILE** an unredacted copy of the deposition of Josh Grant on or before **November 12, 2021**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and

to any party appearing *pro se* at said party's last known address.

Dated this 3rd day of November, 2021.

ROBERT J. BRYAN
United States District Judge