The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AARON WILLIAMS, on behalf of himself and all others similarly situated,

                             Plaintiff,

     v.

PILLPACK LLC,

                             Defendant.

No. 3:19-cv-05282-DGE

**DEFENDANT PILLPACK LLC'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

NOTED ON MOTION CALENDAR:  June 3, 2022

Oral Argument Requested

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

   A.  PillPack Retained Performance Media to Place TCPA-Compliant Calls; Performance Media Engaged Prospects DM Without PillPack's Knowledge. ....................................................................................... 2

   B.  Prospects DM Independently Contracted with One or More Vendors to Place Calls for Performance Media's "General Pharmacy Partners" Campaign. ....................................................................................... 3

   C.  The Generic "Pharmacy Partners" Campaign Involved Calls Placed on Prospects DM's Behalf and Resulted in Call Transfers to Several Entities. ........ 4

   D.  Prospects DM's Call Records and Performance Media's Transfer Records Lack Critical Information and Are of Suspect Reliability. ................... 5

   E.  Leads Called During the Pharmacy Campaign Provided Written Consent to be Called on Varied Opt-In Consent Forms Through over 500 URLs. ............ 6

   F.  Plaintiff Initiated This Lawsuit After Receiving a Call Based on Opt-In Consent from "Michael Morgan." ........................................................ 8

   G.  The Court Decertified the Prior Class as Failing Rule 23's Typicality, Commonality, and Predominance Requirements. .................................. 9

   H.  Plaintiff Now Seeks to Certify a Class That Suffers from the Same and Additional Defects. ........................................................................... 10

III. LEGAL STANDARD ................................................................................... 11

IV. ARGUMENT ................................................................................................ 12

   A.  Plaintiff Cannot Establish Commonality or Predominance. ................... 12

       1.  Individualized Issues of Consent Predominate. ........................ 13

       2.  Individualized Issues Regarding Whether Each Call Utilized Live Voice Predominate. ................................................................. 17

       3.  Individualized Issues Regarding Whether Each Call Was Inbound or Outbound Predominate. ....................................................... 18

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED MOT.
FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - i
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

4.    Plaintiff's Proposed "Common Questions" Regarding Vicarious Liability Will Not Drive Resolution of This Litigation. .......................... 19

5.    Plaintiff Cannot Prove on a Class-Wide Basis the Identity of the Person Having Exclusive Use and Control of Each Phone Number. ..... 20

B.    Plaintiff's Claims Are Not Typical of Those of His Newly Proposed Class, Rendering Him an Inadequate Class Representative. ......................................... 21

C.    Plaintiff Fails to Describe How the Court Could Manageably Conduct a Trial of the Class Claims, Which Defeats Superiority ........................................ 23

The Proposed Class Is Impermissibly Overbroad Because It Includes Members with No Viable Claims for Relief. ........................................ 24

V.    CONCLUSION ............................................................................................. 24

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED MOT.
FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - ii
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdallah v. FedEx Corp. Servs., Inc.*,
  2021 WL 979143 (N.D. Ill. Mar. 16, 2021)..........................................................22

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) ....................................................................20

*Arizona v. California*,
  460 U.S. 605 (1983)............................................................................................14

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018).......................................................................21

*Booth v. Appstack, Inc.*,
  2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ................................................24

*Buonomo v. Optimum Outcomes, Inc.*,
  301 F.R.D. 292 (N.D. Ill. 2014)..........................................................................22

*Cashatt v. Ford Motor Co.*,
  2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)..................................................24

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)............................................................................................14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)..................................................................................11, 12, 13

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..............................................................................21

*Fosmire v. Progressive Max Ins. Co.*,
  277 F.R.D. 625 (W.D. Wash. 2011) ....................................................................12

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)............................................................................................12

*Gordon v. Caribbean Cruise Line, Inc.*,
  2019 WL 498937 (N.D. Ill. Feb. 8, 2019) ..........................................................13

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................................12, 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Hirsch v. USHealth Advisors, LLC*,
    337 F.R.D. 118 (N.D. Tex. 2020) ........................................................................21

*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*,
    628 F.2d 994 (7th Cir. 1980) .............................................................................21

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ..........................................................................20

*Johansen v. Efinancial LLC*,
    2022 WL 168170 (W.D. Wash. Jan. 18, 2022) ..........................................13, 22, 23

*Jones v. Royal Admin. Servs., Inc.*,
    887 F.3d 443 (9th Cir. 2018) .............................................................................19

*Karnuth v. Rodale, Inc.*,
    2005 WL 747251 (E.D. Pa. 2005) ......................................................................21

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir. 1983) ..............................................................................21

*Kristensen v. Credit Payment Servs. Inc.*,
    879 F.3d 1010 (9th Cir. 2018) ...........................................................................19

*Mateo v. V.F. Corp.*,
    2009 WL 3561539 (N.D. Cal. Oct. 27, 2009) .....................................................21

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale*
    *Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) .....24

*Miller v. RP On-Site, LLC*,
    2020 WL 6940936 (N.D. Cal. Nov. 25, 2020) ....................................................21

*Morris v. Modernize, Inc.*,
    2018 WL 7076744 (W.D. Tex. Sept. 27, 2018) ...................................................13

*N. L. by Lemos v. Credit One Bank, N.A.*,
    960 F.3d 1164 (9th Cir. 2020) ...........................................................................20

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) .............................................................................24

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
    2012 WL 10817204 (M.D. Fla. Nov. 30, 2012) ....................................................9

*Sali v. Corona Regional Med. Ctr.*,
    909 F.3d 996 (9th Cir. 2018) .............................................................................16

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED MOT.
FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - ii
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Selby v. LVNV Funding, LLC*,
    2016 WL 6677928 (S.D. Cal. June 22, 2016)................................................13

*Soppet v. Enhanced Recovery Co.*,
    679 F.3d 637 (7th Cir. 2012) .........................................................................20

*Southwell v. Mortg. Inv'rs Corp. of Ohio*,
    2014 U.S. Dist. LEXIS 112362 (W.D. Wash. Aug. 12, 2014) ....................22

*Stromberg v. Qualcomm Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ......................................................................13

*Taylor v. Mitre Corp.*,
    2012 WL 5473573 (E.D. Va. Nov. 8, 2012) ..................................................9

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) .......................................................................16

*United States v. Hensley*,
    982 F.3d 1147 (8th Cir. 2020), *cert. denied*, 142 S. Ct. 379 (2021)............9

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
    271 F.R.D. 668 (D. Wyo. 2011) ..................................................................13

*Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*,
    274 F.R.D. 229 (S.D. Ill. 2011) ...................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................11, 12

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ..................................................................12, 13

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001),
    *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) .........12, 13, 23

**Statutes**

47 U.S.C. § 227(b) ...............................................................................17, 18, 20

**Rules & Regulations**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

47 C.F.R. § 64.1200(f) ...................................................................................15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

In November 2021, this Court decertified Plaintiff's prior class and rejected his third attempt to modify the class definition, recognizing the many ways in which the prior and proposed class definitions failed to satisfy Rule 23's requirements.  Plaintiff's newly proposed class fails to ameliorate these defects and injects new barriers to certification.  The Court should deny with prejudice Plaintiff's motion to certify his newly proposed class.

