1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AARON WILLIAMS, on behalf of himself and all others similarly situated,<br><br>                         Plaintiff,<br>          v.<br><br>PILLPACK LLC,<br><br>                         Defendant. | CASE NO. 3:19-cv-05282-DGE<br><br>ORDER GRANTING  IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (DKT. NO. 228) |

## I      INTRODUCTION

        This matter comes before the Court on Plaintiff Aaron Williams's renewed motion for

class certification (Dkt. No. 228).  For the reasons articulated herein, Plaintiff's renewed motion

for class certification is GRANTED in part.

## II      BACKGROUND

        The Court has extensively discussed the procedural and factual background of this case in

prior orders, and they are incorporated by reference.  (*See, e.g.*, Dkt. Nos. 140, 220, 258.)

The Court previously granted Plaintiff's motion for class certification on February 12, 2021.  (*See* Dkt. No. 140 at 18–19.)  The Court certified the following class:

All persons or entities within the United States, whose telephone number was obtained by Prospects DM from Yodel Technologies, LLC or Fluent, Inc., and who between March 13, 2018, and June 16, 2019, received a non-emergency telephone call promoting goods or services on behalf of PillPack, LLC, as part of the PillPack Performance Media campaign:

  a)  to a cellular telephone number through the use of an automatic telephone dialing system or an artificial or prerecorded voice; or
  b)  to a cellular or residential telephone number that had been registered on the national Do Not Call Registry for at least 31 days and who received more than one call as part of the PillPack Performance Media campaign within any twelve-month period.

Transfers Sub-Class: All Class members who were transferred at least once to a PillPack call center on the Dialed Number Identification Service at: 866-298-0058.

In certifying this class, the Court and the Parties presumed that Prospects DM obtained Williams's phone number from Yodel Technologies, LLC or Fluent, Inc.  (*See* Dkt. No. 140 at 9.)  Further discovery later undermined this assumption (*see* Dkt. No. 179-4 at 14–16), and as such Williams moved to modify the class certification because he no longer was a member of the putative certified class.  (Dkt. No. 178 at 1.)  The Court rejected this motion and granted Defendant PillPack LLC's ("PillPack") motion to decertify the class (Dkt. No. 187) because it "fails to meet the requirements under Rule 23."  (Dkt. No. 220 at 14.)  In decertifying the class, the Court noted Williams "may be able to define a much narrower class."  (*Id.*)

On April 22, 2022, Williams filed a renewed motion for class certification.  (Dkt. No. 228.)  PillPack filed its motion in opposition to renewed class certification on May 20, 2022.  (Dkt. No. 243.)  Williams filed his reply on July 3, 2022.  (Dkt. No. 249.)

### III     PROPOSED CLASS

Plaintiff moves to certify the following class:

All persons or entities within the United States who between March 13, 2018 and June 16, 2019, received a non-emergency telephone call promoting goods and services on behalf of PillPack, LLC as part of the PillPack Performance Media campaign:

    i.   to a cellular telephone number through the use of an artificial or prerecorded voice; and

    ii.  Performance Media or its agents live transferred the call to a PillPack call center on the DNIS 866-298-0058; and

    iii. Performance Media or its agents did not obtain the cellular telephone number through Rewardzoneusa.com, Nationalconsumercenter.com, or Surveyvoices.com between June 19, 2017 and May 3, 2019 before the date(s) of the call(s); and

    iv. Performance Media or its agents did not obtain the cellular telephone number through the website Financedoneright.com before the date(s) of the call.

(Dkt. No. 228 at 9–10.)

## IV   DISCUSSION

### A. Legal Standard

To certify a class, the Court must determine that class meets "the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation" as well as the requirements for one of the types of classes enumerated in Federal Rule of Civil Procedure 23(b). *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021); *see also* Fed. R. Civ. P. 23. Plaintiff asserts his proposed class meets the requirements of Federal Rule of Civil Procedure 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The burden is on the Plaintiff to establish by a preponderance of the evidence the requirements for class certification are met. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 665 (9th Cir. 2022), *cert. denied sub nom. Starkist Co. v. Olean Wholesale Grocery*, No. 22-131, 2022 WL

16909174 (U.S. Nov. 14, 2022); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

Courts have significant discretion to alter, amend, certify, or decertify classes prior to final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C); *see also Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016).

