```
 1              UNITED STATES DISTRICT COURT

 2        WESTERN DISTRICT OF WASHINGTON AT TACOMA

 3  _____

 4                             )
    AARON WILLIAMS, on behalf of )
 5  himself and all others      ) 3:19-cv-05282-DGE
    similarly situated,         )
 6                             ) Tacoma, Washington
                Plaintiff,      )
 7                             ) October 5, 2023
    v.                          )
 8                             ) Motion Hearing
    PILLPACK LLC,               )
 9                             ) 9:00 a.m.
                Defendant.      )
10  _____

11
              VERBATIM REPORT OF PROCEEDINGS
12       BEFORE THE HONORABLE DAVID G. ESTUDILLO
              UNITED STATES DISTRICT JUDGE
13  _____

14

15

16

17

18

19

20

21

22

23

24      Proceedings stenographically reported and transcribed
              with computer-aided technology
25
```

```
 1

 2                              APPEARANCES

 3

 4

 5    For the Plaintiff:      BLYTHE H. CHANDLER
                              BETH E. TERRELL
 6                            Terrell Marshall Law Group PLLC
                              936 North 34th Street
 7                            Suite 300
                              Seattle, Washington
 8
                              WALTER M. SMITH
 9                            Smith & Dietrich Law Offices PLLC
                              3905 Martin Way East
10                            Suite F
                              Olympia, Washington
11

12    For the Defendant:      KENNETH E. PAYSON
                              ERIC FRANZ
13                            LAUREN B. RAINWATER
                              Davis Wright Tremaine
14                            920 Fifth Avenue
                              Suite 3300
15                            Seattle, Washington

16

17

18

19

20

21

22

23

24

25
```

```
 1                          MORNING SESSION

 2                          OCTOBER 5, 2023

 3          THE CLERK:  This is the matter of Williams versus

 4    PillPack LLC, Cause No. CV19-5282-DGE.

 5       Counsel for plaintiff, please make an appearance.

 6          MS. CHANDLER:  Blythe Chandler for plaintiff.  Also

 7    with me is my law partner Beth Terrell and Walter Smith.  I

 8    will be handling the hearing this morning.

 9          THE CLERK:  For defendant.

10          MR. PAYSON:  Good morning.  Ken Payson with Davis

11    Wright Tremaine representing Defendant PillPack.  With me are

12    my partner Lauren Rainwater and Senior Associate Eric Franz.

13    I will be handling the hearing today.

14          THE COURT:  Thank you to all of you.  Good morning

15    again to everyone as well.  I appreciate you taking the time

16    to be here with me today.  I want to go over the motion to

17    compel.  I have read the materials.  Actually, I want to

18    start off with some basic questions.  Even though I read the

19    materials, doesn't mean I understand fully all the details.

20       First, plaintiff, as I understand it, the notice has been

21    sent in line with the September 15 deadline based on what was

22    obtained from the carriers; is that correct, or am I not

23    correct?

24          MS. CHANDLER:  That is correct, Your Honor.  The

25    administrator has sent notice based on both the carrier
```

1    subpoena responses and the TransUnion reverse look-up process

2    consistent with the order.

3         THE COURT:  Okay.  Basic question is:  Why do you

4    need these 7,000 or so names at this point if those notices

5    have gone out, based on the information that has been

6    cross-referenced from TransUnion and from the subpoenas?

7         MS. CHANDLER:  Two reasons.  The first is there are

8    some telephone numbers on the class list for which we have

9    not, through any of the available sources so far, identified

10   the subscriber name and related contact information.  And so

11   PillPack may have some of those amongst its 7,385 numbers --

12   contact information associated with numbers.

13        The second reason is there is a substantive goal for us of

14   knowing who signed up for PillPack in this case, which is

15   evidence of ratification.  The fact that there are this

16   number of people is evidence of ratification.

17        More importantly, Your Honor, PillPack's -- one of its

18   main defenses throughout the case has been to question the

19   correctness of the information that we are able to obtain

20   through carrier subpoenas or reverse lookups, or any other

21   means in order to provide notice.  Being able to verify the

22   results that we obtained through the other sources against

23   PillPack's own information, I think, would go a long way to

24   addressing a number of those arguments.  So for all of those

25   reasons.

