1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AARON WILLIAMS, | CASE NO. 3:19-cv-05282-DGE |
| Plaintiff, | ORDER ON PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| v. | |
| PILLPACK LLC, | |
| Defendant. | |

## I    INTRODUCTION

Before the Court is Plaintiff Aaron Williams' unopposed motion for preliminary approval of class action settlement.  (Dkt. No. 340.)  The Court GRANTS the motion based on the reasoning below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## II    BACKGROUND

### A.  Factual and Procedural History

The procedural and factual history of this case has been covered extensively in prior orders.  (*See, e.g.*, Dkt. Nos. 140, 220, 258, 259.)  Accordingly, the Court only briefly summarizes the events leading up to the Parties reaching a settlement agreement.

Plaintiff originally filed this suit on April 12, 2019.  (Dkt. No. 1.)  Defendant PillPack LLC is a full-service pharmacy that delivers medications in multi-dose packaging to patients' homes.  (Dkt. No. 62 at 1.)  In 2018, Defendant engaged Performance Media Strategies, Inc. ("Performance Media") to telemarket its services.  (Dkt. No. 63 at 1–2.)  Plaintiff alleged that on March 14 and April 10, 2019, he received calls from a telemarketer using a prerecorded voice message asking if he was interested in a pharmacy service that would ship medications directly to his house.  (Dkt. No. 6 at 1.)  When Plaintiff expressed interest, the call was transferred to a PillPack sales representative.  (*Id*. at 3.)

Plaintiff alleged the calls were made in violation of two subsections of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. ("TCPA"): 1) calls made using an automated telephone dialing system ("ATDS") or an artificial or prerecorded voice without "the prior express consent of the called party," and 2) calls placed to numbers listed on the DNC Registry.  (*See* Dkt. No. 6 at 7–8.)  Plaintiff sued PillPack personally and as the representative of a class of similarly situated persons.  (*Id*. at 5.)  He claimed PillPack was vicariously liable for the telemarketer's violations of the TCPA because PillPack knowingly or willfully caused the autodialed calls to be made to his cell phone despite his lack of consent.  (*Id*. at 3–4.)  Plaintiff sought statutory damages under the TCPA.  (*Id*. at 8.)

1    Plaintiff first moved for class certification on July 24, 2020.  (Dkt. No. 29.)  The Court

2    certified a class of all consumers called as part of the Pillpack-Performance Media campaign.

3    (Dkt. No. 140.)  As a result of new information gained through discovery, however, the Court

4    decertified the class on November 3, 2021.  (Dkt. No. 220.)  On December 23, 2022, the Court

5    granted Plaintiff's motion to recertify a narrower class of people who received the prerecorded

6    voice calls and were transferred to PillPack.  (Dkt. No. 259.)  Having already taken extensive

7    discovery and litigated two summary judgement motions (Dkt. Nos. 126, 258), the Parties further

8    litigated the adequacy of Plaintiff's proposed notice plan (Dkt. No. 279).  A jury trial was set for

9    September 3, 2024.  (Dkt. No. 298.)  On June 5, 2024, the Parties participated in a full-day

10   mediation with Robert Meyer of JAMS.  (Dkt. No. 340 at 7.)  Although the Parties did not reach

11   a settlement agreement, they continued to work with Meyer and ultimately reached a settlement

12   in principle.  (*Id*. at 7–8.)  The Parties then informed the Court that they had reached a settlement

13   agreement.  (Dkt. No. 335.)

14   On August 8, 2024, Plaintiff filed the instant unopposed motion for preliminary approval

15   of the settlement agreement.  (Dkt. No. 340.)  The motion seeks the entry of an order that 1)

16   confirms certification of the settlement class; 2) preliminarily approves the settlement agreement;

17   3) appoints Epiq Systems as the Settlement Administrator; 4) sets a hearing on whether the court

18   should grant final approval of the settlement, enter judgement, and award attorney's fees and

19   expenses to Plaintiff's counsel; 5) approves the Parties' plan for providing class members notice

20   of the action and proposed settlement; 6) directs that notice be given to class members in

21   accordance with the notice plan set forth in the settlement agreement; 7) approves the procedures

22   by which Class Members may choose to opt out of the settlement class and the deadlines

23   proposed to govern those procedures; 8) directs any settlement member who wishes to be heard

24

at the final approval hearing to submit a written notice of objection to the settlement administrator no later that the proposed opt out and objections deadline; 9) approves the claims procedures set forth in the settlement agreement; and 10) establishes various filing deadlines. (Dkt. No. 340-1.)