Plaintiff sued Defendant PillPack LLC ("PillPack") under the Telephone Consumer Protection Act ("TCPA") after receiving calls from one of Prospects DM, Inc.'s ("Prospects DM") independent contractors, one of which calls was transferred to PillPack.  Prospects DM's contractors placed calls on Prospects DM's behalf and transferred the calls to several companies. These calls were placed based on opt-in consent consumers provided on different websites with different consent forms.  Someone using the name Michael Morgan provided opt-in consent to receive marketing calls from Prospects DM at Plaintiff's phone number via the website sweepstakescentralusa.com.  Despite the wide variation in consent sources and language, Plaintiff moved to certify a class of people who received calls Prospects DM supposedly placed as part of a "PillPack campaign," regardless of the consent source and language.

Recognizing that the various consent sources distinguished Plaintiff's claims from those of individuals whose phone numbers were obtained from another source, the Court declined to certify the class Plaintiff requested.  The Court instead certified a class limited to individuals whose phone number was obtained from the source of Plaintiff's phone number—which the Court believed to be Yodel Technologies LLC ("Yodel") and Fluent, Inc. ("Fluent").  Discovery later showed that Prospects DM did not obtain that number from Yodel or Fluent, and Plaintiff admitted he was not a member of the class.

The Court properly denied Plaintiff's multiple attempts to modify the class and decertified the class on several independent grounds.  The Court held that Plaintiff's claims were not typical of those of other class members because Plaintiff was not in the class, some class members' calls were handled by live agents as opposed to prerecorded voice, and some class members consented

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

to be called by PillPack before being called.  The Court further held that Plaintiff's proposed class

failed to satisfy Rule 23's commonality and predominance requirements because "[a]n

individualized examination of each of those numbers [in Plaintiff's class] and their opt-in

websites would be required to determine whether the consent was consistent with the TCPA" and

"PillPack has shown that the opt-in language varies significantly on these various websites."  Dkt.

220 at 13.  The Court rejected Plaintiff's argument that excising phone numbers associated with

consent forms listing "PillPack" would remove the need for individualized inquiries.

Plaintiff again attempts to cure individualized issues of consent by excising some (but not

all) consent sources that include "PillPack" and seeking for the ***third time*** to remove the Court's

well-reasoned consent-source limitation.  Plaintiff builds his newly proposed class from records

of calls transferred to PillPack that exacerbate the need for individualized inquiries, as those

records contain no information about who placed each call, whether it was placed using live

voice, or whether the call was to or from a consumer before transfer.  24,089 of the phone

numbers in Plaintiff's proposed class of 26,500—***90%***—either (1) do not appear in the call

records Plaintiff previously relied on throughout this case as the calls for which he sought to hold

PillPack liable; (2) opted in to receive calls from PillPack or one of Prospects DM's business

names by filling out and submitting opt-in consent forms on over 500 different websites; or (3)

both.  For 40% of the proposed class, Plaintiff has provided no explanation of how he will prove

(1) the entity that placed the call; (2) whether PillPack had any relationship to that entity; (3)

whether the call used prerecorded voice; or (4) whether the initial call was inbound or outbound.

Accordingly, PillPack requests the Court deny certification with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.   PillPack Retained Performance Media to Place TCPA-Compliant Calls; Performance Media Engaged Prospects DM Without PillPack's Knowledge.**

PillPack is a full-service pharmacy that delivers medications to customers' homes in

patient-specific multi-dose packaging.  Dkt. 62 ¶ 2.  In early 2018, PillPack engaged Performance

Media as an independent contractor to call potential customers and transfer individuals who were

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 2
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

interested in PillPack's services to PillPack's inbound call center. *Id.* ¶ 3. Performance Media expressly agreed to call only individuals who had provided prior express written consent under the TCPA, and to transfer to PillPack only customers who consented to be transferred. *See id.*; Dkt. 37-13 at Insertion Order § 4; *id.* at Terms & Conditions § 4(g).

Neither PillPack nor Performance Media placed *any* calls themselves to generate leads—a fact Plaintiff does not dispute. Dkt. 83-2 at 51:13; *see generally* Dkt. 228 ("Mot."). Unbeknownst to PillPack, Performance Media independently engaged a separate entity, Prospects DM, to conduct a generic "pharmacy partners" campaign and to transfer leads to several entities, only one of which was PillPack. *See* Dkt. 60 at 3; Declaration of Lauren B. Rainwater ("Rainwater Decl.") Ex. 1 ("Prospects DM Dep.") at 146:9-22, 158:16-22.

**B.      Prospects DM Independently Contracted with One or More Vendors to Place Calls for Performance Media's "General Pharmacy Partners" Campaign.**

Prospects DM does not place any calls using soundboard or avatar technology (which allows a live operator the option to play prerecorded voice audio clips). Prospects DM Dep. at 92:8-9. Rather, it independently contracts with third parties to place such calls. *Id.* It followed this practice for Performance Media's general pharmacy partners campaign that forms the basis of Plaintiff's claim. *Id.* at 159:4-10. Prospects DM also uses third-party contractors for the vast majority of its live-voice calls. *Id.* at 183:23-184:22.

One such contractor is Yodel. *Id.* at 23:17-21. Prospects DM's principal, Josh Grant, testified that Prospects DM contracted with Yodel to place all of the outbound calls for the pharmacy campaign. *Id.* at 23:17-21, 43:13-14, 159:4-10, 160:14-16. Yodel maintains that it did not place any calls for the pharmacy campaign. Rainwater Decl. Ex. 2 ("Yodel Dep.") at 152:17-153:19; *see also* Dkt. 175-3 ¶ 20.



PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 3
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

In either case, PillPack never communicated with Yodel or any other third-party contractors Prospects DM may have engaged to place calls, and was unaware that Prospects DM—let alone additional third parties—arranged for calls that were ultimately transferred to PillPack.  *See* Yodel Dep. at 144:22-146:11; Dkt. 63 ¶ 5.  All calls transferred to PillPack's inbound call center under PillPack's contract with Performance Media were transferred to the same unique phone number ("DNIS").  Dkt. 85 ¶ 2; Dkt. 83-1 at 37:16-38:9.

**C.      The Generic "Pharmacy Partners" Campaign Involved Calls Placed on Prospects DM's Behalf and Resulted in Call Transfers to Several Entities.**

While Plaintiff references a "PillPack Campaign," this is a misnomer.  Prospects DM conducted a "generic" pharmacy campaign that resulted in calls transferred to "multiple pharmacy buyers."  Prospects DM Dep. at 146:9-22, 148:1-11; *see also* Dkt. 37-17 ¶ 12.  That campaign began months before PillPack engaged Performance Media.  Dkt. 61 Ex. 16 ¶¶ 62-68 (call records start in December 2017, but PillPack engaged Performance Media in March 2018).  Prospects DM understood Performance Media's pharmacy partners included PillPack, ExactCare, and Byte Success, but it did not know where each call was transferred.  Prospects DM Dep. at 112:8-16, 146:9-22, 148:1-11, 154:23-155:9, 157:14-25.  Performance Media simply provided Prospects DM with a DNIS, and Prospects DM would in turn provide that DNIS to its separately contracted vendor, which transferred calls to that DNIS.  *Id.* at 148:19-22; *see also id.* at 149:12-14.

Because the third-party contractor placing calls for Prospects DM transferred calls to several different entities, Prospects DM's call script did not include the name "PillPack."  *See* Dkt. 229-22; Prospects DM Dep. at 154:2-22, 169:20-170:15.  The script changed over time to use Prospects DM's different business names or "dbas," including "Support First" and "Senior Help Advisors."[1]  Prospects DM Dep. at 109:2-110:12, 120:5-24; Dkt. 64 Ex. 11.  Josh Grant testified that "the script was designed as a generic script … intentionally so that … Performance Media could send the calls to whatever pharmacy partner that they have."  Prospects DM Dep. at

---

[1] Robert Pulsipher, Yodel's Chief Operating Officer, also testified that Yodel used Prospects DM's dbas when placing calls according to the opt-in consent provided by the call recipient.  Dkt. 162 Ex. A ¶ 13.