**B.  The Law of the Case Doctrine Does not Apply**

At the outset, the Court rejects PillPack's argument that the law of the case doctrine precludes the Court from determining that a class may be certified based on common questions of consent or vicarious liability.  (Dkt. No. 243 at 20.)

The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)) (internal quotation marks omitted).  However, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." *Id.*  Furthermore, "[t]he law of the case doctrine applies only sparingly in class certification proceedings, for Rule 23(c) invests broad authority in the district court to alter and amend orders until entry of judgment." *Fair Hous. for Child. Coal., Inc. v. Pornchai Int'l*, 890 F.2d 420 at *1 (9th Cir. 1989) (unpublished).

Amending and revising class definitions is common given the nature of class actions and is specifically contemplated by the Federal Rules.  Discovery in the class context may yield new insights that warrant amending or decertifying a class, as this case has shown.  Given the broad discretion granted to the Court to certify or decertify a class based on new evidence obtained

during the course of litigation, the Court finds it is not bound by the law of the case doctrine to

apply the Court's prior determinations as to class certification.

Additionally, as Plaintiffs point out, there is new, intervening authority the Court did not

previously consider when decertifying the prior proposed class.  (Dkt. No. 249 at 14.)  The Ninth

Circuit's holding in *Olean* that Rule 23(b)(3) permits a court to certify a class with more than a

de minimis number of uninjured class members is directly relevant to this Court's prior analyses

of consent-based class certifications.  *See* 31 F.4th at 669.

**C.  The Requirements for Class Certification are Met**

    a.  <u>Numerosity</u>

The Parties do not contest that this requirement is satisfied and the Court is convinced the

proposed "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P.

23(a)(1).

    b.  <u>Commonality and Predominance</u>

Common questions of consent and vicarious liability predominate among the proposed

class such that class certification is warranted.

The Court analyzes the commonality requirement of Rule 23(a)(2) and predominance

requirement of Rule 23(b)(3) together given the significant overlap between the two.  *See Olean*,

31 F.4th at 664 ("The requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a):

the plaintiffs must prove that there are 'questions of law or fact common to class members' that

can be determined in one stroke in order to prove that such common questions predominate over

individualized ones."); *see also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1304

(D. Nev. 2014) ("Commonality is inherently satisfied if Rule 23(b)(3)'s predominance

requirement is met.").

1    "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in

2    the case are more prevalent or important than the non-common, aggregation-defeating,

3    individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W.

4    Rubenstein, Newberg on Class Actions § 4:49, pp. 195–196 (5th ed. 2012)).  Courts must

5    "pragmatically compare[] the quality and import of common questions to that of individual

6    questions" and then determine which predominate. *Jabbari v. Farmer*, 965 F.3d 1001, 1005 (9th

7    Cir. 2020).  This is not a quantitative analysis but a pragmatic, qualitative one.  *See* 2 W.

8    Rubenstein, Newberg and Rubenstein on Class Actions § 4:50 (6th ed. 2022).  "[M]ore important

9    questions apt to drive the resolution of the litigation are given more weight in the predominance

10   analysis over individualized questions which are of considerably less significance to the claims

11   of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

12        To determine whether common questions predominate over individual ones, the Court

13   must first begin with the elements of the underlying action.  *See Erica P. John Fund, Inc. v.*

14   *Halliburton*, 563 U.S. 804, 809 (2011).  In Williams's complaint, he asserts violations of 47

15   U.S.C. § 227(b)(1), which prohibits parties from using artificial or prerecorded voices to deliver

16   messages to residential phone lines without prior express consent of the party being called, and

17   47 U.S.C. § 227(c), which prohibits telephone solicitation calls to telephone numbers on the

18   national Do Not Call Registry.  (Dkt. No. 6 at 7–8.)  Williams, however, appears to only seek the

19   certification of a class related to the first of these claims.  (Dkt. Nos. 228 at 9–10; 249 at 7.)  A

20   violation of § 227(b)(1)(A)(iii) requires Williams establish PillPack or its agents 1) made a call

21   using an artificial or prerecorded voice 2) without prior express consent.

22        Williams proposes there are multiple common questions whose answer will drive the

23   resolution of this litigation. These questions include:

24

- Whether PillPack is vicariously liable for calls made pursuant to its contract with Performance Media?  (Dkt. No. 228 at 22.)