1    THE COURT:  Just so I understand, because I want to
2  make sure I have a good understanding here, if PillPack were
3  to tell you these are the numbers that we have the names for
4  7,000 or so individuals, and then you go back with the
5  administrator and say, hey, here are the numbers, presumably
6  the administrator can look at the numbers and say, oh, we are
7  able to identify 5,000 of them, and there is actually only
8  2,000 of them that we still need information from.  Arguably,
9  you don't need all 7,000 potentially until you find out what
10  the administrator can or cannot verify they have already sent
11  notice to.
12    MS. CHANDLER:  I think that is true for immediate
13  purposes.  There has been a lot of fighting in this case over
14  the adequacy of notice.  I think in some ways the fact that
15  PillPack has been in possession of this information about
16  class members that it has refused to provide and frankly
17  refused to acknowledge it had for years has resulted -- we
18  have some concern that it has resulted in using this as a
19  sword and a shield, sort of cherry picking challenges to who
20  we identify.  I don't know what sources of information they
21  are using.
22    These are the names and addresses of people that the Court
23  has appointed class counsel to represent.  It is information
24  that I think is produced as a matter of course in class
25  action cases.  We should know, you know, what the full

```
1    available range of information about class members is.
2        I think in terms of verifying claims processes down the
3    road, this is going to be an ongoing problem with challenges
4    to the adequacy of the information.
5            THE COURT:  All right.  Thank you.
6        Then, let me ask from the defense side, so I understand,
7    what exactly are these names on this list, Mr. Payson, if you
8    can describe for me?  Obviously, they are names on a list
9    with some contact information.  What does that mean?  What
10   does it tell us about these individuals?
11           MR. PAYSON:  Your Honor, it is important to bear in
12   mind -- this is in the Uribe declaration, Docket 303, at
13   paragraph 5, he explains the names and contact information --
14   these are names and contact information in PillPack's user
15   profile record that were provided to PillPack by individuals
16   for purposes of fulfilling medication needs as prescribed by
17   treating prescribers.  As the declaration explained, these
18   phone numbers, many of them were provided sometimes years
19   before or years after the call to transfer records that
20   plaintiffs are now claiming is a class list.
21       The notion of plaintiffs that these are the identities of
22   class members is simply not true and not borne out by the
23   record.
24       It might be helpful to provide a little bit of context for
25   this.  As plaintiffs acknowledge, they have faced
```

1    difficulties from the get-go in identifying class members.

2        It is important to bear in mind, and if you will indulge

3    me a little bit, Your Honor, I think as plaintiff explained,

4    this has been ongoing, and so some factual context might bear

5    mentioning.

6            THE COURT:  I want to know what these names actually

7    tell us, the contact information.  I think you said the

8    representation is these, in fact, are individuals who

9    purchased some type of prescription from PillPack?

10           MR. PAYSON:  These are individuals that contacted --

11           THE COURT:  Not just contacted, actually purchased

12   some type of medication from PillPack?

13           MR. PAYSON:  I understand among the records some

14   purchased.  So they call up, they say, "I am interested in

15   purchasing prescription medication."  They go through the

16   process of providing their name, contact information, the

17   like, as part of that process, and some ended up purchasing,

18   and I believe some ended up not.

19           THE COURT:  Some did purchase, some did not.  The

20   names on this list either did purchase medication and names

21   on this list possibly did not purchase medication?

22           MR. PAYSON:  Yes.  But in all circumstances, they

23   contacted PillPack, a pharmacy, and provided their name and

24   contact information as part of at least an inquiry with

25   PillPack.

1       For example, somebody calls up, they have a prescription

2  for Adderall.  They are not happy with the Safeway price.

3  They may call PillPack and ask if PillPack has it available

4  and at what price.  As part of that process, they provide

5  their name, information, maybe the prescription.  At the end

6  of the day they say, "Thank you for the information.  I am

7  not going to purchase."

8       Under HIPAA and under the Health Care Information Act,

9  provision of health care information to a health care

10  provider, it doesn't turn on whether there has been a

11  purchase.  It turns on whether --

12       THE COURT:  So I understand it as well, let's say I

13  am calling on behalf of my father, who is 85 years old,

14  doesn't speak English, so isn't able to communicate, am I on

15  this list, if I call and say, "Hey, I want to give you the

16  information about my father, but here is my contact

17  information and my telephone number and my address because I

18  am the representative on his behalf trying to get these

19  medications for him"?  I am inquiring actually not about

20  myself, even though you have my contact information, I am

21  inquiring on behalf of my father.  Who would actually be the

22  one that is on that list?  Is it the person that calls for

23  the inquiry or is it the information -- again, we are talking

24  about phone numbers on who they contact.  I call, I give you

25  my number as the contact person, I am not actually making the

1   call for me, I am doing it for my parents.  Would my name be

2   on that list or would my father's name be on that list?  And

3   the contact information, would it be under my telephone

4   number or under my father's telephone number?

5        MR. PAYSON:  Your Honor, I have to confess, I don't

6   know the answer to that question, but can find out.

7        THE COURT:  If it is me calling on behalf of somebody

8   else and you have my contact information, it is not really my

9   quote/unquote medical information we are talking about, it is

10  my father's, but you have my contact information and it is

11  part of the list, and it is not -- at least from your

12  argument, it wouldn't be medical information.

13       MR. PAYSON:  Your Honor, as I said, I don't know with

14  regard to the user profile records where and how PillPack

15  stores information in the scenario provided.  I simply don't

16  know the answer to whether they even differentiate or, for

17  instance, collect that information separately so we could

18  differentiate that circumstance.  I am happy to find the

19  answer and report back to the Court.

20       THE COURT:  You are asking me to make a decision

21  based on the record.  The record is not clear right now.  I

22  am trying to find out what I can glean from this record.  If

23  you are telling me the record is not clear, the indication is

24  you don't know if it actually relates to individuals' medical

25  information or not as it could be a representative that calls

1    on behalf of somebody else, or could be the actual person.

2    The record right now is unclear, according to you?

3            MR. PAYSON:  Your Honor, the record is clear that

4    certainly among the universe of 7,000-plus are customers of

5    PillPack who directly provided the name and address

6    information.