### B.  Settlement Agreement

The Settlement Agreement creates a fund of $6,500,000 that will be used for court-approved attorneys' fees and costs, any service award to Williams, costs of settlement notice and settlement administration, and payments to class members who submit valid claims.  (Dkt. No. 341-1 at 5.)  To receive a payment from the fund, class members must submit a claim form through the settlement website or by mail.  (*Id*. at 7–8.)  Members will be given "at least 60 days from the date notices are mailed to submit claims."  (Dkt. No. 340 at 8.)  Plaintiff estimates that "[i]f attorney's fees, costs, a service award, and administration costs are approved as requested, the net fund available to pay claimants will be approximately $3,853,000."  (*Id*.)  Thus, if 10% of the class submit a claim, the award per claimant would be about $1,273; if 20% submit a claim, the award would be approximately $636 per claimant.  (*Id*. at 9.)  The Settlement Agreement stipulates that "[i]f there are any Claimant Awards remaining uncashed one hundred eighty (180) calendar days after issuance of the redistribution payments, those amounts will be contributed in *cy pres* to the Legal Foundation of Washington."  (Dkt. No. 341-1 at 11.)  Class members are given the opportunity to exclude themselves from the Settlement or object to the Settlement during the claim period.  (*Id*. at 8–9.)

The proposed notices are drafted in plain language and include key information about the settlement, such as the estimated payments; the deadline to submit a claim, request an extension, or object; the amount of the fee and cost award requested by Class Counsel; the amount of the

service award Williams will request; the estimated cost of administration; and the date of the Final Approval Hearing.  (*Id*. at 22–30).  The notice plan—which is addressed *infra*-Section IV.B.2—"will include direct email or mail notice to Class Members using address information from PillPack's records, wireless carrier subpoena responses, and reverse lookups, along with a Settlement Website containing more detailed information about the case and the Settlement and providing online publication notice."  (Dkt. No. 340 at 18.)

### III    LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) establishes that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  "The purpose of the Rule is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008).  In determining whether to approve a settlement that would bind class members, a court must conclude "that it is fair, reasonable, and adequate" based on a consideration of the following four factors:

A.  the class representatives and class counsel have adequately represented the class;

B.  the proposal was negotiated at arm's length;

C.  the relief provided for the class is adequate, taking into account:

i.    the costs, risks, and delay of trial and appeal;

ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

iii.    the terms of any proposed award of attorney's fees, including timing of payment; and

iv.    any agreement required to be identified under Rule 23(e)(3); and

D.  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the 2018 amendments to the Federal Rules of Civil Procedure, Rule 23(e)(2) did not include the four factors set out *supra* to guide courts in determining whether a settlement was "fair, reasonable, and adequate."  Accordingly, district courts looked to eight fairness factors, often called the *Stanton* factors, developed in Ninth Circuit precedent.[1]  *See In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).  In amending the Rules, the Advisory Committee stated that it did not intend to "displace any factor [developed in circuit law], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.  However, the Ninth Circuit has made it clear that courts must carefully attend to every step of analysis mandated by Rule 23(e)(2)(A–D), as the requirements of the amended rule go "beyond" the judicially created *Stanton* factors:

> [M]any of the *Stanton* factors fall within the ambit of the revised Rule 23(e). But Congress provided district courts with new instructions — such as analyzing the "terms of the settlement" and "terms of any proposed award of attorney's fees" — that require them to go beyond our precedent. Although we need not decide whether a district court always abuses its discretion by applying the judicially manufactured factors . . . we must follow the law that Congress enacted.

*Briseño v. Henderson*, 998 F.3d 1014, 1026–1027 (9th Cir. 2021) (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)).  Accordingly, this analysis primarily tracks the factors listed in Federal Rule 23(e)(2) while also heeding the requirement to scrutinize post-certification settlements for

---

[1] The factors include: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."  *Bluetooth* 654 F.3d at 946.

potentially unfair collusion, as outlined in *Bluetooth* and affirmed in *Henderson*. *See Henderson*, 998 F.3d at 1025 (holding that "courts must apply *Bluetooth's* heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate'" under Rule 23(e)(2)(C)).

The approval process takes place in two stages. During preliminary approval, the court conducts a cursory fairness analysis, as some of the factors cannot be fully assessed before the final fairness hearing. *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2023 WL 3296155, at *5 (S.D. Cal. May 5, 2023) (citing *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)). "To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).

## IV    DISCUSSION

### A.  The Certified Class

A court may certify a settlement class if all the prerequisites of Rule 23(a) are met and at least one of the Rule 23(b) requirements has also been met. *See* Fed. R. Civ. P. 23. On December 23, 2022, the Court found Plaintiffs had met the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). (*See* Dkt. No. 259.) Accordingly, the Court certified the following class under Rule 23(c)(1)(C):

> All persons or entities within the United States who between March 13, 2018, and June 16, 2019, received a non-emergency telephone call promoting goods and services on behalf of PillPack, LLC as part of the PillPack Performance Media campaign:
>> i.  to a cellular telephone number through the use of an artificial or prerecorded voice; and

1

2

     ii.   Performance Media or its agents live transferred the call to a PillPack call center on the DNIS 866-298-0058; and

    iii.   Performance Media or its agents did not obtain the cellular telephone number through Rewardzoneusa.com, Nationalconsumercenter.com, finddreamjobs.com, instantplaysweepstakes.com, startacareertoday.com, samplesandsavings.com, sweepstakesaday.com, Surveyvoices.com, or Financedoneright.com between June 19, 2017, and May 3, 2019, before the date(s) of the call(s).