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 4
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

153:11-154:22 (discussing Dkt. 188 Ex. E), 154:23-155:9.  The script's description of packaging medications according to daily or weekly doses matches the services of other "pharmacy partners," including ExactCare and CareZone.  *See* Declaration of Ericka Mitterndorfer ("Mitterndorfer Decl.") Exs. 13 & 14.

Plaintiff incorrectly asserts that PillPack employee Tyler Hunt approved the script Prospects DM used.  *See* Mot. at 5.  The email used to support this proposition does not mention Prospects DM and attaches a "PillPack Pre-Qual Script" that does not match the call recordings on which Plaintiff relies.  *Compare* Dkt. 229-21 *with* Dkt. 229-22 (Prospects DM script), Dkt. 229-23 (call to Plaintiff, *see* Mot. at 8), and Dkt. 232-33 Exs. 28-35 (additional call recordings and transcripts).  And Plaintiffs' additional citations regarding PillPack approving scripts reflect generalities, ***not*** testimony or evidence about scripts ***actually used*** in the pharmacy campaign. *See* Mot. at 5 (citing Dkt. 229-2 at 66:24-67:15 (discussing scripts generally), Dkt. 229-5 at 113:24-25 (stating that Hunt "approved ***a*** script with Performance Media," not the script that was actually used) (emphasis added)).  In fact, the same script used in the calls to Plaintiff was used for the generic pharmacy campaign months before PillPack engaged Performance Media.  Dkt. 61 Ex. 16 ¶¶ 62-68; Prospects DM Dep. at 121:6-15.

The outbound calls Plaintiff refers to as "robot" calls were placed via a form of soundboard technology, which requires a live agent on the call to decide whether to play prerecorded audio clips or use live voice, and whether and where to transfer the call.  Prospects DM Dep. at 21:18-21.  The live agents who operate the soundboard technology sometimes conducted the entire call with live voice.  *See* Dkt. 37-17 ¶ 8; Prospects DM Dep. at 165:6-166:7; Dkt. 220 at 11.  Other calls—including those ultimately transferred to PillPack or other entities— were not "outbound" calls ***placed*** by Prospects DM's third-party vendor(s), but rather "inbound" calls ***received*** by the third-party vendor.  Prospects DM Dep. at 23:22-25:17.

**D.     Prospects DM's Call Records and Performance Media's Transfer Records Lack Critical Information and Are of Suspect Reliability.**

Before the Court decertified Plaintiff's previous class, Plaintiff and his experts had relied

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 5
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

on call records Prospects DM produced ("PDM Call Records") to craft his class list.  *See* Dkt. 30-10 ¶¶ 15-17, 45-51 (describing PDM Call Records as the "calls at issue in this matter").  At the time, Plaintiff maintained that the PDM Call Records reflected calls placed for a "PillPack campaign."  *See, e.g.*, Dkt. 145 at 2.  As Plaintiff has since conceded, the PDM Call Records include calls that were transferred to multiple entities.  *See* Dkt. 195 at 6 (Plaintiff seeking to modify the class to exclude calls transferred to ExactCare); Prospects DM Dep. at 157:1-4; Dkt. 191 ¶¶ 21-25; Dkt. 208-2 Ex. P; Dkt. 192 Ex. Q; Dkt. 189 ¶ 11; Dkt. 61 Ex. 7; Dkt. 66 ¶¶ 4-5.  The PDM Call Records do not contain any information to show where any particular call was transferred.  *See* Prospects DM Dep. at 155:2-9.  Nor do they show which calls were outbound (calls placed ***to*** a consumer) or inbound (calls received ***from*** a consumer), or whether any given call used prerecorded audio clips or was conducted by a live agent.  *See* Prospects DM Dep. at 23:22-25:17; Rainwater Decl. ¶¶ 11-12 & Exs. 10-11; Dkt. 37-17 ¶ 8.

Plaintiff has therefore abandoned his reliance on the PDM Call Records.  *Compare* Dkt. 30-10 ¶¶ 15-17, 45-51 (relying on PDM Call Records) *with* Mot. at 9-10 (citing Dkt. 229-35 ¶¶ 17-30 (omitting any mention of PDM Call Records)); *see also* Rainwater Decl. Ex. 7 ("Smith Supp. Rpt.") ¶ 26.  Instead, he now relies exclusively on records purporting to reflect call ***transfers*** to PillPack to craft the newly proposed class ("PM Transfer Records").  Mot. at 9-10 (citing Dkt. ¶¶ 17-30).  The PM Transfer Records are attachments to emails Performance Media sent to PillPack, which PillPack then produced.  Rainwater Decl. Ex. 8 ¶ 4.  They do not match up with the PDM Call Records, as explained below, and they do not identify the entity that initially placed any of the calls before those calls were purportedly transferred to Performance Media, and then to PillPack.  Smith Supp. Rpt. ¶ 27.  Like the PDM Call Records, the PM Transfer Records provide no information regarding which calls were outbound or inbound, or whether any given call used soundboard or live voice.  Rainwater Decl. Ex. 9.

**E.    Leads Called During the Pharmacy Campaign Provided Written Consent to be Called on Varied Opt-In Consent Forms Through over 500 URLs.**

Consumers who were called during Performance Media's pharmacy campaign provided

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 6
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

prior written consent to be called.  *See* Dkt. 61 Ex. 8 ¶¶ 5, 10, 17.  Consumers entered their

names, addresses, and phone numbers and checked a box to opt in to receive marketing calls from

certain businesses, including "Support First," "Senior Help Advisors," and PillPack, on hundreds

of different websites operated by different data vendors using different consent language.  *See,*

*e.g.*, Dkt. 60 at 3-4; Dkt. 64 ¶¶ 2-3; Dkt. 68 ¶¶ 3-4 & Ex. B; Dkt. 69 ¶¶ 4-9; Dkt. 191 Exs. J-O.

During discovery, Yodel produced opt-in consent data associated with the phone numbers

in Plaintiff's previously proposed class list in a file produced as Yodel_000027 (the "Yodel

Data").  Dkt. 162 Ex. A ¶ 19; *see also* Dkt. 175-3 ¶¶ 17-18.  The Yodel Data includes names,

phone numbers, the dates on which consumers gave consent to be called ("act date"), and the

websites through which they provided that consent ("URL"), which Yodel's third-party data

vendors and clients provided to it.  Dkt. 191 ¶¶ 3-8 & Ex. B; Dkt. 192 Ex. A.  Of the 447,588

phone numbers in Plaintiff's proposed class list for the previously certified class, 441,859 are

associated with at least one, and on average over eight, different consent records in the Yodel

Data that pre-date the first call to that number during the proposed class period.  Dkt. 189 ¶ 4(f).