- Whether Performance Media and Prospects DM were agents of PillPack under various theories of agency?  (*Id.*)

- Whether Prospects DM was a subagent of PillPack?  (*Id.*)

- Whether avatar calls constitute pre-recorded calls under the TCPA?  (*Id.*)

- Whether PillPack is a seller for purposes of the TCPA?  (*Id.* at 23.)

- Whether consent to receive calls from third parties suffices as valid consent under the TCPA?  (*Id.*)

Williams argues these questions are common questions susceptible to answer through common evidence.  (*Id.* at 28–30.)  PillPack, by contrast, argues individual issues predominate "with respect to (1) consent; (2) prerecorded voice; (3) whether each call was inbound or outbound; (4) vicarious liability; and (5) identification of the person having exclusive use and control of each phone number."  (Dkt. No. 243 at 19.)  The Court addresses each of Defendant's contentions in turn.

### i.   Consent

PillPack argues individual issues of consent predominate and would not provide a proper basis for class certification.  First, PillPack points to the Court's prior rulings as determinative of the issue of consent.  (Dkt. No. 243 at 21.)  Second, PillPack argues "whether PillPack is the 'seller' under the TCPA's regulations cannot be resolved on a class-wide basis" because it necessarily involves an individualized inquiry into who the calls were placed on behalf of.  (*Id.*)  Third, PillPack argues Williams's proposed class still contains individuals for whom valid prior express consent was obtained.  (*Id.* at 22.)

1   As discussed in Section IV.B *supra*, the Court's prior rulings on the issue of consent are

2   not determinative as to class certification at this later stage in the action given further

3   development of the record and the changed class definition proposed by Williams.  To the extent

4   that prior rulings are instructive, the Court notes it previously found lack-of-consent had the

5   capacity to a generate a common answer.  (*See* Dkt. No. 140 at 11–14.)  Though the Court did

6   previously rule that "[w]hether opt-in to calls from a third party constitutes valid consent under

7   the TCPA is not a common question for all newly proposed class members," the basis for this

8   conclusion was Williams's purported failure to exclude certain websites where consumers opted

9   in to be contacted by telemarketers and these websites listed PillPack as a marketing partner.

10   The Court, for example, noted one such third party (Citadel Marketing Group) Williams failed to

11   exclude "expressly included PillPack within the scope of their consent for at least a part of the

12   relevant period." (Dkt. No. 220 at 12.)  However, the deposition testimony cited in support of

13   this point did not actually establish Citadel Marketing Group listed PillPack as one its marketing

14   partners during the period at issue.  Rather, the deponent noted merely, "·I have a specific

15   recollection of PillPack having appeared on the marketing partner list or within our TCPA, but I

16   cannot provide you with an exact date." (Dkt. No. 229-44 at 5.)  Such speculative evidence does

17   not raise individual issues of consent.  *See True Health Chiropractic, Inc. v. McKesson Corp.*,

18   896 F.3d 923, 932 (9th Cir. 2018).

19   Plaintiff also excludes from the proposed class consumers who provided affirmative

20   consent to the other opt-in websites listed in the Court's prior opinion.  (Dkt. No. 220 at 12.)

21   PillPack has purportedly identified additional websites that listed PillPack as a marketing partner

22   (*see* Dkt. No. 243 at 14), but this does not prevent the Court from recognizing the broader

23   question of consent predominates over the proposed class.  "Common issues will predominate if

24

'individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim.'"  Rubenstein, § 4:50; *see also Minns v. Advanced Clinical Emp. Staffing LLC*, No. 13-CV-03249-SI, 2015 WL 3491505, at *8 (N.D. Cal. June 2, 2015) ("[T]he necessity of making individualized factual determinations does not defeat class certification if those determinations are susceptible to generalized proof.").  Both parties have established computer records and clerical assistance can narrow the proposed class to include only those parties for whom there is no evidence consent was obtained prior to being contacted as part of the Performance Media campaign.  (*See* Dkt. Nos. 228 at 18–19; 243 at 13–14.)

Additionally, to the extent there are some consumers in the class that did provide prior express consent to be contacted by PillPack, the Court may still exclude these individuals from the class later in this litigation.  *See* Fed. R. Civ. P. 23(c)(1)(C); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.")