7            THE COURT:  Could be one person, it could be all

8    7,000, you just don't know which ones?

9            MR. PAYSON:  Right, but if we are unable to

10   differentiate that, I think under HIPAA and the Health Care

11   Information Act we have to err on the side of patient privacy

12   and cannot simply disclose all of it when we know with

13   certainty some of those are provided by individuals that

14   provided their name and address information to purchase

15   prescription drugs or for direct inquiry on behalf of

16   themselves for purchase of prescription drugs.

17           THE COURT:  Thank you.

18           MS. CHANDLER:  Your Honor, may I briefly address

19   something I think is in the record with relation -- that

20   relates to the sources of the names?

21           THE COURT:  Ms. Chandler, go ahead, briefly.

22           MS. CHANDLER:  Thank you.  The data file that

23   Mr. Uribe's declaration discusses, PP003362, is a list of the

24   people who -- the telephone numbers that were transferred to

25   the PillPack's incoming phone line that is at issue in this

1   case.  That spreadsheet includes a category of information

2   which is disposition code.  Basically, it shows what happened

3   after Performance Media transferred the class member's call

4   to PillPack, and thousands of them, for example, are not

5   interested or do not call.  But the disposition code for

6   4,702 of those numbers is, quote, "PP-signup complete."

7       Those are people who, as a result of the illegal calls in

8   this case, apparently signed up for PillPack.  So I guess the

9   notion that this information is not reliable to identify who

10  was called is wrong.

11      Second, Your Honor, I would say it was certainly never

12  represented to us before today that any of the people whose

13  information was being withheld were not actual PillPack

14  customers.

15          THE COURT:  Let me ask this for of, Ms. Chandler, so

16  I want to make sure I understand.  What you are saying is of

17  these 7,000 -- using round numbers here.  Of these

18  approximately 7,000 names, 4,000, at least from what you can

19  tell, actually signed up.  So then by definition, does that

20  mean 3 ,000 did not sign up?

21          MS. CHANDLER:  I would like know the answer to that,

22  Your Honor.  Did they sign up later because PillPack

23  continued to follow up and call them after the initial call

24  or did they sign up at another time?  That would be nice to

25  know.  I don't have the answer to that.  PillPack presumably

1    does in the records they are refusing to provide.

2            THE COURT:  Mr. Payson, do you agree or disagree with

3    Ms. Chandler's characterization that at least based on these

4    codes from what she can tell, 4,000 indicate they did sign

5    up?  Of course, again, from her representation, not sure what

6    happened with the other 3,000, approximately.  Do you agree

7    with that representation or disagree?

8            MR. PAYSON:  The plaintiff is now going afield from

9    their briefing or the record submitted on this motion.  I

10   would have to have a chance to look back at that.  I don't

11   know that -- it sounds like plaintiff is speculating about

12   some record that PillPack has produced that aren't part of

13   the record or any part of the briefing in this present motion

14   to compel.

15      I would need to go back.  I don't know whether plaintiff's

16   inquired in the 30(b)(6) deposition with that document and

17   asked PillPack what that means.  As I am sitting here now, it

18   is outside of the context of the current briefing and record

19   for this motion, and I am unable to address that.

20           MS. CHANDLER:  Respectfully --

21           MR. PAYSON:  Let me finish, please.

22      I need to take a look at that in the context of the other

23   discovery in this case, whether, as I said, plaintiffs have

24   sought discovery on the meaning of that and confer with my

25   client on the meaning of that, what it represents.  I am

1  unable presently to respond to plaintiff's speculation about

2  a document they did not cite in support of their motion to

3  compel.

4          MS. CHANDLER:  Paragraph 7 of Mr. Uribe's declaration

5  submitted by PillPack specifically discusses the file I have

6  just addressed, Your Honor.

7          THE COURT:  I appreciate that.  It doesn't discuss

8  the 4,000, if I understood correctly?

9          MS. CHANDLER:  That's true, Your Honor.

10          THE COURT:  All right.  So from what I understand --

11  actually, no, Ms. Chandler, what you are seeking at this

12  point, Ms. Chandler, is name and basic contact information,

13  any address or email and telephone number; is that correct?

14  Or is there something else?

15          MS. CHANDLER:  That is correct.  We are seeking the

16  names, addresses and email addresses, if they have them, of

17  the class members that we have been appointed to represent.

18  That information is not health care information.  I would be

19  happy to address why.

20          THE COURT:  All right.  The issue, then, obviously is

21  whether or not this is health care information, and I think

22  we are focusing on the state statute because as I understand

23  it under the federal statute, HIPAA, so long as it is an

24  order from the court, it is not really an issue at this

25  point.  It is really the definition of the state statutes

1   that we are dealing with here.

2       I am just going to get straight to the point.  If I

3   understood your briefing, Mr. Payson, you are really relying

4   on *Doe vs Group Health Co-Op of Puget Sound* case.  This is

5   the appellate case from Division I of the Washington State

6   Court of Appeals, at least that's where I see the main

7   argument coming from.  Am I incorrect on that definition or

8   that position that that is really the case you are relying

9   on?