3

4

5

(Dkt. No. 259 at 21–22.)

6

7

8

9

        Since the Court has already certified the class, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted."  Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.  Plaintiff has not requested that the Court make any changes to the certified class.  (*See generally* Dkt. No. 340.)  However, in the Settlement Agreement, the Parties have added a fourth part to the class definition, which states:

10

11

12

     iv.   The Settlement Class does not include Defendant, any entity that has a controlling interest in Defendant, and Defendant's current or former directors, officers, counsel, and their immediate families. The Settlement Class also does not include any person who validly requests exclusion from the Settlement Class, or Melvin Tyson, who validly requested exclusion from the certified class.

13

14

15

16

 (Dkt. No. 341-1 at 4–5.)

17

18

19

20

21

22

23

        The Court finds that the proposed settlement class is materially identical to the class that was certified, as the Court did not contemplate that the class it certified would include Defendant or persons who validly requested exclusion from the class.  (*See* Dkt. No. 259.)  Accordingly, the Court need not revisit its previous Rule 23 analysis or conduct a new analysis and may proceed with the preliminary settlement approval inquiry.  *See Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2021 WL 4924849 at *3 (N.D. Cal. Oct. 21, 2021) (granting preliminary approval of settlement class when a small change did "not alter the reasoning underlaying the

24

1   Court's prior Order granting class certification"); *Salazar v. Driver Provider Phoenix LLC,* No.

2   CV-19-05760-PHX-SMB, 2024 WL 2923718, at *3 (D. Ariz. June 10, 2024) (granting

3   preliminary approval of settlement class upon finding that "[t]he new proposed class definition is

4   more specific regarding the employees covered by the settlement agreement . . . . [but]

5   [c]rucially, it does not change the class members in any material way."); *Youth Just. Coalitions*

6   *v. City of Los Angeles,* No. 216CV07932VAPRAOX, 2020 WL 9312377, at *2 (C.D. Cal. Nov.

7   17, 2020) (granting preliminary approval of settlement class where the proposed change to the

8   class "merely s[ought] to clarify" persons included in the previously certified class and did not

9   "alter the reasoning underlying [the court's] earlier decision to grant class certification.").

10          Thus, the court grants preliminary approval of the settlement class.

11   **B.  Preliminary Approval of the Settlement**

12          1.  The Fairness Factors

13                  a.  Adequate representation

14          Pursuant to Rule 23(e)(2)(A), the Court must evaluate whether "the class representatives

15   and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  In its

16   previous order on class certification, the Court concluded that "Plaintiff and Plaintiff's counsel

17   [were] adequate representatives of the proposed class" under Rule 23(a)(4).  (Dkt. No. 259 at

18   19.)  Because Rules 23(e)(3)(A) and 23(a)(4) mandate a similar inquiry, the Court finds that

19   adequacy of representation will likely be met.

20                  b.  Arm's length negotiations

21          Rule 23(e)(2)(B) requires that the Court consider whether the settlement "proposal was

22   negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Plaintiff asserts that it was.  (Dkt. 340

23   at 12.)  "Where the proposed settlement is preceded by a lengthy period of adversarial litigation

24

1   involving substantial discovery, a court is likely to conclude that settlement negotiations

2   occurred at arms-length." *Victorino,* 2023 WL 3296155, at *5 (quoting Newberg & Rubenstein

3   on Class Actions § 13:14 (2022)).  Courts have also found that the involvement of a neutral

4   mediator in settlement negotiations reduces the risk of collusion.  *See id.*; *see also Bluetooth,* 654

5   F.3d at 948 (the presence of a neutral mediator is a factor that weighs in favor of finding non-

6   collusiveness).

7           Counsel jointly affirms that, over the more than five years of litigation, the Parties

8   "engaged in comprehensive formal discovery, including written discovery, depositions, and

9   third-party discovery, after which they mediated their dispute with an experienced and respected

10  mediator." (Dkt. No. 341-1 at 2.)  Plaintiff further specifies that during the discovery process,

11  "[t]he parties and third parties [] produced more than 20,000 pages of documents," took "fifteen

12  depositions," and both "produced multiple expert reports."  (Dkt. No. 341-1 at 6.)  The case was

13  then litigated vigorously in this Court.  As Plaintiff summarizes, "the [P]arties litigated class

14  certification multiple times" (*see* Dkt. No. 140), "litigated over the adequacy of Williams'

15  proposed notice plan" (*see* Dkt. No. 279), and Defendant twice moved for summary judgement

16  on vicarious liability (*see* Dkt Nos. 126, 258).  The Parties subsequently participated in a full-day

17  mediation with an experienced mediator that did not conclude in resolution.  (Dkt. No. 341 at 6.)