Many of the opt-in consent forms at the URLs in the Yodel Data expressly included

PillPack in the scope of their consent.  Dkt. 191 ¶¶ 3-13 & Exs. C-D; Dkt. 208-1 at 86:3-10.  For

example, the Yodel Data contains hundreds of thousands of TCPA-compliant opt-in consent

records from websites operated by Fluent.  Dkt. 189 ¶ 10; Dkt. 190 Ex. F; Dkt. 191 ¶¶ 9-13 &

Exs. C-D; Dkt. 208 Ex. E.  Between June 2017 and May 2019, Fluent's websites contained opt-in

consent forms where PillPack's name "appeared in the hard-coded marketing partners list across

all Fluent websites."  Mitterndorfer Decl. ¶¶ 2-9, Exs. 1-3, 5-12 & Ex. 4 ("Fluent Dep.") at 44:4-

14, 49:1-12, 51:3-6, 90:19-91:1.  Plaintiff contends his expert excised phone numbers associated

with opt-in consent from only three of many such Fluent websites,[2] Mot. at 2-3, 12, but Plaintiff's

new class list still contains at least 1,999 phone numbers associated with opt-in consent from at

least five additional Fluent websites that contained "PillPack" among the listed marketing

---

[2] rewardzoneusa.com, nationalconsumercenter.com, and surveyvoices.com.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   partners before being called.[3]  Spicer Decl. ¶¶ 3-10; Mitterndorfer Decl. ¶¶ 2-9, Exs. 1-3, 5-12 &

2   Fluent Dep. at 44:4-14, 49:1-12, 51:3-6, 90:19-91:1.

3          Beyond Fluent-owned websites, as Judge Bryan recognized, "Citadel Marketing Group,

4   who provided Yodel with some of the data Plaintiff alleges was used to make the calls, expressly

5   included PillPack within the scope of their consent for at least a part of the relevant period."  Dkt.

6   220 at 12 (citing Dkt. 208-1 at 24-31); *see also id.* (citing Dkts. 206-5 & 206-6).  Plaintiff does

7   **not** claim his expert excised phone numbers associated with opt-in consent from Citadel.  While

8   other opt-in consent forms did not include PillPack, they did include Prospects DM's business

9   names.  Dkt. 191 Exs. J-O; Dkt. 162 Ex. A ¶ 13.

10  **F.     Plaintiff Initiated This Lawsuit After Receiving a Call Based on Opt-In Consent
            from "Michael Morgan."**

11         On April 18, 2018, someone visited the website sweepstakescentralusa.com, entered the

12  name "Michael Morgan" and Plaintiff's phone number on a consent form, and opted in to receive

13  marketing calls from Prospects DM's dba on that phone number.  Dkt. 37-5; Dkt. 188 Exs. B-D.

14  Prospects DM produced the following lead data gathered from that opt in:

15         Name: Michael Morgan
           Phone: 206-696-1757
16         Address: Monument, CO 80132
           Email: michaelmorgan@aol.com
17         URL: http://1-w-supermarket-us.lp2.sweepstakescentralusa.com/?demo=1
18         Signup date: 04/16/2018
           IP: 172.58.145.127
19

20  Dkt. 37-5.[4]  The same lead data appears in Yodel's consent records.  Yodel Dep. at 120:19-121:5.

21         A Caller-ID Name ("CNAM") lookup performed by PillPack's expert witness, Ken

22  Sponsler, confirmed that as of the lookup date, the current subscriber of the phone number 206-

23  696-1757 was Michael Morgan of Monument, Colorado, zip code 80132—matching the "Michael

24  Morgan" opt-in form.  Dkt. 61 Ex. 10 ¶ 20.  Mr. Sponsler also conducted a reverse-lookup of the

25  _____

26  [3] finddreamjobs.com, instantplaysweepstakes.com, startacareertoday.com, samplesandsavings.com, and
       sweepstakesaday.com.

27  [4] Prior to March 2019, Plaintiff received numerous calls intended for Michael Morgan from other companies.
       Rainwater Decl. Ex. 3 ("Williams Dep.") at 74:25-75:8).  In fact, Plaintiff filed putative class action lawsuits against
       two other companies alleging TCPA violations based on calls intended for Michael Morgan.  *Id.* at 77:1-78:9.

phone number 206-696-1757 via LexisNexis Phone Finder Ultimate, a tool relied on by Plaintiff's expert witness.[5]  Dkt. 61 Ex. 10 ¶ 24; Dkt. 30-12 ¶ 44.  That search returned a "last seen" date for Aaron Williams of March 1, 2016; identified Maureen Morgan with a "first seen" and last seen" date of December 1, 2019; and identified Michael Morgan under the "listing name" with a Cingular Wireless plan.  *See* Dkt. 61 Ex. 10 ¶ 24.

Plaintiff denies that he submitted the "Michael Morgan" opt-in form.  Williams Dep. at 31:18-24.  The parties engaged a digital forensics vendor, Vestige, to perform a forensic examination of Plaintiff's devices to test Plaintiff's denial.  *See* Dkt. 225.  The results showed that someone using Plaintiff's Google Play account manually downloaded and installed CCleaner onto Plaintiff's Android tablet just minutes before Vestige took secure control of the device.  Rainwater Decl. Ex. 4 at 6-7; Ex. 5 at 6 ("The Google Play account associated with the installation of CCleaner is m▮▮▮1@gmail.com."); Williams Dep. at 26:21-27:20 (Plaintiff admitting m▮▮▮1@gmail.com is one of his email addresses).  CCleaner is a wiping utility that allows users to selectively overwrite data so that it cannot be recovered through the imaging process.  *See* Rainwater Decl. Ex. 4 at 6.[6]  Plaintiff's counsel maintains that "Plaintiff does not know why or how CCleaner had been installed on his tablet and does not recall using it to wipe or delete any records."  Rainwater Decl. Ex. 6.  Plaintiff has provided no explanation as to how his Google Play account could have been used to manually download and install CCleaner onto his tablet less than an hour before imaging without his involvement, and he refuses to answer additional questions about it.  *Id.*

**G.      The Court Decertified the Prior Class as Failing Rule 23's Typicality, Commonality, and Predominance Requirements.**

Based on the evidentiary record at the time of class certification, which indicated—

---

[5] Plaintiff has since abandoned reliance on this method for identifying class members, relying solely on an outdated declaration relating to class notice from a vendor.  *See infra* § IV.A.5.

[6] Courts analyzing motions for spoliation sanctions have described CCleaner as "a file-deletion or 'computer cleaning/wiping' program" (*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 2012 WL 10817204, at *6 (M.D. Fla. Nov. 30, 2012)); "a cleaning software that deletes and assists in hiding items" (*United States v. Hensley*, 982 F.3d 1147, 1153 (8th Cir. 2020), *cert. denied*, 142 S. Ct. 379 (2021)); and "similar in nature to Evidence Eliminator in that it erases files from a computer so that they cannot be recovered" (*Taylor v. Mitre Corp.*, 2012 WL 5473573, at *2 (E.D. Va. Nov. 8, 2012)).

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 9
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

incorrectly—that Prospects DM had placed the calls at issue, the Court certified a class limited to individuals whose telephone numbers were obtained from the same source as Plaintiff's phone number—which the Court believed was Yodel or Fluent.  Dkt. 140 at 19.

Plaintiff later admitted he was not a member of this class, as further discovery revealed Prospects DM did not obtain his number from Yodel or Fluent.  Dkt. 178 at 1; Yodel Dep. at 133:25-135:16.  Plaintiff asked the Court to modify the class to include all individuals who received marketing calls Prospects DM placed promoting PillPack's goods or services, regardless of whether Prospects DM sourced the numbers from Yodel or Fluent.  Dkt. 178 at 2-3.  In its opposition to Plaintiff's motion to modify, PillPack demonstrated numerous grounds for decertification, including that the premise for Plaintiff's modified class definition was false— hundreds of thousands of individuals provided consent to receive calls *from PillPack* via Fluent's websites and others.  *See* Dkt. 187 at 7-8.