Finally, the Court rejects PillPack's assertion that whether PillPack is the "seller" for purposes of the TCPA requires individualized inquiry.  (Dkt. No. 243 at 21.)  The TCPA authorizes the Federal Communications Commission ("FCC") to promulgate regulations to implement the TCPA.  *See* 47 U.S.C. § 227(b)(2).  The FCC has issued regulations clarifying it is unlawful for a party to initiate a call "that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice" to cell phones without prior express written consent.  47 C.F.R. § 64.1200(a)(2).  47 C.F.R. § 64.1200(f)(9) defines "prior express written consent" as "an

1    agreement, in writing, bearing the signature of the person called that clearly authorizes the **seller**

2    to deliver or cause to be delivered to the person called advertisements or telemarketing messages

3    using an automatic telephone dialing system or an artificial or prerecorded voice."  47 C.F.R. §

4    64.1200(f)(9) (emphasis added).  47 C.F.R. § 64.1200(f)(10) then defines "seller" as "the person

5    or entity **on whose behalf a telephone call or message is initiated** for the purpose of

6    encouraging the purchase or rental of, or investment in, property, goods, or services, which is

7    transmitted to any person."  47 C.F.R. § 64.1200(f)(10) (emphasis added)

8         PillPack argues this definition of "seller" precludes resolution on a class-wide basis

9    because calls transferred to PillPack "were placed as part of a general pharmacy partners

10   campaign for a number of pharmacies" and "[t]he agent handling each call did not know to

11   which entity it would be transferred (if at all) at the time an outbound call was placed."  (Dkt.

12   No. 243 at 21.)  According to PillPack, the Court would have to individually examine each call

13   to determine on whose behalf the call was initiated.

14        The Court disagrees.  As noted in our recent order (Dkt. No. 258), a seller may be

15   vicariously liable for the actions of a third party through traditional principles of agency.  *See*

16   *also In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6584

17   (2013).  The FCC has further articulated that it sees "no reason that a seller should not be liable

18   under [§ 227(b) of the TCPA] for calls made by a third-party telemarketer when it has authorized

19   that telemarketer to market its goods or services."  *Id.* at 6593.  The Court has already found

20   there is a triable issue of fact as to whether Performance Media was an agent of PillPack and

21   whether Prospects DM was a subagent.  (Dkt. No. 258 at 11–13.)  And there is ample evidence

22   PillPack was aware of and able to exercise significant control over the Performance Media

23   campaign and calls made by Prospect DM's vendors.  (*See, e.g.*, Dkt. No. 229-25 at 2.)  PillPack

24

1    cites no authority to establish a call may only be "initiated" on behalf of one seller and the Court

2    agrees with Williams that the fact that the Performance Media campaign calls may have been

3    initiated on behalf of multiple sellers does not necessitate individualized inquiries or evidence.

4         The Court finds there is common evidence as to the nature of PillPack's control over the

5    Performance Media campaign and that this evidence has the capacity to generate common

6    answers for the proposed class for purposes of PillPack's consent defense.

7              ii.   *Prerecorded Voice Calls*

8         PillPack maintains that whether customers included in Williams's proposed class were

9    contacted with a prerecorded avatar call or a live voice requires individualized inquiry and is not

10   susceptible to common evidence.  (Dkt. No. 243 at 23–24.)  To support this contention, PillPack

11   points to this Court's prior findings and to the absence in the record of affirmative evidence as to

12   which calls in the records transferred by Performance Media to PillPack ("PM Transfer

13   Records") used live voice versus prerecorded messages.

14        The Court previously found that "some of the numbers on the call records list [produced

15   by Prospect's DM] were handled by live agents and not by an avatar like the Plaintiff's call.

16   There is no way to determine which of the numbers on the call records list were handled by a

17   live agent so there is no way to know which of the class members were treated in this manner."

18   (Dkt. No. 220 at 11.)  The Court based this finding on deposition testimony from Prospects

19   DM's CEO Josh Grant, who testified that it was standard on many of Prospect DM's campaigns

20   for agents to "hop in" or "interject on a call."  (Dkt. No. 206-1 at 24.)  When pressed, Grant

21   noted there were no records in Prospect DM's call logs indicating when live agents interjected

22   into calls.  (*Id.* at 25.)  Grant also testified the campaign Performance Media undertook on behalf

23   of PillPack and other customers to generate leads  "wasn't a voice campaign except for a small

24

1  amount of calls that went to inbound agents for quality assurance to spot verify the quality of