10          MR. PAYSON:  Your Honor, with due respect, you are

11  incorrect.  The main case we are relying on is *Angulo vs*

12  *Providence Health Care*.  Plaintiffs rely on *Doe*.  We

13  distinguish it and explain why it is in support of PillPack's

14  position.

15      I think we can streamline the issues before the Court's

16  resolution.

17      As a threshold matter, PillPack stands ready to produce

18  the names and contact information of the patients who sought

19  prescription medications from PillPack, to the extent they

20  provided phone numbers that overlap with the call transfer

21  list that plaintiff claims is a class list, even if it was

22  provided years before or years after the call transfer.

23      We are concerned about the two statutory bars.  We think

24  there is an easy solution here.  In the *Angulo vs Providence*

25  *Health Care* case pending before Judge Robart, DWT is lead

counsel for that case.  Judge Robart faced almost identical
issues here and resolved them in a way that provides a clear,
simple means to both protect the patient privacy concerns at
issue and to allow plaintiffs access to the protected health
care information of the folks who contacted PillPack and
provided their names and contact information seeking
prescription drug services.

Your Honor, we had cited you to Judge Robart's approach in
that.

Much like here, the *Angulo* case involves patients who
underwent surgeries with two of Providence's former doctors.

THE COURT:  Specific surgeries, if I am not mistaken,
and the class was dealing with a procedure that was employed,
if I am not mistaken.  You can really identify exactly what
the medical treatment was, in essence, the kind of subject
area of the medical treatment.

MR. PAYSON:  No, not necessarily, Your Honor.  It is
important to keep in mind in that case the named plaintiffs
underwent spine surgery.  They are seeking to represent a
class of anybody who underwent any type of surgery performed
by those doctors that had a broad neurosurgery practice and
were involved in other neurosurgical treatments beyond that.

The core issue and similarity there is that their name and
contact information was provided to Providence for purposes
of surgical treatment.  It doesn't matter how narrow the

```
 1   focus is.  It is unquestionable they provided it to a
 2   hospital for medical health care treatment.  By definition --
 3          THE COURT:  Surgical treatments.  There is actually a
 4   class of treatments that is defined.
 5          MR. PAYSON:  Your Honor, we submit seeking
 6   prescription medicine -- for example, HIPAA would preclude
 7   any pharmacy, on a discovery request, from simply turning
 8   over the patient list.
 9          THE COURT:  We are dealing with a definition of the
10   state's definition because, again, under HIPAA, the federal
11   one, a court order would -- there is an exception for a court
12   order.  From my perspective, HIPAA's definition doesn't
13   matter.  It is the state one.
14          MR. PAYSON:  I misspoke.  Under the Health Care
15   Information Act, by providing names and addresses, for
16   example, to a pharmacy, necessarily a pharmacy produces a
17   list of people who provided their names and contact
18   information to it, as plaintiffs have conceded.  One can
19   infer then if PillPack turns over a list of people who did
20   just that, it is people who contacted PillPack seeking
21   prescription medication, which in and of itself -- and
22   plaintiffs don't dispute that PillPack is a health care
23   provider subject to the HCIA or that prescription medication
24   is health care treatment.
25          THE COURT:  I think you confirmed for me that you
```

1   don't know if they actually received anything, and you are

2   not certain whether the names relate to people that actually

3   were inquiring about themselves or on behalf of a third

4   person, whether it be a parent or another close family

5   member, someone they maybe have some type of power to turn

6   their medical information over.

7          MR. PAYSON:  We are certain among the group certainly

8   are people who meet all those criteria.  To the extent

9   PillPack's records can differentiate among those, the fact

10  that within the larger group there may or may not be people

11  who meet the hypothetical Your Honor advanced, it would not

12  be a basis to disclose other people's protected health care

13  information.

14      The patient privacy interest at stake under the Health

15  Care Information Act would weigh in favor of non-disclosure

16  in those circumstances.

17         THE COURT:  All right.  Ms. Chandler, any comments on

18  this issue?

19         MS. CHANDLER:  The Court was correct that the state

20  appellate authorities interpreting the state statute do

21  govern whether or not names and addresses are health care

22  information.

23      I would like to start with the definition in the statute.

24  RCW 70.02.010 defines health care information as two things:

25  Information that, quote, identifies or can readily be

1  associated with the identity of a patient and directly

2  relates to the plaintiff -- patient's health care.

3       The issue here is whether being on a PillPack customer

4  list directly relates to health care.  It doesn't under *Doe*

5  *vs Group Health*.  I think the Court has already read it.

6  Just as a refresher, that's the case where a Group Health

7  employee who had specifically taken steps to avoid disclosure

8  of his bipolar disorder to co-workers at Group Health after

9  his information was used to train those same co-workers on

10 how to process mental health claims.

11      What the Court decided there is there is a question of

12 fact as to whether that was a disclosure of health care

13 information.  That a reasonable person could look at those

14 circumstances and say it is not, or a reasonable person could

15 look at them and say it is.

16      Specifically, in reaching that conclusion, at 85 Wn.App.

17 at page 217, the court says, quote:  "The mere fact a person

18 has a consumer number does not, by itself, directly relate to

19 his health care."

20      That information, standing alone, would not have been

21 covered by the statute and is not covered here.