18  However, "the mediator's work with the [P]arties after mediation resulted in the settlement in

19  principle" and ultimately, the Parties "finalized the terms of the agreement through arms' length

20  negotiations."  (*Id.*)

21          The lengthy adversarial litigation period, significant discovery, and involvement of an

22  experienced and neutral mediator supports a preliminary finding that the settlement negotiations

23

24

occurred at arm's length.  The matter of collusiveness is taken up further in the discussion of proposed attorney's fees, *infra*.

c.    Adequacy of relief provided to the class

Rule 23(e)(2)(C) requires the Court to determine "whether the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[2]  Fed. R. Civ. P. 23(e)(2)(C).  In conducting this analysis, the Court keeps in mind that "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).

The instruction to weigh the costs, risks, and delay of trial and appeal dovetails with the traditional inquiry into "the strength of the plaintiff's case [and] the risk, expense, complexity, and likely duration of further litigation" made by courts in this circuit.  *Bluetooth*, 654 F.3d at 947.  Plaintiff attests that the settlement is "more than adequate" considering "[t]he estimated payments to claimants of $600-$1200 far exceed similar settlements approved by other courts." (Dkt. No. 340 at 14.)  To support this argument, Plaintiff cites to numerous TCPA class actions in which the approved settlement amounts ranged from approximately $40 to $100 per claimant. (*Id.*)  Considering that claim rates in TCPA class action cases tends to be "extremely low," the

---

[2] Rule 23(e)(3) requires litigants seeking settlement approval to "file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  Because the Parties have not done so, the requirement to take any such agreement into account is not relevant to the instant case.

1    Court agrees that future claimants appear well positioned to receive more than $600 in relief, a

2    sum that falls in the high end of the range for TCPA cases.  *Cabiness v. Educ. Fin. Sols*., LLC,

3    No. 16-CV-01109-JST, 2018 WL 3108991, at *8 (N.D. Cal. 2018) (citing TCPA class action

4    cases from the Northern District of California in which only 1.9% and 1.44% of class members

5    filed a claim.)

6         Although Plaintiff is "confident in the strength of his case," he recognizes the inherent

7    risk in continuing litigation, including through an appeal.  (*Id*.)  Defendant would continue to

8    vigorously challenge vicarious liability, and as Plaintiff notes, "[p]roving vicarious liability can

9    be challenging in TCPA cases."  (*Id*. at 15.)  The risk of new adverse TCPA caselaw further

10   increases the uncertainty of securing a favorable outcome.  (*Id*.)  Moreover, litigating the case to

11   trial and through appeal would be costly and time consuming, substantially delaying any

12   recovery for the class.  *See, e.g.*, *Schaffer v. Litton Loan Servicing, LP,* 2012 WL 10274679, *11

13   (C.D. Cal. 2012) ("Estimates of what constitutes a fair settlement figure are tempered by factors

14   such as the risk of losing at trial, the expense of litigating the case, and the expected delay in

15   recovery (often measured in years).").  Given that the settlement would provide the class with

16   rapid and meaningful recovery, this sub-factor supports a preliminary conclusion that the relief

17   provided to the class is adequate.

18        Turning briefly to an examination of the "proposed method of distributing relief," the

19   Court determines that it will likely find the proposed methodology sound and effective.  Fed. R.

20   Civ. P. 23(e)(2)(C)(iii).  The Administrator will review each claim form submitted within 28

21   days of the deadline of submitting the form.  (Dkt. No. 341-1 at 11.)  The Administrator will then

22   distribute the awards "via the distribution method selected by each Eligible Claimant."  (*Id*.)

23   Checks issued to claimants will remain eligible for 180 days and that limitation will be printed

24

on the face of the check.  (*Id.*)  Any suspicion of fraud will be forwarded to the Parties' counsel, who will have the opportunity to investigate any potentially fraudulent claim.  (*Id.*)

Finally, "courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members" under Rule 23(e)(2)(C)(iii).  *Henderson*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)).  In doing so, courts must be mindful of the fact that "[e]ven after a court has certified a class, class counsel still has the incentive to conspire with the defendant to reduce compensation for class members in exchange for a larger fee."  *Id.* at 1025.  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947.  Such signs include: 1) "when counsel receive a disproportionate distribution of the settlement"; 2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and 3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."  *Id.*  Courts must also evaluate any incentive payments (often called "service awards") to named plaintiffs to ensure that they are not excessive and thus unfair.  *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

The Ninth Circuit has set a "benchmark award" of 25% of the settlement fund as a reasonable fee in cases where attorney's fees are sought under the common fund theory.  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large."  *Id.*  Here, Class Counsel seeks an attorney's fee of $2,166,450, or 33.33% of the

settlement fund.  (Dkt. No. 340 at 16.)  Although this figure is greater than the benchmark, Class

Counsel emphasize that it is less than their lodestar fees.  (*Id*. at 9.)  However, "the lodestar

amount alone cannot tell us if the requested fees are reasonable."  *Henderson*, 988 F. 3d at 1026.