In his reply in support of his motion to modify, Plaintiff then proposed an altogether new class definition, which, among other things, removed the lead-source limitation Judge Zilly set and excluded individuals who opted in through one of three Fluent websites during the time period when PillPack appeared on Fluent's marketing partners list.  Dkt. 195 at 2-3.  In supplemental briefing, PillPack pointed out that this third proposed class definition was still fatally flawed.  *See* Dkt. 205.  The Court agreed with PillPack and decertified the class on several independent grounds.  *See* Dkt. 220 at 10-14.

## H.   Plaintiff Now Seeks to Certify a Class That Suffers from the Same and Additional Defects.

Plaintiff now proposes a class definition that (a) is dependent on the use of prerecorded voice; (b) includes individuals with phone numbers that appear in the PM Transfer Records, but not the PDM Call Records; and (c) excludes those who provided consent via only three of Fluent's websites or financedoneright.com.  *See* Mot. at 2-3, 12; Dkt. 229-35 ¶¶ 33-35.  However, of the 26,500 unique phone numbers in Plaintiff's newly proposed class list, at least 10,656— ***40%***—are phone numbers for which there is not a record in the PDM Call Records for that phone

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 10
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

number within a day of any call transfer Plaintiff's expert identified in the PM Transfer Records for that phone number.  Smith Supp. Rpt. ¶ 31.  Thus, for 40% of the proposed class, Plaintiff has provided no explanation of how he will prove (1) the entity that placed the call; (2) whether PillPack had any relationship to that entity; (3) whether the call used prerecorded voice; or (4) whether the initial call was inbound or outbound.

Moreover, like the prior class definitions the Court rejected, Plaintiff's newly proposed class is not limited to the consent source for Plaintiff's phone number, but includes phone numbers for which there is opt-in data associated with over 500 different URLs before the call transfer.  *Id.* ¶ 36; Dkt. 191 ¶¶ 3-11 (describing opt-in consent sources and process).  Of the 26,500 phone numbers in Plaintiff's newly proposed class list, at least 14,306 are phone numbers for which there is opt-in data associated with over 500 URLs prior to receiving any relevant calls. Smith Supp. Rpt. ¶ 42; Dkt. 191 ¶¶ 3-11.  1,999 of these phone numbers provided opt-in consent on one of five URLs controlled by Fluent subsidiaries that contained "PillPack" among the listed marketing partners before being called.  Spicer Decl. ¶¶ 3-10; Mitterndorfer Decl. ¶¶ 2-9, Exs. 1-3, 5-12 & Fluent Dep. at 44:4-14, 49:1-12, 51:3-6, 90:19-91:1.

In sum, 24,089 of the 26,500 phone numbers in Plaintiff's proposed class—**90%**—either (1) have no matching record in the PDM Call Records within a day of any call transfer Plaintiff's expert identified in the PM Transfer Records for that phone number; (2) opted in to receive calls from PillPack or one of Prospects DM's business names by filling out and submitting opt-in consent forms on over 500 different URLs; or (3) both.  Smith Supp. Rpt. ¶ 49; Dkt. 191 ¶¶ 3-11.

### III.   LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citations & quotations omitted).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification … must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Wal-*

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 11
4862-4248-7316/v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Thus, "the party [seeking certification] must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Behrend*, 569 U.S. at 33.  Further, the Court must conduct a "rigorous analysis" of the Rule 23 prerequisites before deciding on certification.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  *Dukes*, 564 U.S. at 351; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

"[T]he party seeking certification … bears the burden of demonstrating that she has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).  "If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused."  *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 632 (W.D. Wash. 2011).  Plaintiff fails to make the required showing.

## IV.    ARGUMENT

### A.    Plaintiff Cannot Establish Commonality or Predominance.[7]

Rule 23(a)(2) requires Plaintiff to show "questions of law or fact common to the class." To establish commonality, Plaintiff must prove not only the existence of common ***questions*** but also common ***answers***.  *Dukes*, 564 U.S. at 350.  Plaintiff cannot show commonality by reciting common questions, "even in droves"; instead, a court must focus on whether those common questions have "the capacity ... to generate common *answers* apt to drive the resolution of the litigation."  *Id.* (citation & quotations omitted); *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013).  The "common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564

---

[7] PillPack analyzes commonality and predominance together, as the factors collectively inform whether it is feasible to decide the absent class claims in a single proceeding.

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 12
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

U.S. at 350.

Under Rule 23(b)(3), Plaintiff must also show that the common issues "predominate over any questions affecting only individual members." This "predominance criterion is even more demanding than [the commonality requirement of] Rule 23(a)." *Behrend*, 569 U.S. at 34. The predominance analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang*, 737 F.3d at 545 (citation & quotations omitted); *see also Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir. 2021) (citation & quotation omitted). Plaintiff does not carry his burden on predominance by merely showing a "common nucleus of facts"; rather, Plaintiff must present a "suitable and realistic plan for trial of the class claims," and the Court "cannot rely merely on assurances of counsel that any problems with predominance or superiority can be overcome." *Zinser*, 253 F.3d at 1189 (citations & quotations omitted).

Plaintiff's newly proposed class fails to cure the prior class's deficiencies. Individualized inquiries predominate over Plaintiff's proposed common questions with respect to (1) consent; (2) prerecorded voice; (3) whether each call was inbound or outbound; (4) vicarious liability; and (5) identification of the person having exclusive use and control of each phone number.

### 1.    Individualized Issues of Consent Predominate.

Courts routinely decline to certify classes where individualized issues of consent predominate.[8] "[A] person can provide prior express permission by submitting a web form with personal information when the web form includes a notice that the person agrees to be contacted." *Johansen v. Efinancial LLC*, 2022 WL 168170, at *3 (W.D. Wash. Jan. 18, 2022) (citing *Morris v. Modernize, Inc.*, 2018 WL 7076744, at *3 (W.D. Tex. Sept. 27, 2018)). Recognizing this, the Court initially limited the class to individuals called on phone numbers Prospects DM obtained

---

[8] *See, e.g.*, *Gordon v. Caribbean Cruise Line, Inc.*, 2019 WL 498937, at *10 (N.D. Ill. Feb. 8, 2019) (individual consent issues predominated where individualized inquiries would be necessary to determine which potential class members provided consent on website); *Selby v. LVNV Funding, LLC*, 2016 WL 6677928, at *10 (S.D. Cal. June 22, 2016) (same where defendants "demonstrate[d] there is evidence of at least some [persons called] providing prior express consent"); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) ("[T]he TCPA claims will require extensive individual fact inquiries into whether each individual gave 'express consent' by providing their wireless number to the creditor ….").

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 13
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

from Yodel or Fluent—the believed source of Plaintiff's phone number—on the assumption that the consent language would have been the same.  *See* Dkt. 140 at 8-9.  Plaintiff later conceded that Prospects DM did not obtain Plaintiff's phone number from Yodel or Fluent.  Dkt. 178 at 1.