2  Yodel's transfers to Performance Media."  (Dkt. No. 216 at 22.)

3        Ultimately, whether PillPack authorized the use of prerecorded or avatar calls is

4  susceptible to common evidence and will drive the resolution of this litigation.  Williams has

5  presented evidence PillPack hired Performance Media to run a campaign to generate leads using

6  a "prerecorded voice system" or "avatar."  (Dkt. No. 34 at 2.)  He has also presented evidence

7  PillPack managers were aware the Performance Media campaign used avatars as part of their

8  campaign.  (*See, e.g.*, Dkt. No. 229-9 at 3–4.)  And there is evidence PillPack was aware an

9  avatar was being used at the beginning of the Performance Media Campaign.  (*See* Dkt. No. 30-

10  21 at 2.)  PillPack, by contrast, fails to "identify even one call in which a live voice was used

11  exclusively."  (Dkt. No. 140 at 15.)  The FCC has also clarified the TCPA's prohibition on

12  making a prerecorded call to a party without prior express written consent applies to "any

13  telephone call to a residential telephone line initiated using an artificial or prerecorded voice

14  message," including ones made using soundboard or avatar technology where a live agent may

15  insert themselves into the call.  *In the Matter of Rules & Reguls. Implementing the Tel.*

16  *Consumer Prot. Act of 1991 Northstar Alarm Servs. LLC's Petition for Expedited Declaratory*

17  *Yodel Techs. LLC's Petition for Expedited Ruling or in the Alternative Retroactive Waiver*, 35

18  F.C.C. Rcd. 14640, 14640 (2020).

19        Given the absence of any evidence indicating the Performance Media campaign used live

20  voice exclusively on any of its calls, Williams's proposed common question—whether  avatar

21  calls constitute pre-recorded calls under the TCPA—is susceptible to common evidence and is

22  likely to drive the resolution of this litigation.

23           *iii.  Inbound or Outbound Nature of Call*

24

1    PillPack also asserts that because the PM Transfer Records do not indicate whether each

2    call transferred to PillPack was inbound or outbound, the Court would have to conduct an

3    individualized inquiry to determine whether liability attaches to each class member.  (*See* Dkt.

4    No. 243 at 24–25.)  To support this point, PillPack points to the statutory language of the

5    relevant TCPA provision which provides that it is unlawful for a party to "make any call" using

6    prerecorded or artificial voices.  47 U.S.C. § 227(b)(1)(A).  PillPack contends that such language

7    precludes liability for inbound calls from customers that were then transferred to their call center

8    because, presumably, inbound calls were not "made by" PillPack or its purported agents.  In

9    response, Williams asserts PillPack does not deny the intent of the Performance Media

10   Campaign was for Performance Media to call potential leads and to transfer those leads into

11   PillPack as an inbound call.  (Dkt. No. 249 at 7.)

12       That the PM Transfer Records do not list whether the calls transferred to PillPack's call

13   center were inbound or outbound calls does not preclude class certification.  There is no

14   indication there were more than a de minimis number of inbound calls from consumers that were

15   transferred to PillPack.  Though Prospect DM's CEO Joshua Grant testified that he "**think[s]**

16   that we took some inbound calls through Vicidial with live agents" (Dkt. No. 244-1 at 6)

17   (emphasis added), PillPack has offered no other evidence to support this speculation.  "'[T]he

18   fact that a defense may arise and may affect different class members differently does not compel

19   a finding that individual issues predominate over common ones.'"  *Bridging Communities Inc. v.*

20   *Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (quoting *Young v. Nationwide Mut. Ins.*

21   *Co.*, 693 F.3d 532, 544 (6th Cir. 2012)); *see also McKesson*, 896 F.3d at 932.  To the extent

22   PillPack wishes to contest liability as to specific class members, it may do so at trial.  The Court

23

24

1  is not convinced such an inquiry will necessitate an individual evidentiary hearing on each such

2  claim. *See* Rubenstein, § 4:50.

3                                 *iv.   Vicarious liability*

4         PillPack argues it cannot be found to be vicariously liable for calls placed by third-party

5  vendors, and as such answering common questions related to vicarious liability cannot drive the

6  resolution of this litigation.  (*See* Dkt. No. 243 at 25.)  PillPack does not appear to contest that

7  such questions would rely on common evidence.