22      The *Angulo* case is distinguishable for exactly the reason

23 Your Honor said.  The class at issue in that case is a group

24 of people who received specific types of surgical procedures

25 from specific doctors.  That is nothing like the list we are

1   asking for here.

2       The statement can be said of the *Wright vs Jeckle* case,

3   the other relevant Washington appellate authority in which

4   this sort of notice procedure was devised.  It was necessary

5   because the list of people that the plaintiff's counsel was

6   asking for and who were going to receive a notice were people

7   who went to a specific doctor for treatment of obesity and

8   received a specific medication, Fen-Phen.  There you can

9   again see why there is reference to a, quote, specific type

10  of treatment.  That is both the language of both the *Doe*

11  case, again on page 217, as well as in the *Wright* case.

12      What Washington requires before finding that this is

13  medical information is that disclosure reveals a specific

14  type of treatment that this plaintiff has sought -- or the

15  patient has sought.  That's simply not what we have here.

16      We are asking for a list of, at most, PillPack customers.

17  Apparently, though, perhaps not even all of them are that.

18      Finally, I would like to point out that the overall

19  statutory scheme of the HCIA just doesn't make sense with

20  PillPack's interpretation.

21      RCW 70.020.060 sub 1 provides a procedure for a lawyer

22  seeking a patient's health care information to provide

23  advance notice to the patient, which states -- stating what

24  health care information the person is seeking in discovery

25  and giving the patient time to object.

1      The plain implication of that procedure is that the

2   patient's name and address, which is necessary to provide the

3   notice, is not the health care information that is protected

4   from discovery.  If it was, the notice would be impossible.

5      We see that playing out right here.  What we are trying to

6   do in this case is provide the best possible notice to the

7   members of the certified class that we have been appointed to

8   represent, and we can't do it because PillPack is refusing to

9   give us the names and addresses.

10      I didn't see a response to that statutory scheme argument

11   anywhere in PillPack's brief.

12      I also think that my issue with the suggestion that, oh --

13   certainly if a separate notice gets sent, it should be paid

14   for by PillPack.  Even sending a separate notice to people

15   saying the class counsel in this case is asking for your

16   health care information, by which we mean your name and

17   address, is going to be very confusing to people, and I don't

18   think makes sense and I don't think it is in any way the

19   purpose or intent of the statute.

20          MR. PAYSON:  Your Honor --

21          THE COURT:  Go ahead.

22          MR. PAYSON:  Plaintiff went beyond my discussion in

23   *Angulo*.  I request the opportunity to respond.

24          THE COURT:  Yes.

25          MR. PAYSON:  With respect to *Doe*, *Doe* also says, and

1    I quote at 85 Wn.App. 216:  "While the plaintiff's consumer

2    number by itself did not directly relate to health care, a

3    reasonable person could infer from the context of disclosure

4    plaintiff was receiving mental health treatment," close

5    quote.

6        Here, by turning over the names of people who contacted

7    PillPack exclusively inquiring about prescription medication

8    services, as plaintiffs admit you can infer they were

9    inquiring about prescription medication services, plaintiff

10   relies on *Jeckle*.  As we have explained in our cross motion

11   for protective order, in there it was obesity health care

12   treatment.  Plaintiffs claim that under the HCIA we have the

13   burden of showing there is a specific type of health care

14   treatment is not correct.

15       Under RCW 70.02.010(17), "health care information means

16   any information, whether oral or reported in any form of

17   media, that, one, identifies and can readily be associated

18   with identity of a patient and, two, directly relates to the

19   patient's health care."

20       Health care, in turn, is defined simply as -- this is RCW

21   70.02.010, sub 15, sub (a), health care means, quote, "any

22   care, service, or procedure provided by a health care

23   provider to diagnose, treat, or maintain a patient's physical

24   or mental condition."

25       It doesn't have to be a specific type of mental condition.

1    It doesn't have to be spine surgery, neurosurgery.  If it

2    relates to the patient's health care, there can be no

3    question but somebody submitting their name and contact

4    information or pharmacy directly relates to health care.

5        Now, I acknowledge that Your Honor posited a scenario

6    where there may be, and I simply don't know whether there is

7    a way to differentiate if somebody provided their name on

8    behalf of a family member or someone else.

9        The notion that we have to specify a specific type of

10   health care treatment finds no support anywhere in the

11   statute.

12       Moreover, in *Jeckle*, it really reinforces the propriety of

13   the approach that Judge Robart took.  In *Jeckle*, plaintiff's

14   counsel -- they wanted the health care information.  The

15   court did not allow it to go to plaintiff's counsel.  It went

16   solely to the notice administrator.  In that case, it had to

17   be segregated so people who had knowledge of the health care

18   condition did not have knowledge of the names and addresses.

19   That all supports -- and the easy way to protect both the

20   privacy interest and to give plaintiffs the information they

21   seek is simply, as in *Angulo*, for the parties to cooperate

22   together, to propose a notice plan, plaintiff's flag it would

23   be confusing.  We can work together to minimize the

24   confusion, as we did in *Angulo*, to provide a simple notice:

25   Here is a pending lawsuit.  You may be a member of the class

1    that has been served in the lawsuit.  A little neutral

2    explanation of what the lawsuit is about.  The defendant,

3    PillPack, has the names and addresses of people who provided

4    the names and addresses to it that may be -- may contain

5    those of the class members.  To comply with applicable law,

6    we are asking simply for your permission to allow PillPack to

7    produce that.  It is a relatively simple process.