Plaintiff cites to cases in which courts in this district have approved attorney's fees of one third

of the settlement fund, suggesting that the award is reasonable.  (Dkt. No. 34-0 at 16.)  For the

purposes of preliminarily evaluating collusive behavior, the Court finds that one-third is not

clearly "a disproportionate distribution."  *Bluetooth*, 654 F.3d at 947.  The Court will reserve

judgment on the final award sum until after Class Counsel files its "comprehensive motion for an

award of attorneys' fees." (Dkt. No. 340 at 17.)  Class Counsel is advised that, in considering the

settlement award, the Court will heed the Ninth Circuit's instruction that a departure from the

25% benchmark is justified only under "special circumstances."  *Six (6) Mexican Workers*, 904

F.2d at 1311.

As the two other *Bluetooth* factors are not present—there is neither a clear sailing

provision nor arrangement for fees to revert to defendants in the Settlement Agreement—the

Court determines that it is likely to find the terms of the proposed attorney's fees award non-

collusive.  (*See generally* Dkt. No. 341-1.)

To assess whether an incentive payment to a named plaintiff is excessive, district courts

balance "the number of named plaintiffs receiving incentive payments, the proportion of the

payments relative to the settlement amount, and the size of each payment."  *Stanton*, 372 F.3d at

977.  The Ninth Circuit has placed particular emphasis on evaluating the proportion of the total

settlement fund represented by service awards.  *In re Online DVD-Rental Antitrust Litig*., 779

F.3d 934, 947 (9th Cir. 2015).  Here, Williams requests a service award of $20,000, which is

.31% of the total settlement fund.  (Dkt. No. 340 at 9.)  The award is approximately twenty times

as much as the individual class members will receive, depending on how many class members

submit a claim.  Considering the five years of active litigation Plaintiff pursued before this court,

the Court anticipates that it will conclude the service award is not excessive.  *See In re Online*

*DVD-Rental* 779 F.3d at 947–947 (approving incentive awards that were 417 times larger than

the individual award and made up .17% of the total settlement fund.)

d.  Equitable treatment of class members

Rule 23(e)(2)(D) mandates an inquiry into whether the proposed settlement "treats class

members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Here, "[e]ach Settlement

Class Member who submits a valid claim will receive the same Claimant Award."  (Dkt. No. 340

at 15) (citing Dkt. No. 341-1 at 11).  Because the proposed settlement treats all class members

the same, the Court will likely find that this factor supports settlement approval.

2.  Class Notice

a.  Legal standard

Pursuant to Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class

members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Class members

are entitled to "the best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.

23(c)(2)(B).  The notice must "clearly and concisely state in plain, easily understood language:

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or

defenses; (iv) that a class member may enter an appearance through an attorney if the member so

desires; (v) that the court will exclude from the class any member who requests exclusion; (vi)

the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

members under Rule 23(c)(3)."  *Id*.  Additionally, under Rule 23(h), class members must be

provided with a full and fair opportunity to contest class counsel's fee motion "itself." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994, 995 (9th Cir. 2010) ("[I]t is the obligation of the district court to ensure that the class has an adequate opportunity to review and object to its counsel's fee motion.").

      b.  Class notice plan

The Settlement Administrator will create the list of persons to receive notice via email or mail. (Dkt. No. 341-1 at 7.) In doing so, the Administrator will "use PillPack's user profile information, responses to wireless carrier subpoenas previously issued by Plaintiff, and standard industry practices to locate contact information for these persons where necessary, including but not limited to reverse lookups." (*Id.*) Where at least one email address is available for a Class Member, the Administrator will provide notice via email. (*Id.*) If the email is returned as undeliverable, the Administrator will re-send it to the next available email address, or, if there is no alternative address, provide the class member with postcard notice. (*Id.*)

Any class member that does not have an email address available will receive postcard notice. The Administrator will "run the last known postal addresses of the Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS" before sending postcard notice by USPS. (*Id.* at 8.) The postcard will include a tear off claim form and will direct claimants to the settlement website. (*Id.*) The Administrator will "re-mail any Postcard Notice returned by the USPS with updated address information, and shall be obliged to run returned postcard notices without updated address information through a skip tracing process before re–mailing." (*Id.*) The Administrator will send two reminders—via postcard or email notice—to class members who do not file a claim. (*Id.*) The first reminder will be sent 30 calendar days before the claim

1    submission deadline, the second will be sent 14 days before the deadline.  (*Id.*)  All reminder

2    notices will include a unique claim code associate with the recipient. (*Id.*)

3          In addition to direct email or postcard notice, the Settlement Agreement provides that the

4    Administrator will maintain a website and toll-free number for class members seeking

5    information.  (*Id.*)  The Administrator will "update the existing class notice website at

6    https://pillpacktcpaclassaction.com by posting a downloadable copy of the Long Form

7    Settlement Notice and Claim Form" in PDF format.  (*Id.*)  The website will also include a claim

8    form that users can access after entering their telephone number or unique claim code.  (*Id.*)  The

9    legal documents from this case—including the complaint, motion for preliminary approval, and

10   forthcoming motions for attorneys' fees and service awards—will also be posted on the website.