Plaintiff now asks the Court *for the third time* to remove the consent-source limitation. The Court denied Plaintiff's first request, stating that it "will not amend the class definition to include called parties whose telephone numbers were purchased from third-party sources that did not sell or provide Plaintiff's telephone number in connection with the telemarketing campaign at issue." Dkt. 159 at 1-2.  Plaintiff made the same request after discovering that he was not a member of his class; the Court rejected it again and decertified the class.  Dkt. 178 at 1; Dkt. 220 at 13-14.  In decertifying the class, the Court held:  "Plaintiffs have failed to demonstrate that a common contention exists in the newly proposed class definition in order to meet Rule 23(a)(2). Whether opt-in to calls from a third party constitutes valid consent under the TCPA is not a common question for all newly proposed class members." Dkt. 220 at 12.  The Court held further that "[a]n individualized examination of each of those numbers and their opt-in websites would be required to determine whether the consent was consistent with the TCPA."  *Id.* at 13.  The Court also noted that "[t]he original order certifying the class limited the source of the contact information for class members (Yodel or Fluent) in order to avoid this type of individualized inquiry."  *Id.* at 13-14; *see also* Dkt. 140 at 8-9.  The Court likewise rejected Plaintiff's proposed "common contention" of "whether, under the TCPA, an opt-in to calls from a third party is prior express written consent to calls promoting PillPack's services."  Dkt. 220 at 12.

These rulings are the law of the case.  The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (dictum)).  "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."  *Id.* at 816 (citation & quotations omitted).

Despite the Court's rulings, Plaintiff contends that consent is now a common question

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 14
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

because Plaintiff and his expert have supposedly stripped from his newly proposed class all phone numbers associated with opt-in consent to be called by PillPack specifically as opposed to by one of Prospects DM's business names.  *See* Mot. at 16.  Therefore, according to Plaintiff, resolving the "common" question of whether PillPack is the "seller" under 47 C.F.R. § 64.1200(f)(9)-(10) will resolve PillPack's consent defense on a class-wide basis.  *See* Mot. at 16.  In addition to violating the Court's consent-source limitation, Plaintiff's approach has several critical flaws.

*First*, the Court has already rejected Plaintiff's argument that excluding consent sources that named "PillPack" is sufficient to cure the defects in Plaintiff's consent-based commonality and predominance arguments.  When PillPack demonstrated that hundreds of thousands of individuals in Plaintiff's prior class provided consent to receive calls from PillPack via several Fluent-owned websites, *see* Dkt. 187 at 7-8, Plaintiff asked the Court to modify the class definition to exclude individuals who opted in via those Fluent websites during the time period when PillPack appeared on those websites, *see* Dkt. 195 at 2-3.  The Court rejected Plaintiff's request and decertified the class.  Dkt. 220 at 12-14.

*Second*, whether PillPack is the "seller" under the TCPA's regulations cannot be resolved on a class-wide basis.  "Seller" is defined as "the person or entity *on whose behalf* a telephone call or message is *initiated*" for marketing purposes.  47 C.F.R. § 64.1200(f)(10) (emphasis added).  Although Plaintiff has limited his newly proposed class to calls transferred to PillPack, those calls were placed as part of a general pharmacy partners campaign for a number of pharmacies.  Prospects DM Dep. at 146:9-22, 158:16-22; Dkt. 61 Ex. 16 ¶¶ 62-68.  "[T]he script was designed as a generic script … intentionally so that … Performance Media could send the calls to whatever pharmacy partner that they have."  Prospects DM Dep. at 153:11-154:22 (discussing Dkt. 188 Ex. E), 154:23-155:9.  The agent handling each call did not know to which entity it would be transferred (if at all) at the time an outbound call was placed.  Prospects DM Dep. at 146:9-22, 158:16-22.  They only transferred the calls to Performance Media's pharmacy clients as Performance Media directed.  Prospects DM Dep. at 149:12-152:25.  Accordingly, whether PillPack is a "seller" under 47 C.F.R. § 64.1200(f)(9)-(10) for each individual call

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

requires an individualized examination of whether the Prospects DM contractor initiated that specific call on behalf of PillPack as opposed to on behalf of another pharmacy partner.

*Third*, the premise for Plaintiff's common question *was false and remains false* because Plaintiff's newly proposed class *still* contains individuals who consented to be called *by PillPack*. Plaintiff's new class list still contains at least 1,999 phone numbers associated with opt-in consent from five URLs controlled by Fluent subsidiaries that contained "PillPack" in their marketing partners lists between June 19, 2017, and May 3, 2019.  *See supra* § II.E.  And although Plaintiff seeks to re-litigate the Court's conclusion, the Court found based on the record that "at least another of Yodel's vendors, Citadel, ran a website that expressly included PillPack," which was another independent basis of predominating individualized consent-source inquires underlying the Court's decertification decision.  Dkt. 220 at 6; Dkt. 229-44 at 86:3-6.  Plaintiff has made no effort to exclude phone numbers that opted in on Citadel's websites from his proposed class.

*Fourth*, Plaintiff's remaining consent-based "common" question, "whether PillPack has admissible evidence showing that PillPack's name was included on any" opt-in consent form or associated marketing partner list, Mot. at 16, is not a common question, but rather describes (and misstates) a minimum evidentiary requirement that PillPack has already met.  "[E]videntiary proof" on class certification "need not be admissible evidence."  *Sali v. Corona Regional Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018).  To defeat class certification, PillPack need only present some "evidence of a predominance-defeating consent defense," which it can present "in a variety of ways."  *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018).  "Putative class members, of course, retain the burden of showing that the proposed class satisfies the requirements of Rule 23, including the predominance requirement of Rule 23(b)(3)."  *Id.* at 931.  The Court has already held that PillPack has more than met its burden to present some consent evidence that shows individualized inquiries are necessary to resolve PillPack's consent defense.  Dkt. 220 at 13-14.

The evidence that formed the basis of the Court's conclusion is unchanged, and Plaintiff's newly proposed class does not alter the analysis.  Of the 26,500 phone numbers on Plaintiff's

newly proposed class list, at least 14,306—**54%**[9]—provided opt-in consent to be called by PillPack or one of Prospects DM's business names on one of over 500 URLs before the date of the first call to that number.  Smith. Supp. Rpt. ¶ 42.  On average, each phone number in Plaintiff's proposed class is associated with 3.36 separate opt-in records and an average of 2.76 URLs from Yodel's records, meaning for each proposed class member, the Court would need to review on average 2 or 3 opt-in forms to determine whether at least one of them contained TCPA-compliant disclosure language.  *Id.* ¶ 41.  And as the Court has already recognized, the opt-in consent forms at issue vary widely from website to website.  Dkt. 220 at 13.

**2.    Individualized Issues Regarding Whether Each Call Utilized Live Voice Predominate.**

Plaintiff's proposed common question of "[w]hether avatar calls qualify as pre-recorded voice calls under the TCPA," Mot. at 15, would not drive the resolution of this litigation "in one stroke," but instead is dwarfed by individualized inquiries on other dispositive issues.[10]  As the Court noted in decertifying the prior class, "Prospects DM acknowledges that some of the numbers on the call records list were handled by live agents and not by an avatar like the Plaintiff's call."  Dkt. 220 at 11.  "There is no way to determine which of the numbers on the call records list were handled by a live agent so there is no way to know which of the class members were treated in this manner."  *Id.*  The evidence has not changed since the Court made this determination, and Plaintiff has not narrowed the proposed class in any manner that eliminates the need for individualized inquiries with respect to which calls utilized live voice as opposed to prerecorded voice.

Indeed, Plaintiff's newly proposed class definition ***exacerbates*** the need for individualized inquiries because Plaintiff abandons reliance on the PDM Call Records—or ***any*** pre-transfer call

---

[9] This number is likely to be even higher.  Much of the opt-in consent evidence was produced by Yodel after Plaintiff asked Yodel to produce records associated with the numbers on Plaintiff's prior class list—built from the Prospects DM Call Records.  As Plaintiff relies on a different set of records to form his newly proposed class (after the close of discovery), not all of the numbers in Plaintiff's newly proposed class were searched by Yodel for consent records.