8         As discussed at length in the Court's prior order, there is a genuine issue of material fact

9  as to whether PillPack can be held liable for calls in violation of the TCPA placed by third-party

10  vendors.  (*See generally* Dkt. No. 258).  Resolution of this, and other questions related to

11  Williams' vicarious liability arguments, will be resolved through common evidence such as

12  PillPack's correspondence with and communications with Performance Media and Prospect DM.

13  As the Ninth Circuit has noted, if each member of Plaintiff's proposed class could rely on the

14  common evidence put forward to '"establish liability if he or she had brought an individual

15  action,' and the evidence 'could have sustained a reasonable jury finding' on the merits of a

16  common question, then a district court may conclude that the plaintiffs have carried

17  their . . . burden as to that common question of law or fact."  *Olean*, 31 F.4th at 667 (cleaned up).

18         As such, the Court finds Plaintiff's common questions related to vicarious liability are

19  susceptible to class-wide proof and the Rule 23 commonality/predominance requisites as to these

20  questions are satisfied.

21                         *v.   Identification of the person having exclusive use and control of each*

22                               *phone number*

23

24

Finally, PillPack argues Williams "has identified no method for determining the
subscribers or users of phone numbers" and that such an analysis would require "individualized
inquiries." (Dkt. No. 243 at 26–27.) The Court previously rejected this exact argument. (*See*
Dkt. No. 140 at 14–15.)

Plaintiff proposes:

> All telephone number records in the Class List will be sent to a third party to
> perform "reverse lookups" to identify whether an available associated email
> address exists for each telephone number. To the extent no email address is
> identified, the reverse lookup process will identify the most likely current physical
> mailing address for the Class member.

(Dkt. Nos. 145 at 7; 249 at 15.) The Court again finds such proposal is an adequate "starting
point to identify the aggregate number of TCPA violations in this case." (Dkt. No. 140 at 14.)
Courts have repeatedly recognized the adequacy of reverse lookup methodologies to satisfy Rule
23(b)(3)'s predominance requirement. *See, e.g.*, *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 287
(D. Utah 2021), *leave to appeal denied*, No. 21-600, 2022 WL 482156 (10th Cir. Feb. 16, 2022)
(noting that proposed notice plan using reverse lookup to identify potential class members
"follows an accepted and often used method in providing notice to potential TCPA class
members."); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 245 (D. Ariz. 2019) (noting that
"the reverse lookup process is the industry standard and is commonly used in TCPA cases.");
*LaVigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 296 (D.N.M. 2019) (affirming the use
of a reverse lookup notice procedure to identify class members).

The goal of class certification "is not to identify every class member at the time of
certification, but to define a class in such a way as to ensure that there will be some
administratively feasible way for the court to determine whether a particular individual is a
member at some point." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019)

(cleaned up).  As we previously noted, should PillPack "identify that certain numbers included in the class are not the subscribers or customary users of the called numbers, the Court could adopt measures to filter out those Class members."  (Dkt. No. 140 at 15.)  The Court ultimately retains broad discretion to amend the class at any point prior to final judgment.

In sum, the Court finds Williams has presented sufficient evidence to establish "there are 'questions of law or fact common to class members' that can be determined in one stroke." *Olean*, 31 F.4th at 664.  PillPack's arguments notwithstanding, this is sufficient to satisfy both the predominance and commonality requirements of class certification.

   c.   Typicality and Adequacy[1]

The Court also finds Williams's claims and defenses are typical of the proposed class and that he and class counsel are adequate class representatives.

Rule 23(a) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508) (cleaned up).  Class certification should not be granted where defenses unique to the purported class representative threaten to subsume

---

[1] Because the parties' typicality and adequacy arguments are intertwined, the Court chooses to address the two together.

the litigation with inquiries unique to that representative.  *See id.*; *see also Hanon*, 976 F.2d at 508.

Adequacy is a similar, though distinct, test from typicality.  "To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Williams argues he satisfies both the typicality and adequacy prongs of Rule 23(a).  First, he argues his new proposed class addresses concerns raised by the Court in prior orders (Dkt. Nos. 140, 220)—namely that his phone number was not included in the list he purported to rely on to establish membership in the class and that some class members may have consented to calls.  (Dkt. No. 228 at 24–25).  Second, he asserts he "has no antagonistic or conflicting interest with the members of the proposed class" and that he and class counsel have worked to diligently prosecute claims on behalf of their proposed class.  (Dkt. No. 243 at 25.)  PillPack, in response, argues: 1) Williams is still not typical of his purported class; 2) Williams will face unique defenses; and 3) Williams's credibility is suspect.  (Dkt. No. 243 at 27–28.)