8        We submit since plaintiffs have the burden and by law

9    typically carry the cost of class notice, but recognizing, as

10   Judge Robart did, part of this is to comply with health

11   privacy obligations of PillPack, we propose, as Judge Robart

12   ordered, the parties split the cost.

13       We can get -- we are ready to produce that information.

14   We just want to make sure we check the boxes and protect the

15   statutory patient privacy rights at issue.  We can quickly

16   put together a proposal.

17       PillPack would be happy to take the laboring oar in doing

18   the first draft to minimize the expense to plaintiffs.  We

19   have worked together cooperatively on other joint submittals.

20       To the extent we can't agree on certain provisions, as in

21   *Angulo*, the parties put in their competing positions like we

22   do on a Rule 26(f) report we submit to the Court.

23       We think we can do that relatively quickly and

24   efficiently, get notice out to these folks, just let them

25   know that for those who consent, we turn over that

1    information.

2         THE COURT:  Speaking about that procedure, it sounds

3    like, whether it is health care information or not health

4    care information, the protective order that was signed talks

5    about getting notice to individuals, non-parties, when their

6    confidential information is disclosed.  I don't know if you

7    have taken a look at that recently.  But paragraph 2 of the

8    protective -- stipulated protective order that was entered

9    defines confidential information to include personal and

10   private information regarding plaintiff and proposed class

11   members, including current and former street addresses for

12   natural persons, Social Security numbers, telephone numbers,

13   email addresses, et cetera.

14        Then, under paragraph 8, it says:  In the event a party is

15   required by a valid discovery request to produce a

16   non-party's confidential information, the party is subject to

17   an agreement -- and the party is subject to an agreement with

18   a non-party not to produce the non-party's confidential

19   information, then the party shall -- and it has all these

20   provisions of providing notice.

21        Arguably, again, whether it is technically HCI or not HCI,

22   it is protected under the protection order and you still have

23   to give notice either way.

24        Ms. Chandler, comments on that?

25        MS. CHANDLER:  Yes.  I don't think -- I think here a

party would be the producing party of the information, and
that party would be PillPack.  I think Section 8 of the
protective order is intended to discuss when documents in
discovery are produced by a non-party in the case, then there
may be some reason that that information would be asked to be
disclosed further by the receiving party.

I just don't think Section 8 contemplates the
circumstances we have here where the information that we are
asking for is in PillPack's possession, a party's possession.
I think the other provisions of the protective order that
govern how information designated confidential should be
handled are what governs how information PillPack would
produce would be handled.

THE COURT:  I am going to read this line again.
Maybe I am misinterpreting this line and you can tell me why
I am misinterpreting it.  It says:  "In the event a party" --
I am assuming it is plaintiff or somebody that is a
defendant.  "In the event a party is required by a valid
discovery request to produce a non-party's confidential
information," and confidential information was defined in
paragraph 2 to include their name, email addresses,
addresses, et cetera.  So in the event a party is required by
valid discovery request to produce a non-party's confidential
information in its possession -- in this case PillPack -- and
the party is subject to an agreement with the non-party not

1    to produce the non-party's confidential information, then the

2    party shall -- it identifies then what the procedure is.

3        Again, sounds like -- maybe I am reading it wrong.  Why am

4    I reading it wrong?  What language in there tells you it is

5    not subject to this procedure?

6            MS. CHANDLER:  I would look at the first paragraph of

7    Section 8.  The terms of this order are applicable to

8    information produced by a non-party in this action and

9    designated as confidential.

10       Here, the information that would be produced would be

11   produced by a party.  Everything else in Section 8 governs,

12   for example, how a third party's data in response to a

13   subpoena that has been designated confidential would have to

14   be handled.  Not information that is PillPack's information

15   in its own possession, custody or control, which it can

16   designate as confidential, subject to all the other

17   protections in the order.

18       I think otherwise PillPack could probably have given us

19   basically nothing in this case that -- including the phone

20   numbers that we already have.  I mean, you know, if any

21   information in its system that pertains to any other person

22   were covered by this provision, it would be a bit of a

23   nightmare, I think.

24           THE COURT:  Okay.  It wasn't raised before.  I am not

25   worried about what was produced already.  I am looking at the

language.  If that second part of paragraph 8 is meant to
deal with non-parties, then arguably it should have said "in
the event a non-party is required by valid discovery request
to produce a non-party's confidential information."  It
doesn't say that.

MS. CHANDLER:  From my perspective, the party in
possession of the information we are talking about right now
is PillPack.  I understand that it is information that
pertains to other people.  The discovery is directed to
PillPack and the responding party is PillPack.  I just don't
think Section 8 governs.  I think it is the other sections of
the order, including 4, which discusses access to
confidential information produced by the parties; 5, which
discusses when the parties may designate confidential
information as well as when non-parties may designate.

I think, actually, I am seeking more context to the term
"non-party."