11   (*Id.*)  The postcard and email notices will contain prominent links to the website, which will

12   remain active for 180 days after the distribution date.  (*Id.*)  The telephone line will be

13   maintained through the date of final approval.  (*Id.*)  The Administrator will also run an online

14   advertising campaign targeted to class members that will direct views to the website.  (*Id.*)

15          The proposed notice documents are written in easily understandable language.  (Dkt. No.

16   341-1 at 22–35.)  The email and postcard notice ("short form notice") informs recipients that

17   they have been identified as potential class members and describes the instant lawsuit and

18   settlement agreement.  (*Id.* at 33).  It further instructs potential claimants that they have a right to

19   complete a claim form and share in the settlement proceeds as well as a right to ask to be

20   excluded from the settlement and/or object to or comment on the settlement.  (*Id.* at 34.)  The

21   short form notice states Defendant denies wrongdoing and has asserted "many defenses it

22   believes would be successful at trial."  (*Id.* at 33.)  It also provides an abbreviated definition of

23   the certified class and directs recipients to navigate to the settlement website for more

24

information.  (*Id*. at 34.)  The long form notice posted on the website is laid out in detailed

question-and-answer format and includes a full definition of the class.  (*Id*. at 25.)  It also

includes information about the procedures for asking to be excluded from the lawsuit and

explains that potential claimants may ask a lawyer to appear in Court on their behalf.  (*Id*. at 29.)

The binding effect of class judgement is further described in the long form notice.  (*Id*. at 26.)

      The Court finds that the manner of proposed notice satisfies the standard under Rule

23(c)(2)(B) and the content of the short and long-form notices meets the requirements outlined in

Rule 23(c)(3).  *See Gooding v. Vita-Mix Corp*., No. 216CV03898ODWJEMX, 2018 WL 571881

at *5 (C.D. Cal. 2018) ("The Ninth Circuit has approved . . . . notice via a combination of short-

form and long-form settlement notices") (citing *In re Online DVD–Rental Antitrust Litig*., 779

F.3d 934, 946 (9th Cir. 2015)); *Spann v. J.C. Penney Corp*, 314 F.R.D. 312, 331 (C.D. Cal.

2016) (approving email and postcard notice that directed class members to a long-form notice);

*Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1204 (C.D. Cal. 2014) (same);

*Victorino*, 2023 WL 3296155, at *3 (same).

      Class counsel must include language in the settlement notice that enables class members

to object to the motion for attorney's fees.  *In re Mercury*, 618 F.3d at 993–994.  Here, the

settlement agreement confirms that "any motion for attorneys' fees, costs, and expenses and

Service Awards" will be made available on the website.  (Dkt. No. 341-1 at 7.)  The long form

notice on the website instructs potential class members that they may comment on or object to

"Class Counsel's request for attorneys' fees and litigation expenses, and/or the request for

service awards."  (*Id*. at 30.)  However, the short form email and postcard notice does not make it

clear that class members are entitled to object to the fee motion itself; it merely states that class

members may "object to the settlement."  (Dkt. No. 341-1 at 24).  Thus, the notice as currently

1   drafted does not adequately inform or prepare class members to object to the motion for

2   attorney's fees in accordance with Rule 23(h).  *See In re Mercury*, 618 F.3d at 993–994;

3   *Morrison v. Am. Nat'l Red Cross*, No. 19-CV-02855-HSG, 2020 WL 4284831, at *10 (N.D. Cal.

4   July 27, 2020); *Izor v. Abacus Data Sys., Inc.*, No. 19-CV-01057-HSG, 2020 WL 5074040, at *9

5   (N.D. Cal. Aug. 24, 2020).

6          Accordingly, class counsel shall include the following information in the short form

7   (email and postcard) notice as well as on class counsel's website: 1) language indicating that

8   class members are entitled to object to the attorneys' fees motion and the request for Plaintiff's

9   incentive award; 2) a statement indicating the deadline for filing these motions; 3) a statement

10  that the motions and supporting materials will be available on class counsel's website at least 30

11  days before the deadline to object.  With this change, the content of the proposed notice will

12  provide sufficient information in accordance with Rule 23(h).  *See In re Mercury*, 618 F.3d at

13  993–994.