[10] Plaintiff has abandoned his ATDS and DNC class, and therefore the putative class claims depend entirely on proving that the calls to putative class members were placed using an "artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A); *see* Mot. at 2-3.

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 17
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

records—and relies entirely on the PM Transfer Records.  *See supra* § II.D.  Like the PDM Call Records, the PM Transfer Records do not show which calls were placed using live voice. Rainwater Decl. Ex. 9.  And there is nothing in the record demonstrating who actually placed the calls reflected in the PM Transfer Records or whether those calls were placed with live voice. Rather, Plaintiff has long claimed that the PDM Call Records contain the calls at issue throughout this case—and used those records as the basis for his previous class.  *See* Dkt. 30-10 ¶ 15; Smith Supp. Rpt. ¶ 26.  However, for 10,656—***40%***—of the phone numbers on Plaintiff's newly proposed class list, "there is not a record in the ProspectsDM Files for that phone number within a day" of the transfer time in the records Plaintiff relies on.  Smith Supp. Rpt. ¶¶ 29-31.  In other words, Plaintiff has pointed to ***no set of call records*** demonstrating that Prospects DM had any involvement with the calls placed to 40% of Plaintiff's newly proposed class, let alone evidence demonstrating that those numbers were called via prerecorded voice.

Even if the PDM Call Records included calls to 100% of Plaintiff's newly proposed class, individualized inquiries still would be necessary to determine which calls were placed using live voice.  The PDM Call Records do not show which calls were placed using live voice.  Prospects DM Dep. at 165:22-166:7 (there is "nothing in the call logs that tracks" whether "a live agent interjected or conducted the entire call with live voice").  Live agents who operated the avatar or soundboard technology could use live voice at any time and sometimes conducted the entire call with live voice.  Dkt. 37-17 ¶ 8; Prospects DM Dep. at 165:6-166:7.

### 3. Individualized Issues Regarding Whether Each Call Was Inbound or Outbound Predominate.

Plaintiff proposes no common question capable of class-wide resolution to determine which calls were "outbound" calls ***made to*** a consumer and which were "inbound" calls ***received from*** a consumer.  There can be no liability for calls ***received from*** consumers that were then transferred to PillPack.  47 U.S.C. § 227(b)(1)(A) (unlawful "to make" certain telemarketing calls).  Individualized evidence is necessary to make that determination on a per-call basis.

Prospects DM took "some inbound calls through Vicidial with live agents."  Prospects

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 18
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

DM Dep. at 23:22-25:17.  Even for the portion of the newly proposed class with corresponding data in the PDM Call Records, those records are not dispositive of the issue.  While one of the ten spreadsheets comprising the PDM Call Records contains an "outbound" column, the other PDM Call Records do not.  Prospects DM Dep. at 87:24-90:4; Rainwater Decl. ¶¶ 11-12 & Exs. 10-11.

Plaintiff's newly proposed class further underscores the need for individualized inquiries by relying on the PM Transfer Records, which contain no indication of which calls were inbound or outbound before transfer.  Rainwater Decl. Ex. 9.  Therefore, even if Plaintiff could show via class-wide evidence that all calls in the PDM Call Records were outbound—which he cannot—individualized inquiries would still be necessary to determine which calls were inbound versus outbound for the 40% of Plaintiff's class list that does not appear in the PDM Call Records.

### 4.    Plaintiff's Proposed "Common Questions" Regarding Vicarious Liability Will Not Drive Resolution of This Litigation.

Plaintiff's proposed "common questions" regarding vicarious liability will not drive resolution of this litigation on a class-wide basis.  PillPack cannot be vicariously liable for calls placed by third-party entities Prospects DM separately contracted with, of which PillPack had no knowledge and over which PillPack exercised no control.  *See Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014-15 (9th Cir. 2018); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448-49 (9th Cir. 2018) (a person may be liable for the TCPA violation of another only under principles of actual authority, apparent authority, or ratification).  Plaintiff proposes three common questions that focus only on PillPack's relationships with Performance Media and Prospects DM, and none of which account for the fact that third-party contractors of Prospects DM—not Prospects DM itself—placed the calls underpinning Plaintiff's and the putative class's claims.  *See* Mot. at 14-15, 21-13.  In particular, Plaintiff has provided no explanation as to how he intends to determine who placed calls to the 40% of Plaintiff's class whose records in the Performance Media Transfer Records do not match calls in the PDM Call Records.

Plaintiff asserts that "whether PillPack is vicariously liable for the calls it hired Performance Media to make" is a common question capable of class-wide resolution. Mot. at 14-

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

15.  But as discussed above, Performance Media did not make the calls at issue.  Nor did Prospects DM, as recent discovery has revealed.  *See supra* § II.A-B.  Accordingly, Plaintiff's second proposed common question on vicarious liability, "whether Prospects DM was [PillPack's] subagent," will not resolve the vicarious liability issue on a class-wide basis.  As the actual caller for each call is either Yodel or another unnamed and unknown third-party contractor of Prospects DM, "whether PillPack is vicariously liable for the calls it hired Performance Media to make" turns on PillPack's relationship—if any—with ***those third-party contractors***, not with Prospects DM.  *See* Mot. at 15.  For the same reason, Plaintiff's third proposed common question on vicarious liability—"whether Performance Media and Prospects DM acted as PillPack's agents in making the calls"—will not resolve the vicarious liability issue.  *See id.*

### 5.    Plaintiff Cannot Prove on a Class-Wide Basis the Identity of the Person Having Exclusive Use and Control of Each Phone Number.

The TCPA creates a remedy for the person who suffers the statutory violation, not for a cell phone number.  47 U.S.C. § 227(b)(3).  The TCPA vests standing only in the "person subscribing to the called number ***at the time the call is placed***."  *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 109 (N.D. Ill. 2013) (emphasis added) (citing *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 643 (7th Cir. 2012)).  Moreover, to possess a valid TCPA claim, a claimant must be the authorized and sole user of the phone number and have actually received the calls at issue.  *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 565 (W.D. Wash. 2012); *see also N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1169 (9th Cir. 2020) (recognizing the "called party" under the TCPA refers to the subscriber who answered the call).

However, Plaintiff has identified no method for determining the subscribers or users of phone numbers, instead stating only that he "has retained an experienced class action administrator to identify names and contact information of persons ***associated*** with the numbers" on his newly proposed class list.  Mot. at 12 (emphasis added) (citing Dkt. 147).  This is because no reliable method to identify the subscribers or users of phone numbers exists. Dkt. 61 Ex. 10 ¶¶ 65-117, 131-143.  Indeed, Plaintiff vividly illustrates the problem—public phone information

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

indicates that the phone number belonged to Michael or Maureen Morgan even after Plaintiff filed this lawsuit, yet Plaintiff claims to own it.  This underscores the need for individualized inquiries.

**B.    Plaintiff's Claims Are Not Typical of Those of His Newly Proposed Class, Rendering Him an Inadequate Class Representative.**

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).