The Court agrees with Williams that he is typical of his proposed class.  First, Williams has presented evidence his phone number is included in the PM Transfer Records and that, pending the Court's modification, the newly proposed class excludes those parties that expressly consented to receive calls from PillPack.  (*See* Dkt. Nos. 164-3 at 3; 229-28 at 3; 229-48 at 2.)[2]

---

[2] As discussed above, *see* Section IV.C.b.ii *supra*, there is no affirmative evidence that any call was exclusively handled by a live agent, obviating the Court's prior concerns (*see* Dkt. No. 220 at 11).

ORDER GRANTING  IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (DKT. NO. 228) - 17

1    Second, the Court is not convinced PillPack's consent defense as to Williams is

2   sufficiently unique so as to render Williams an unfit class representative.  PillPack argues,

3   "Plaintiff is atypical of and inadequate to represent his newly proposed class, whose claims

4   depend on the content of the opt-in forms they submitted—not whether they submitted an opt-in

5   form." (Dkt. No. 243 at 28.)  Specifically, PillPack asserts it is uncertain whether Plaintiff

6   submitted an opt-in consent form under the name of "Michael Morgan," which Plaintiff denies,

7   and that litigation of this defense is unique from PillPack's defenses against other proposed class

8   members.  (*Id.*)

9    PillPack's citations to "wrong party" cases are inapposite.  In *Buonomo v. Optimum*

10   *Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014), for example, the court found the plaintiff was

11   atypical of the proposed class because the class contained both debtors who may or may not have

12   consented to receive calls from debt collectors and "wrong parties" who received calls because a

13   prior owner had consented to receive such calls. 301 F.R.D. at 297.  Since the plaintiff asserted

14   he was the "wrong party" being called, which raised a distinct defense under the TCPA, their

15   defense was not typical of the class at large.  *Id.*  Here, Williams does not assert PillPack is liable

16   to him and other class members because their alleged agents called the wrong party, but rather

17   that PillPack's alleged agents called him and other class members without proper express written

18   consent.  Even if Williams had, in fact, submitted an opt-in consent for a "Michael Morgan" at

19   the web address identified by PillPack, Williams alleges, and PillPack does not appear to contest,

20   that the website on which Mr. Morgan submitted a consent form did not list PillPack as one of its

21   marketing partners.  (*See* Dkt. No. 164-3.)  Thus Williams, like all proposed class members,

22   received an avatar or prerecorded call from a third-party telemarketer who allegedly lacked

23   express written consent to contact Williams as to PillPack's offerings and a critical question for

24

1   the case is "whether consent for calls from the telemarketer (as opposed to the seller) is valid

2   consent under the TCPA."  (Dkt. No. 249 at 15.)

3          PillPack's vague references to Plaintiff's credibility are too cute by half and not sufficient

4   to make him an unfit class representative.  PillPack does not directly assert Williams spoliated

5   evidence by downloading CCleaner.  Rather PillPack alludes to such claims by raising vague

6   questions about Williams's "credibility" throughout their response.  (*See, e.g.*, Dkt. No. 243 at

7   29.)  Though a class representative's credibility is certainly relevant to the Court's consideration

8   of their adequacy, "'[c]redibility problems do not automatically render a proposed class

9   representative inadequate.'"  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal.

10  2010) (quoting *Ross v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113, at *4 (N.D. Ill.

11  Oct. 8, 2010)).  To the extent PillPack claims Williams spoliated evidence, PillPack should bring

12  such claims in a proper motion for this Court to consider.  The Court will not countenance vague

13  aspersions otherwise.  Nor are such aspersions directly relevant to the Court's adequacy analysis.

14  Only "confirmed examples of dishonesty" are relevant to a class representative's adequacy.  *See*

15  *Harris*, 753 F. Supp. 2d at 1015.

16         PillPack does not contest Williams and his class counsel will prosecute the action

17  vigorously on behalf of the class or that Williams's interests are otherwise at odds with the

18  proposed class.  As such, the Court considers these points conceded.  The Court thus finds

19  Plaintiff is typical of his proposed class, does not suffer from any unique defenses that threaten

20  to subsume the litigation, and that Plaintiff and Plaintiff's counsel[3] are adequate representatives

21  of the proposed class.

22

23

24

---

[3] The Court previously determined that Terrell Marshall Law Group PLLC, Smith & Dietrich Law Offices PLLC, and Paronich Law PC would constitute adequate Class Counsel (Dkt. No. 140 at

d.   Superiority of Class Action

Finally, the Court finds a class action is superior to alternative methods of adjudicating the dispute.  *See* Fed. R. Civ. P. 23(b)(3).

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case. This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023 (citation omitted).

The TCPA provides for limited statutory damages that an individual may recover.  *See* 47 U.S.C. § 227(b)(3).  "If plaintiffs cannot proceed as a class, some-perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover."  *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *see also Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *3 (W.D. Wash. Feb. 3, 2016) ("[R]esolution of thousands of claims in one action is superior to individual lawsuits with small damages amounts.").  We thus find it likely that class members' interest in "individually controlling the prosecution or defense of separate actions," *see* Fed. R. Civ. P. 23(b)(3)(A), is unlikely to outweigh the benefits of collective litigation.

Williams represents, and PillPack does not dispute, there are no other cases currently pending that address the calls at issue in this litigation.  (Dkt. No. 228 at 31.)  And the Court is not aware of any reason why concentrating the litigation in this forum is undesirable.  *See* Fed. R. Civ. P. 23(b)(3)(C).  PillPack asserts, "[t]he need to resolve myriad issues on a case-by-case

_____

18) and sees no reason to disturb this prior ruling.  (*See also* Dkt. Nos. 31 at 1–4; 32 at 1–5; 229 at 1–7).

basis, as outlined above, raises intractable manageability issues that render class treatment inferior to individual adjudication." (Dkt. No. 243 at 29.)  However, the Court is convinced common questions based on common evidence predominate and any individual issues may be litigated in an orderly and manageable fashion.

Finally, the Court does not find the proposed class, pending the Court's modification, to be overbroad.  The Ninth Circuit has held that Federal Rule of Civil Procedure 23 permits a court to certify a class that "potentially includes more than a de minimis number of uninjured class members." *Olean*, 31 F.4th at 669; *see also Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 663 (9th Cir. 2022).  What ultimately matters is whether the Court has determined common questions predominate over individual ones.  To the extent the Court determines in the future the class contains parties who are not able to recover on the merits, the Court may further refine the proposed class.  Fed. R. Civ. P. 23(c)(1)(C); *see also Olean* 31 F.4th at 669 n.14.

## V       CONCLUSION

Accordingly, and having considered Plaintiff's motion (Dkt. No. 228), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS Plaintiff's motion GRANTED in part.

1.   Pursuant to Rule 23(c)(1)(C), the Court certifies the following class:

All persons or entities within the United States who between March 13, 2018, and June 16, 2019, received a non-emergency telephone call promoting goods and services on behalf of PillPack, LLC as part of the PillPack Performance Media campaign:

    i.    to a cellular telephone number through the use of an artificial or prerecorded voice; and

    ii.    Performance Media or its agents live transferred the call to a PillPack call center on the DNIS 866-298-0058; and

    iii.    Performance Media or its agents did not obtain the cellular telephone number through Rewardzoneusa.com, Nationalconsumercenter.com,

finddreamjobs.com,  instantplaysweepstakes.com,  startacareertoday.com, samplesandsavings.com,  sweepstakesaday.com,  Surveyvoices.com,  or Financedoneright.com between June 19, 2017, and May 3, 2019, before the date(s) of the call(s).[4]

2.  Plaintiff Aaron Williams is APPOINTED as Class Representative.

3.  Terrell Marshall Law Group PLLC, Smith & Dietrich Law Offices PLLC, and

Paronich Law PC are APPOINTED as Class Counsel pursuant to Federal Rule of

Civil Procedure 23(g).


Dated this 23rd day of December, 2022.


David G. Estudillo
United States District Judge

---

[4] The proposed class identified in Plaintiff's motion separated Financedoneright.com from the other websites.  (*See* Dkt. No. 228 at 10.)  Plaintiff's expert, however, analyzed Financedoneright.com's records together with the records of the other websites using the same dates ranges for all websites.  (*See* Dkt. No. 229.)  Therefore, the Court includes Financedoneright.com with the other websites in paragraph iii.

ORDER GRANTING  IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (DKT. NO. 228) - 22