I would conclude by saying in all the times I have dealt
with the court's model order, to my knowledge every other
lawyer's understanding of what Section 8 addresses is
information sought in discovery from the third parties who
are, quote, non-parties to the case, and the purpose of the
provision is to allow those subpoena recipients to designate
information confidential and have it be protected by the
order, not to require that a responding party provide the

1    notice to any individual whose information might be somewhere

2    in its record but it is expected to produce in a case.

3         THE COURT:  I think I understand what you are saying.

4    I guess I am looking at the language, and that's not what it

5    says.  I can appreciate your comments.  That is not what the

6    language says in that paragraph 8, whether that is an error

7    in the form itself that was used, the model form, which I am

8    about to look up right now to see if I can find the model

9    form.

10        MS. CHANDLER:  Your Honor, maybe I will -- last

11   point, Section 8 is limited to, quote, information produced

12   by a non-party in this action.  The information I am seeking

13   here would not be produced by a non-party.  It would be

14   produced by PillPack.

15        THE COURT:  You say Section 8 is limited to a

16   non-party.  Where does it say that?

17        MS. CHANDLER:  The heading is "a non-party's

18   protected materials sought to be produced in this

19   litigation."  Then the first sentence is that "the terms of

20   this order are applicable to information produced by a

21   non-party in this action."  Not about a non-party in this

22   action.

23        THE COURT:  I definitely agree with the first

24   paragraph.  The second paragraph doesn't limit that, and the

25   title doesn't limit that either.

 1          MS. CHANDLER:  Well, I think "produce a non-party's

 2    confidential information" is entitled to refer back to

 3    information that was produced by a third party and designated

 4    confidential under the order.

 5          THE COURT:  I am looking at our current model

 6    protection order.  I don't know to what extent this

 7    particular order modified the vin, from whatever 2019 looked

 8    like.  The current model order doesn't have any language even

 9    closely resembling what is contained in all of paragraph 8,

10    at least from what I can tell.  That's just a brief review

11    right now.  I don't know to what extent the parties modified

12    this or the older version of the court's model order.

13          MR. PAYSON:  Your Honor, at Docket 11-1 is a red line

14    showing the changes from the model order, and you will see

15    this is not in the model order specifically added by the

16    parties.

17          THE COURT:  Okay.

18          MS. CHANDLER:  I apologize that I misspoke about

19    that.

20          THE COURT:  This language added by the parties,

21    presumably the parties have input as to what this is supposed

22    to mean.  I am just reading it for what it says.  I don't

23    know the answer, other than what it says is what it says.

24          MR. PAYSON:  Your Honor, if I may briefly.  For one,

25    I disagree with the plaintiff and I agree with Your Honor's

1   reading.

2       Two, I know that it dovetails nicely with the statutory

3   protections in the HCIA at RCW 70.02.060(1) for an attorney

4   seeking to obtain the private health information by a

5   discovery request, or compulsory process must, like in the

6   parties' stipulated protective order, provide at least 14

7   days notice to both the patient and provider to ensure they

8   have adequate time to seek protective order.

9       Here, we can both comply with the stipulated protective

10  order in this case and the HCI section I just referenced by

11  following the model that Judge Robart did.  To plaintiff's

12  point, it is impossible to comply without turning over the

13  names and addresses to plaintiffs, that's not true.

14      What we can do is PillPack can engage a notice

15  administrator pursuant to a business associate agreement

16  which allows disclosure both under the HCIA and HIPAA to

17  provide notice, and so we are compliant with both HIPAA and

18  HCIA, give people an opportunity to raise their hand and say

19  whether they consent or not to disclosure of this

20  information.

21      In that way, we may be able to ferret out the hypothetical

22  Your Honor advanced and somebody may feel even more free,

23  please, go ahead and disclose any information.  That wasn't

24  even me, I wasn't seeking prescription medication for myself.

25  We could work with plaintiffs to draft in some type of

1  simple, clear notice that informs people of the pendency of

2  this lawsuit, that PillPack -- they may be a member of the

3  class.  PillPack may have their name and address information,

4  or it does have the name and address information, plaintiffs

5  have asked for it and ask whether people consent.  If they

6  do, we turn it over.

7       THE COURT:  All right.  I think I am ready to make a

8  ruling on this.  I appreciate both sides' argument.  Thank

9  you to both of you.

10      First, I am not going to conclude this information is, in

11 fact, health care information.  When I look at *Doe vs Group*

12 *Health*, context matters.  From what I can tell, one has to

13 look at the context in which something is being disclosed to

14 determine whether -- whether you are able to identify

15 something directly relates.

16      In *Doe vs Group Health*, there was a question of fact.  On

17 the one hand, it concluded that from the context of the

18 disclosure, quote, "we conclude a reasonable person could

19 infer from the context of the disclosure that *Doe* was a

20 recipient of mental health treatment."  The very next

21 paragraph they talk about, at the same time, a finder of fact

22 could reasonably conclude that the information about *Doe* that

23 Group Health disclosed to its trainees was not information

24 directly related to his health care.

25      Again, it is the context that matters.  Here, the context

1    is we have about 7,000 or so names, but from the record, it

2    is unclear which ones actually purchased any type of

3    medication.  It is also unclear the extent to which these

4    names represent individuals who called on their behalf or on

5    behalf of somebody else.

6        When you look at that context, it is hard for anybody to

7    truly identify does the simple identification of a name,

8    address and telephone number actually directly relate to

9    their particular health care.  I don't believe it does under

10   the context and circumstances presented.

11       But looking back to the protective order that the parties

12   negotiated and signed and agreed to, by definition, this

13   information that is sought is, in fact, confidential

14   information of a non-party.  I think paragraph 8 then is

15   triggered and that paragraph does, in fact, require notice,

16   which happens to -- from the Court's perspective, it looks to

17   comply with what is required by the notice provisions of the

18   state health care act which arguably maybe that's why it is

19   there.  Maybe that's why the individuals wanted it to be

20   there.  That's what was negotiated.  I am going to hold the

21   parties to that requirement they agreed to, based on the

22   plain language some type of notice does in fact need to be

23   provided to these individuals before all the information is

24   provided to plaintiff.

25       With that, I will take up Mr. Payson's suggestion that the

1  parties get together and come up with a plan similar to what

2  was identified in the *Angulo* case and identify how it is that

3  they would in fact provide this notice as required by the

4  protection order that was signed in order to disclose this

5  information.

6      Once that plan is put into place, obviously the Court

7  needs to sign the final order, present it so the Court can

8  sign off on it, and then move forward with engaging in that

9  plan in order to disclose that information.

10     In the end, the motion to compel is technically granted,

11 but granted subject to the provisions of the protection order

12 that the parties must comply with Section 8 or paragraph 8 of

13 the protection order and provide that notice.  I think there

14 was a debatable issue here so I am not awarding fees to

15 anyone.  Otherwise, denying any other relief that was

16 requested at this point in time.

17     Any questions about what I just ruled on?

18         MS. CHANDLER:  Your Honor, I would like to know who

19 has to pay for this additional notice.  I understand it was

20 shared in *Angulo*.  The basis for that was a CAFA obligation

21 the plaintiff had.  We have no such CAFA obligation here.  We

22 have a federal claim.  We have already spent significant

23 resources providing notice to the class members.  We will

24 participate in this process if directed.  I would like a

25 ruling on that.  Thank you.

1    THE COURT:  Thank you.  Mr. Payson, comment?

2    MR. PAYSON:  My comments, Your Honor -- thank you --

3  are that plaintiffs ordinarily bear the burden of notice.

4  They should bear the cost.  Beyond that, the Court in its

5  discretion can order that a party pay for the cost they

6  impose on another party by discovery.  We would not be

7  engaging in this notice required under the protective order

8  the parties agreed to but for plaintiff's insistence on this

9  information.  They asked for this information.  They are

10  insisting on it.  They should bear the cost.

11    THE COURT:  Ms. Chandler, any other comments?

12    MS. CHANDLER:  I think -- well, I respectfully don't

13  agree with what the protective order says.  I suppose -- I

14  think parties responding to discovery are ordinarily the

15  parties that bear the cost of that discovery.  PillPack has

16  decided to bring this issue -- has created the issue of

17  refusing to respond to a valid discovery request.  I would

18  note I believe the objections to RFP 35 were waived.  This

19  could have been addressed years ago if we had known they had

20  this information.  I would respectfully request that PillPack

21  be directed to pay for the notice that is necessitated by

22  what they claim to be an obligation on their claim, not on

23  us.  We have already fully paid for the cost of providing

24  notice to the class.

25    THE COURT:  Thank you.  So, like anything, I think I

1   am going to fall back to what *Angulo* did, which is basically

2   split the cost between the parties.  There is something to be

3   said that the general concept of a plaintiff seeking

4   discovery that is possibly burdensome should contribute

5   towards production of that or compilation of production of

6   the discovery.  On the flip side, by its terms, the order

7   does say that the parties shall, which in this case PillPack,

8   shall do X, Y and Z per paragraph 8.  I think it has an

9   obligation as well to contribute.  I am going to split it and

10  say it is a cost borne by both sides, 50/50, whatever the

11  cost may be.

12      I am going to have a very basic minute order issued that

13  relies on my oral ruling that says:  Based on the Court's

14  oral ruling, the Court grants the motion, subject to the

15  provisions in paragraph 8, et cetera.  It will be a very

16  basic order.  To the extent you need any further information

17  about the Court's ruling, you will need to get the transcript

18  in order to review it further.

19      Any questions or any final issue maybe the Court has not

20  touched upon or needs to?

21          MS. CHANDLER:  No, Your Honor, not for plaintiff.

22  Thank you.

23          MR. PAYSON:  No thank you, not for defendant,

24  Your Honor.

25          THE COURT:  All right.  Thank you very much,

1    everyone.  Good luck.  I appreciate all the work you have

2    done.  I know it has been a somewhat contentious litigation.

3    I appreciate the professionalism from both sides.

4           MR. PAYSON:  Thank you.

5           THE COURT:  Take care.  Thank you.

6    (The proceedings adjourned.)

7

8

9                    C E R T I F I C A T E

10

11

12      I certify that the foregoing is a correct transcript from

13    the record of proceedings in the above-entitled matter.

14

15

16

17    /s/ Angela Nicolavo

18    ANGELA NICOLAVO
      COURT REPORTER

19

20

21

22

23

24

25