14

15                                **E.  CONCLUSION**

16         For the reasons set forth above, the court GRANTS Plaintiffs' unopposed motion for

17  preliminary approval of class action settlement and hereby order that:

18         1.       The class for settlement purposes is defined as follows:

19         All persons or entities within the United States who between March 13, 2018, and June
           16, 2019, received a non-emergency telephone call promoting goods and services on
20         behalf of PillPack LLC as part of the PillPack Performance Media Campaign:
           (i) to a cellular telephone number through the use of an artificial or prerecorded voice;
21         and (ii) Performance Media or its agents live transferred the call to a PillPack call center
           on the DNIS 866-298-0058; and (iii) Performance Media or its agents did not obtain the
22         cellular telephone number through Rewardzoneusa.com, Nationalconsumercenter.com,
           finddreamjobs.com, instantplaysweepstakes.com, startacareertoday.com,
23         samplesandsavings.com, sweepstakesaday.com, Surveyvoices.com, or
           Financedoneright.com between June 19, 2017, and May 3, 2019, before the date(s) of the
24

ORDER ON PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 19

1   call(s); and (iv) the Settlement Class does not include Defendant, any entity that has a
2   controlling interest in Defendant, and Defendant's current or former directors, officers,
    counsel, and their immediate families. The Settlement Class also does not include any
3   person who validly requests exclusion from the Settlement Class, or Melvin Tyson, who
    validly requested exclusion from the certified class.

4        2.     The Settlement Agreement entered between the Parties (Dkt. No. 341-1),

5   appears, upon preliminary review, to be fair, reasonable, and adequate. Accordingly, for

6   settlement purposes only, the proposed settlement is preliminarily approved, pending a Final

7   Approval Hearing, as provided for herein.

8        3.     If the Settlement Agreement is not finally approved, is not upheld on appeal, or

9   is otherwise terminated for any reason before Final Approval, then the Settlement Agreement

10  and all negotiations, proceedings, and documents prepared, and statements made in connection

11  therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an

12  admission or confession by any Party of any fact, matter, or proposition of law; and all Parties

13  shall stand in the same procedural position as if the Settlement Agreement had not been

14  negotiated, made, or filed with the Court.

15       4.     The Court appoints Epiq Systems as the Settlement Administrator.

16       5.     The Court will hold a Final Approval Hearing pursuant to Fed. R. Civ. P. 23(e)

17  on March 6, 2025 at the United States District Court for the Western District of Washington,

18  Courtroom 1717 Pacific Avenue, Suite 4410, Tacoma, Washington 98402 at 11:00 a.m. for the

19  following purposes:

20       (a)    To determine whether the proposed settlement is fair, reasonable, and
                adequate and should be granted final approval by the Court;
21
22       (b)    To determine whether a final judgment should be entered dismissing the
                claims of the Settlement Class with prejudice, as required by the
23              Settlement Agreement; and

24

ORDER ON PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 20

1          (c)     To consider the application of Class Counsel for an award of attorney's

2                 fees, costs, and expenses, and for a service award to the Class
                 Representative.

3       The parties are further DIRECTED to implement the proposed class notice plan with the

4 edits identified above.

5       6.     As is provided in Section 2.03 of the Settlement Agreement, Defendant shall

6 provide the Settlement Class Member Data to the Settlement Administrator, who shall send the

7 agreed upon Notices to the Settlement Class Members in accordance with the notice plan set

8 forth in the Settlement Agreement, as modified in accordance with the Court's order.  The Court

9 approves the Parties' Notices, which are attached to the Settlement Agreement, on the condition

10 of these changes being made.

11       7.     The Court finds this manner of giving notice satisfies the requirements of Fed. R.

12 Civ. P. 23, constitutes the best notice practicable under the circumstances, including its use of

13 individual notice to all Settlement Class Members who can be identified with the available data

14 and reasonable effort, and shall constitute due and sufficient notice to all persons entitled

15 thereto.

16       8.     If a class member chooses to opt out of the Settlement Class, such class member

17 is required to submit a Request for Exclusion to the Settlement Administrator, postmarked on or

18 before the date specified in the Notice, which shall be ninety (90) calendar days from the date of

19 this Order is entered (the "Opt Out & Objections Deadline"). The Request for Exclusion must

20 include the items identified in the Settlement Agreement pertaining to such requests. Each

21 written request for exclusion must be signed by the individual seeking exclusion, submitted by

22 the Settlement Class Member, and may only request exclusion for that one individual. No

23 person within the Settlement Class, or any person acting on behalf of or in concert or

24

ORDER ON PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 21

1    participation with that person, may submit a Request for Exclusion on behalf of any other

2    person within the Settlement Class. "Mass" or "class" exclusion requests shall not be permitted.

3          A class member who submits a valid and timely Request for Exclusion using the

4    procedure identified above shall be excluded from the Settlement Class for any and all purposes.

5    No later than twenty-eight (28) days after the Opt Out & Objections Deadline, the Settlement

6    Administrator shall prepare a declaration listing all of the valid opt-outs received and shall

7    provide the declaration and list to Class Counsel and Defendant's counsel, with Class Counsel

8    then reporting the names appearing on this list to the Court before the Final Approval Hearing.

9          9.     A Settlement Class Member who does not file a timely Request for Exclusion, or

10   otherwise does not follow the procedure described in the Settlement Agreement, shall be bound

11   by all subsequent proceedings, orders, and judgments in this action pertaining to the Settlement

12   Class.

13         10.    Any Settlement Class Member who wishes to be heard orally at the Final

14   Approval Hearing, and/or who wishes for any objection to be considered, must submit a written

15   notice of Objection to the Settlement Administrator postmarked no later than 30 days after Class

16   Counsel files its motion for attorneys' fees and request for Plaintiff's service award with the

17   Court or by the "Opt Out & Objections Deadline," whichever is later.

18         As set forth in the Settlement Agreement, the Objection must include the following: (1)

19   the Settlement Class Member's full name, address, and current telephone number; (2) if the

20   individual is represented by counsel, the name and telephone number of counsel, whether

21   counsel intends to submit a request for fees, and all factual and legal support for that request; (3)

22   all objections and the basis for any such objections stated with specificity, including a statement

23   as to whether the objection applies only to the objector, to a specific subset of the class, or to the

24

entire class; (4) the identity of any witnesses the objector may call to testify; (5) a listing of all exhibits the objector intends to introduce into evidence at the Final Approval Hearing, as well as true and correct of copies of such exhibits; and (6) a statement of whether the objector intends to appear at the Final Approval Hearing, either with or without counsel.

Any Settlement Class Member who fails to timely file and serve a written Objection pursuant to the terms of Settlement Agreement shall not be permitted to object to the approval of the settlement or the Settlement Agreement and shall be foreclosed from seeking any review of the settlement or the terms of the Settlement Agreement by appeal or other means. Any Settlement Class Member who files an Objection is subject to having their deposition taken prior to the Final Approval Hearing. A Settlement Class Member may withdraw an Objection by communicating such withdrawal in writing to Class Counsel.

11.    The Court approves the claims procedures set forth in the Settlement Agreement. A valid Claim Form, as defined in the Settlement Agreement, must be submitted as required in the Class Notice online or postmarked no later than ninety (90) calendar days after the date of this order.

12.    All briefs, memoranda, petitions, and affidavits to be filed in support of an individual award to the Class Representative and in support of Class Counsel's application for fees, costs and expenses, shall be filed with the Court no later than thirty (30) days prior to the Opt Out & Objections Deadline.

13.    Any other briefs, memoranda, petitions, or affidavits that Class Counsel intends to file in support of final approval shall be filed not later than thirty (30) days after the Opt Out & Objections Deadline. Notwithstanding the foregoing, Class Counsel may submit declarations

1  from the Settlement Administrator regarding any updates in information regarding notice,

2  claims, and opt-outs no later than fourteen (14) days prior to the Final Approval Hearing.

3       14.     Neither this Preliminary Approval Order, nor the Settlement Agreement, shall be

4  construed or used as an admission or concession by or against Defendant or any of the Released

5  Parties of any fault, omission, liability, or wrongdoing, or the validity of any of the Released

6  Claims. This Preliminary Approval Order is not a finding of the validity or invalidity of any

7  claims in this lawsuit or a determination of any wrongdoing by Defendant or any of the

8  Released Parties. The preliminary approval of the Settlement Agreement does not constitute any

9  opinion, position, or determination of this Court, one way or the other, as to the merits of the

10  claims and defenses of Plaintiff, the Settlement Class Members, or Defendant.

11       15.     The Court retains exclusive jurisdiction over this action to consider all further

12  matters arising out of or connected with the Settlement Agreement. All proceedings before the

13  Court are stayed pending final approval of the settlement, except as may be necessary to

14  implement the settlement or comply with the terms of the Agreement. Pending final

15  determination of whether the settlement should be approved, the Class Representative, all

16  Settlement Class Members, and any person or entity allegedly acting on behalf of Settlement

17  Class Members, either directly, representatively or in any other capacity, are preliminarily

18  enjoined from commencing or prosecuting against the Released Parties any action or proceeding

19  in any court or tribunal asserting any of the Released Claims, provided, however, that this

20  injunction shall not apply to individual claims of any Settlement Class Members who timely

21  exclude themselves in a manner that complies with this Order. This injunction is necessary to

22  protect and effectuate the settlement, this Order, and the Court's flexibility and authority to

23  effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the

24

Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a). The Court reserves the right to adjourn or continue the date of the Fairness Hearing without further notice to Settlement Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the settlement. The Court may approve or modify the settlement without further notice to Settlement Class Members.

16.    Counsel are hereby authorized to take all reasonable steps in connection with approval and administration of the Settlement not materially inconsistent with this Order or the Agreement.

Dated this 17th day of September, 2024.

David G. Estudillo
United States District Judge

ORDER ON PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 25