Rule 23(a) also requires that the class representative "will fairly and adequately protect the interests of the class."  "The presence of even an arguable defense peculiar to the named plaintiff … may … bring into question the adequacy of the named plaintiff's representation." *Mateo v. V.F. Corp.*, 2009 WL 3561539, at *5 (N.D. Cal. Oct. 27, 2009) (citation & quotations omitted); *see also J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 998-99 (7th Cir. 1980); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 133-34 (N.D. Tex. 2020).  A putative class representative is also inadequate where "the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 356 (N.D. Cal. 2018) (citation & quotations omitted); *see also Miller v. RP On-Site, LLC*, 2020 WL 6940936, at *9 (N.D. Cal. Nov. 25, 2020). "To deny certification, a court need not conclude that credibility problems would ultimately defeat the class representative's claim; rather, the court may deny class treatment if that unique defense is even arguably present." *Karnuth v. Rodale, Inc.*, 2005 WL 747251, at *3 (E.D. Pa. 2005); *see also Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983).

In decertifying Plaintiff's prior class, the Court held that Plaintiff was atypical of the class in multiple ways, including: (1) "Some of the members of the newly defined class do not have the

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 21
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

same injuries as the representative Plaintiff" because "some of the numbers on the call records list were handled by live agents and not by an avatar like the Plaintiff's call;" and (2) "PillPack has now shown that some of the class members, as newly defined, consented to be called by PillPack before the calls were made to them."  Dkt. 220 at 10-11.  Plaintiff's newly proposed class fails to cure these defects.  *See supra* § IV.A.1 (discussing consent issue); § IV.A.2 (discussing live voice issue).  Plaintiff is further atypical and inadequate because he will be preoccupied with defenses unique to him and faces questions regarding his credibility.

Plaintiff denies submitting ***any*** opt-in consent form, although he has filed multiple lawsuits based on claimed wrong-number calls to "Michael Morgan."  *See* Williams Dep. at 77:1-78:9.  "[T]he central inquiry in a 'wrong party' case is *who* provided consent, whereas the central inquiry in an actual debtor case is *whether* the plaintiff provided consent to receive calls on his or her cell phone."  *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 297 (N.D. Ill. 2014); *see also Abdallah v. FedEx Corp. Servs., Inc.*, 2021 WL 979143, at *7 (N.D. Ill. Mar. 16, 2021) (plaintiff failed to satisfy typicality where he pointed to no evidence that other class members were called based on the same circumstances).  In concluding that the plaintiff failed to satisfy typicality, the *Buonomo* court held that the plaintiff's "wrong party" claim "lacks the same 'essential characteristics' as the claims of actual debtors included in the proposed class."  301 F.R.D. at 297.[11]  Here, Plaintiff either submitted an opt-in consent form under the name "Michael Morgan" or was called based on consent provided by someone named "Michael Morgan."  *See supra* § II.F.  In either case, Plaintiff is atypical of and inadequate to represent his newly proposed class, whose claims depend on the ***content*** of the opt-in forms they submitted—not ***whether*** they submitted an opt-in form.

*Johansen*, 2022 WL 168170, a recent case before this Court, is instructive as to the unique questions that require resolution to adjudicate Plaintiff's claim.  *Id.* at *3.  Like here, it was

---

[11] At best Plaintiff can represent others—if any—who were not the person who provided consent.  As Plaintiff has not identified one such other person, such a proposed class would fail the numerosity requirement as well.  *See Southwell v. Mortg. Inv'rs Corp. of Ohio*, 2014 U.S. Dist. LEXIS 112362, at *4-5 (W.D. Wash. Aug. 12, 2014) (denying certification in TCPA case because plaintiff "failed to establish, on a preponderance of the evidence basis, the numerosity element," including through the use of a "numerosity" expert).

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 22
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

undisputed that the plaintiff was called based on an opt-in consent form containing the plaintiff's telephone number and indicating consent to be called. *Id.* Also, like here, the plaintiff denied submitting the online opt-in form, and noted that "his declaration specifically denies submitting a request," and "asserted he would not have provided an incorrect birthdate and email address if he in fact had submitted the request." *Id.* at *4. In granting summary judgment for Efinancial, the Court concluded that "Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact and that no reasonable jury would find that someone other than Plaintiff requested and consented to being called by Efinancial." *Id.* at *5.

Plaintiff's claims are further subject to unique defenses and questions surrounding his credibility. Plaintiff's use of a wiping utility, CCleaner, on his tablet less than an hour before it was to be imaged, further calls into question the credibility of his denials that he submitted the "Michael Morgan" opt-in consent form. *See* Rainwater Decl. Ex. 4 at 6-7; Ex. 5 at 6. Questions about Plaintiff's credibility in denying that he manually downloaded CCleaner—despite Vestige concluding that it was manually downloaded and installed using a Google Play account registered to Plaintiff's email address—will preoccupy Plaintiff and differ from Plaintiff's asserted "common question" of whether the varied opt-in consent forms submitted by putative class members contained TCPA-compliant disclosures.

**C.    Plaintiff Fails to Describe How the Court Could Manageably Conduct a Trial of the Class Claims, Which Defeats Superiority.**

Plaintiff also must show under Rule 23(b)(3) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192. The need to resolve myriad issues on a case-by-case basis, as outlined above, raises intractable manageability issues that render class treatment inferior to individual adjudication.

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 23
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**D.     The Proposed Class Is Impermissibly Overbroad Because It Includes Members with No Viable Claims for Relief.**

"[A] class definition may be overbroad if it includes individuals who sustained no injury and therefore lack standing to sue."  *Cashatt v. Ford Motor Co.*, 2020 WL 1987077, at *4 (W.D. Wash. Apr. 27, 2020); *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *15 (W.D. Wash. Mar. 30, 2015) ("[A] class definition that encompasses a substantial number of members who have no cause of action is not sufficiently 'precise, objective and presently ascertainable' to be certified." (citation & quotation omitted)).  "Where a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite." *Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)); *see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (class overbroad because it was not "defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading"), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022).

Plaintiff's proposed class includes putative class members who have no TCPA injury, including people who consented to receive the calls.  These putative class members lack TCPA injury or any viable claim—much less standing to assert one.  *See, e.g.*, *Vigus*, 274 F.R.D. at 235 ("[P]roposed class includes a substantial number of people who voluntarily gave their telephone numbers to the Casino knowing the Casino would call those numbers …. [T]heir inclusion in the proposed class definition renders it overbroad and the class unfit for certification.").

## V.     CONCLUSION

For these reasons, PillPack respectfully requests that the Court deny with prejudice Plaintiff's Renewed Motion to Certify Class.

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 24
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  DATED this 20th day of May, 2022.

2                          DAVIS WRIGHT TREMAINE LLP

3

4                      By: *s/ Lauren B. Rainwater*
                            Kenneth E. Payson, WSBA #26369

5                           Email: kenpayson@dwt.com
                            Lauren B. Rainwater, WSBA #43625

6                           Email: laurenrainwater@dwt.com
                            Sara A. Fairchild, WSBA #54419

7                           Email: sarafairchild@dwt.com
                            Eric A. Franz, WSBA #52755

8                           Email: ericfranz@dwt.com
                            Jillian Schlotter, WSBA #58210

9                           Email: jillianschlotter@dwt.com
                            920 Fifth Avenue, Suite 3300

10                          Seattle, Washington 98104-1610
                            Telephone: (206) 622-3150

11                          Facsimile: (206) 757-7700

12

13                       *Attorneys for Defendant PillPack LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PILLPACK'S OPP'N TO PLAINTIFF'S RENEWED
MOT. FOR CLASS CERTIFICATION (3:19-cv-05282-DGE) - 25
4862-4248-7316v.43 0051461-002463

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax