THE HONORABLE DAVID G. ESTUDILLO

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7

AARON WILLIAMS, on behalf of himself and all
others similarly situated,

8

Case No. 3:19-cv-05282-DGE

9
                              Plaintiff,

**PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF SETTLEMENT**

10
        vs.

**NOTED FOR CONSIDERATION WITH
ARGUMENT:**
APRIL 18, 2025 AT 9:00 A.M.

11

12
PILLPACK LLC,

13
                              Defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No. 3:19-cv-05282-DGE

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 2

    A.    After preliminary approval, the Settlement Administrator fully
        implemented the notice plan .................................................................. 3

    B.    The claims rate is unusually high for a consumer class action ............................. 3

    C.    Other key settlement terms ........................................................................ 4

        1.    Claimant Awards ........................................................................ 4

        2.    Administration Costs .................................................................. 5

        3.    Attorneys' Fees, Costs, and Service Award ................................. 5

        4.    Release ...................................................................................... 5

III.    ARGUMENT ................................................................................................... 6

    A.    Williams and Class Counsel have adequately represented the Class .................... 7

    B.    The Settlement was negotiated at arm's length .................................................. 8

    C.    The Settlement is an excellent outcome for the Class ........................................ 8

        1.    The relief provided by the Settlement is adequate taking into
            account the risks of continued litigation .................................... 9

        2.    The Class Members' reaction to the Settlement has been
            extremely positive and the Settlement Fund will be effectively
            distributed to claimants ............................................................ 10

        3.    The proposed attorneys' fee is calculated as a percentage of
            the Settlement fund. There are no subtle signs of collusion .................. 12

    D.    The Settlement treats class members the same ................................................. 12

IV.    CONCLUSION ................................................................................................ 13

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*Abante Rooter and Plumbing, Inc., et al v. Alarm.com, Inc.,*
5
        No. 4:15-cv-06314-YGR, (N.D. Cal. Aug. 15, 2019)........................................................ 8

6

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
7
        No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012)............................................... 8

8

*Churchill Village, L.L.C. v. Gen. Elec.,*
        361 F.3d 566 (9th Cir. 2004) ........................................................................................... 7
9

10

*Desai v. ADT Sec. Servs., Inc.,*
        Case No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) ......................................................... 9

11

12

*Estrada v. iYogi, Inc.,*
        2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ................................................................... 9

13

14

*Ikuseghan v. Multicare Health Sys.,*
        No. 3:14-cv-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ..................... 8

15

16

*In re Bluetooth Headset Prod. Liab. Litig.,*
        654 F.3d 935 (9th Cir. 2011) ....................................................................................... 6, 7

17

18

*In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One),*
        80 F. Supp.3d 781 (N.D. Ill. 2015) ................................................................................. 9

19

20

*In re Hyundai and Kia Fuel Econ. Litig.,*
        926 F.3d 539 (9th Cir. 2019) ........................................................................................ 12

21

*In re Syncor ERISA Litig.,*
        516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 6
22

23

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
        895 F.3d 597 (9th Cir. 2018) .......................................................................................... 7

24

25

*Jones v. Royal Admin. Servs., Inc.,*
        887 F.3d 443 (9th Cir. 2018) .......................................................................................... 9

26

27

*Krakauer v. DISH Network,*
        925 F.3d 643(4th Cir. 2019) ........................................................................................ 10

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Kramer v. Autobytel, Inc., et al.,*
    No. 10-cv-2722 (N.D. Cal. 2012) .................................................................. 9

*Kristensen v. Credit Payment Servs. Inc.,*
    879 F.3d 1010 (9th Cir. 2018) ...................................................................... 9

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ........................................................................ 7

*Ortiz v. Fiberboard Corp.,*
    527 U.S. 815 (1999) ...................................................................................... 8

*Randall v. Integrated Comm. Serv., Inc.,*
    2023 WL 5743133 (W.D. Wash. Sept. 6, 2023) ............................................ 8

*Rinky Dinky v. Elec. Merchant Sys.,*
    No. C13-1347-JCC (W.D. Wash. Apr. 19, 2016) ........................................... 9

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ........................................................................ 6

*Rose v. Bank of Am. Corp.,*
    2014 WL 4273358 (N.D. Cal., 2014) ............................................................. 9

*Steinfeld v. Discover Fin. Servs.,*
    No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ................................................... 8

*Wakefield v. ViSalus, Inc.,*
    51 F.4th 1109 (9th Cir. 2022) ...................................................................... 10

**FEDERAL RULES**

Fed. R. Civ. P. 23(e) ............................................................................................. 6

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 6

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................... 12

**OTHER AUTHORITIES**

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*
    (Sept. 2019) ................................................................................................. 10

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1
2

*Preliminary Report on Class-Action Distributions in the Northern District of California* ...................................................................................... 10, 11

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# I.    INTRODUCTION

Plaintiff Aaron Williams moves for final approval of a proposed class settlement with Defendant PillPack LLC. The settlement requires PillPack to pay $6,500,000 to establish a non-reversionary Settlement Fund.[1] The fund will be used to make payments to Class Members who submit valid claims and to pay Court-approved administration costs, attorneys' fees and costs, and a service award to the Class Representative.

The Settlement Administrator has executed the Notice program approved by the Court and it has been remarkably successful. There have been 18,246 claims filed to date, a claims rate of over 60%. The Settlement Administrator has validated 10,768 of those claims, which represents a valid claims rate of 35.57%. There are an additional 122 claims that were submitted late but are otherwise valid. Class Counsel recommends that the Court approve the otherwise valid late submitted claims. The Settlement Administrator sent deficiency letters to 7,356 claimants whose timely claims have some deficiency. Williams will provide a more complete report on the notice program and responses to the deficiency letters in a supplemental submission on April 4. If only the already validated and late but otherwise valid claims submitted to date were accepted, each claimant will receive a payment of approximately $355. If all the deficient claims were cured and validated, each claimant would receive approximately $212. If 30% of the deficiencies are cured, each claimant would receive approximately $295. No class members opted out of the settlement and no class members objected to the settlement.

The settlement is an excellent result for Class Members, and consideration of the applicable factors confirms that it is fair, adequate, and reasonable. Williams requests that the Court grant final approval of the Settlement by: (1) approving the Settlement Agreement; (2) determining that adequate notice was provided to the Settlement Class; (3) granting Class

---

[1] Unless otherwise noted, all capitalized terms have the definitions set forth in the Settlement Agreement and Release attached as Exhibit 1 to the Declaration of Blythe H. Chandler filed in support of this motion ("Chandler Decl.").

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 1
Case No. 3:19-cv-05282-DGE

1  Counsel $2,166,450 in attorneys' fees and $338,016 in costs; (4) approving a $20,000 service

2  payment to Williams; and (5) approving administration costs of $100,914.

3                              II.       BACKGROUND

4          The procedural history of this case, which has been litigated for more than five years, is

5  detailed in the Court's order on preliminary approval (Dkt. No. 342), Plaintiff's motion for

6  preliminary approval (Dkt. No. 340), and Plaintiff's motion for an award of attorneys' fees and

7  costs (Dkt. No. 348 at 1-3). In short, before the parties settled, both sides aggressively litigated

8  the case, including producing and reviewing tens of thousands of pages of documents, taking

9  fifteen depositions, expert work, and multiple rounds of briefing on summary judgment, class

10  certification, and discovery issues.

11         The Settlement Class is defined the same way as the class the Court certified for

12  litigation:

13         All persons or entities within the United States who between March 13, 2018, and
14         June 16, 2019, received a non-emergency telephone call promoting goods and
           services on behalf of PillPack LLC as part of the PillPack Performance Media
15         Campaign: (i) to a cellular telephone number through the use of an artificial or
           prerecorded voice; and (ii) Performance Media or its agents live transferred the
16         call to a PillPack call center on the DNIS 866-298-0058; and (iii) Performance Media
           or its agents did not obtain the cellular telephone number through
17         Rewardzoneusa.com, Nationalconsumercenter.com, finddreamjobs.com,
18         instantplaysweepstakes.com, startacareertoday.com, samplesandsavings.com,
           sweepstakesaday.com, Surveyvoices.com, or Financedoneright.com between
19         June 19, 2017, and May 3, 2019, before the date(s) of the call(s).

20
           The Settlement Class does not include Defendant, any entity that has a controlling
21         interest in Defendant, and Defendant's current or former directors, officers,
           counsel, and their immediate families. The Settlement Class also does not include
22         any person who validly requests exclusion from the Settlement Class, or Melvin
23         Tyson, who validly requested exclusion from the certified class.

24  Dkt. No. 320.

25

26

27

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 2
Case No. 3:19-cv-05282-DGE

A.    **After preliminary approval, the Settlement Administrator fully implemented the notice plan.**

The Court granted Williams' motion for preliminary approval of the Settlement on September 17, 2024. Dkt. No. 342. The Settlement Administrator then executed the robust notice to the class members, including an initial notice and two reminder notices, provided for in the Settlement Agreement. Settlement Agreement ¶ 3.3. The Settlement Administrator's declaration on the notice program, including the reach of the notice, is due on March 27, 2025. Dkt. No. 345 at 5. Class Counsel will supplement this submission with additional detail about the notice program and its effectiveness based on that declaration, on April 4, 2025. Dkt. No. 354 at 4.

The settlement website went live by November 21, 2024. Chandler Decl. ¶ 3. On November 21, 2024, the administrator mailed 29,385 postcard notices with tear-off claim forms and sent 14,833 email notices. *Id.* ¶ 4. A month later, the Settlement Administrator sent 41,592 reminder postcard notices and 10,249 reminder email notices. Chandler Decl. ¶ 5. Two weeks after that, the Settlement Administrator sent 38,503 second reminder postcard notices and 9,291 second reminder email notices. *Id.* ¶ 6. The Settlement Administrator also ran an online banner advertising program. *Id.* ¶ 7. Settlement Class Members had until January 20, 2025, to submit claims, opt-out, or object to the settlement. No Settlement Class Members opted out or objected. *Id.* ¶ 8.

B.    **The claims rate is unusually high for a consumer class action.**

By the time of this filing, the Settlement Administrator had received 18,246 claims. Chandler Decl. ¶ 9. The Settlement Administrator has validated 10,768 of those claims, which represents a minimum valid claims rate of 35.57%. *Id.* ¶ 10. There are an additional 122 claims that were submitted late but are otherwise valid. *Id.* ¶ 11. The Settlement Administrator sent deficiency letters to 7,356 claimants whose timely claims have some deficiency. *Id.* ¶ 12. Williams' supplemental submission on April 4, *see* Dkt. No. 354 at 4, will provide more detail on responses to the deficiency letters.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1       If only the already validated and late but otherwise valid claims submitted to date were

2  accepted, each claimant will receive a payment of approximately $355. *Id.* ¶ 13. If all the

3  deficient claims were cured and validated, each claimant would receive approximately $212. *Id.*

4  ¶ 14. If 30% of the deficient claims are cured, each claimant would receive approximately $295

5  and the valid claims rate would be over 43%. *Id.*

6  **C.**    **Other key settlement terms.**

7       Under the Settlement Agreement, PillPack agrees to pay $6.5 million into a non-

8  reversionary Settlement Fund.[2] Dkt. No. 341-1 (Settlement Agreement) ¶ 1.21. The Settlement

9  Fund will be used to pay any attorneys' fees and costs, service award to Williams, and

10  settlement administration costs approved by the Court. The balance of the Settlement Fund

11  after those deductions are made will be paid to Settlement Class Members who submit valid

12  claims. Settlement Agreement ¶ 1.21.

13       1.    <u>Claimant Awards</u>

14       To receive a payment from the Settlement Fund, class members had to submit a Claim

15  Form either electronically through the Settlement Website or by mail. Settlement Agreement

16  ¶ 4.4. If attorneys' fees, costs, a service award, and administration costs are approved as

17  requested, the net fund available to pay claimants will be approximately $3,874,000. There are

18  30,269 telephone numbers on the class list. The Net Settlement Fund is sufficient to pay every

19  class member an award of $127.

20       Based on the number of valid claims submitted and the number of deficient claims that

21  may be cured, payments to Eligible Claimants will range between $212 and $355. This is an

22  outstanding result. Any unclaimed funds resulting from uncashed Claimant Awards will be paid

23  in cy pres to the Legal Foundation of Washington. Settlement Agreement ¶ 4.8.

24

25

26

27  [2] Capitalized terms in this motion have the same meaning as in the Settlement Agreement.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    2.    <u>Administration Costs</u>

2    Costs of administering the settlement, including the costs of sending notice, receiving

3 and processing claims, and maintaining a settlement website, will be paid from the Settlement

4 Fund. Settlement Agreement ¶ 1.21. The Settlement Administrator costs are $100,914.

5    3.    <u>Attorneys' Fees, Costs, and Service Award</u>

6    Class Counsel request an attorneys' fee award of $2,166,450, which is one third

7 (33.33%) of the Settlement Fund. Dkt. No. 348. Class Counsel request reimbursement of

8 $338,016 in litigation costs. Class Counsel's fee request is less than their lodestar fees for their

9 work on the case over five years. *Id.* Williams has requested a service award of $20,000. *Id.*

10    The requested fee award, costs, and service awards were included on the Notice sent to

11 class members. Class Counsel filed their motion seeking these amounts on November 21, 2024,

12 well over 30 days before the January 20, 2025, deadline for Settlement Class members to opt

13 out of or object to the Settlement. *Id.* Class Counsel's motion was posted to the settlement

14 website the day after it was filed. Chandler Decl. ¶ 3.

15    Neither PillPack nor any absent class member objected to Class Counsel's requested

16 attorneys' fee and cost award or to Williams' requested service award. Chandler Decl. ¶ 8.

17    4.    <u>Release</u>

18    The scope of the release is appropriately tailored to all claims arising out of the factual

19 predicate alleged in the complaint. The Released Claims are "any and all claims, rights (including

20 rights to restitution or reimbursement), demands, actions, causes of action, suits, liens,

21 damages, attorneys' fees, obligations, contracts, liabilities, agreements, costs, expenses or

22 losses of any nature, whether known or unknown, direct or indirect, matured or unmatured,

23 contingent or absolute, existing or potential, suspected or unsuspected, equitable or legal, and

24 whether under federal statutory law, federal common law or federal regulation, or the statutes,

25 constitutions, regulations, ordinances, common law, or any other law of any and all states or

26 their subdivisions, parishes or municipalities that arise out of or relate in any way to

27 prerecorded voice message calls placed as part of the PillPack Performance Media campaign

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 5
Case No. 3:19-cv-05282-DGE

1  (collectively, "Claims"), that have been, or could have been, brought in the Action, as well as

2  any Claims arising out of the same nucleus of operative facts as any of the claims asserted in

3  the Action." Settlement Agreement ¶ 1.13.

4  ### III.    ARGUMENT

5  Settlements are favored, particularly in the class action context. *In re Syncor ERISA Litig.*,

6  516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements,

7  particularly where complex class action litigation is concerned."). Courts recognize that a

8  settlement approval hearing should not "reach any ultimate conclusions on the contested

9  issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of

10  outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual

11  settlements." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009).

12  Proposed class action settlements are not effective unless approved by the Court. Fed.

13  R. Civ. P. 23(e). In approving a class action settlement, Rule 23 requires courts consider

14  whether: (A) the class representatives and class counsel have adequately represented the class;

15  (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

16  adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

17  effectiveness of any proposed method of distributing relief to the class, including the method of

18  processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

19  including timing of payment; and (iv) any agreement required to be identified under Rule

20  23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ.

21  P. 23(e)(2).

22  The Rule 23(e) factors are similar to those previously identified by the Ninth Circuit: (1)

23  the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of

24  further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

25  amount offered in settlement; (5) the extent of discovery completed and the stage of the

26  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

27  participant; and (8) the reaction of the class members of the proposed settlement. *In re*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  *Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Village,*

2  *L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)).

3      Despite this "lengthy but non-exhaustive list of factors that a district court may consider

4  when weighing a proposed settlement," "there are few, if any hard-and-fast rules about what

5  makes a settlement 'fair' or 'reasonable.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs.,*

6  *& Prod. Liab. Litig.*, 895 F. 3d 597, 610 (9th Cir. 2018). "The district court's task in reviewing

7  a settlement is to make sure it is 'not the product of fraud or overreaching by, or collusion

8  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

9  and adequate to all concerned.'" *Id.* at 617 (quoting *Officers for Justice v. Civil Service Comm'n*

10  *of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). "Deciding whether

11  a settlement is fair is ultimately 'an amalgam of delicate balancing, gross approximations and

12  rough justice,' best left to the district judge, who has or can develop a firsthand grasp of the

13  claims, the class, the evidence, and the course of the proceedings—the whole gestalt of the

14  case. Accordingly, 'the decision to approve or reject a settlement is committed to the sound

15  discretion of the trial judge.'" *Id.* at 611 (citations omitted). Consideration of the relevant

16  factors and "the whole gestalt of the case" confirms that the settlement is fair, reasonable, and

17  adequate.

18  **A.    Williams and Class Counsel have adequately represented the Class.**

19      Rule 23(e)(2)(A) requires the Court to consider whether the plaintiff and Class Counsel

20  have adequately represented the Class. Williams and his counsel have doggedly pursued this

21  case for more than five years, through class certification, decertification, certification of a

22  second class, and two defense motions for summary judgment. Williams and Class Counsel had

23  completed discovery, including expert discovery, before the case settled, and therefore had a

24  clear understanding of the strengths and weaknesses of the case when the Parties settled.

25      Moreover, the Court has already found both Williams and Class Counsel adequate to

26  represent the certified class. Dkt. No. 259 at 17-19.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    **B.    The Settlement was negotiated at arm's length.**

2        Rule 23(e)(2)(B) requires the court to consider whether the settlement was negotiated

3    at arm's length. "Arm's length negotiations conducted by competent counsel constitute *prima*

4    *facie* evidence of fair settlements." *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-05539-BHS,

5    2016 WL 3976569, *3 (W.D. Wash. July 25, 2016); *see also Randall v. Integrated Comm. Serv.,*

6    *Inc.*, 2023 WL 5743133 at *4 (W.D. Wash. Sept. 6, 2023) ("A proposed class settlement is

7    presumptively fair when reached after meaningful discovery, arm's length negotiation, and

8    conducted by capable, experienced counsel.  The involvement of an experienced mediator also

9    supports a finding of fairness."); *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may

10   take a settlement amount as good evidence of the maximum available if one can assume that

11   parties of equal knowledge and negotiating skill agreed upon the figure through arms-length

12   bargaining."). The parties negotiated at arm's length in a full-day mediation and follow-up

13   communications with Robert Meyer, an experienced mediator. Dkt. No. 341 ¶ 14.

14   **C.    The Settlement is an excellent outcome for the Class.**

15       The Settlement Fund of $6,500,000 is an excellent result for the Class. Once settlement

16   expenses, a service award, and attorneys' fees and costs are paid, the remainder of the

17   Settlement Fund—approximately $3,874,000—will be distributed to each Settlement Class

18   Member who submitted a valid claim form ("Eligible Claimant"). Class Counsel estimates that

19   each Eligible Claimant will receive between $212 and $350, depending on the number of

20   deficient claims that are ultimately corrected. Chandler Decl. ¶¶ 13-14.

21       The payment amounts Eligible Claimants will receive are significantly higher than in

22   numerous TCPA settlements. *See Abante Rooter and Plumbing, Inc., et al v. Alarm.com, Inc.*, No.

23   4:15-cv-06314-YGR, (N.D. Cal. Aug. 15, 2019) (claimants received $235 per phone number at

24   which they received calls); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6

25   (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt.,*

26   *Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received

27   $40); *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (approving TCPA

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 8
Case No. 3:19-cv-05282-DGE

1  settlement providing for a cash payment of $100 to each class member); *Estrada v. iYogi, Inc.,*

2  2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA

3  settlement where class members estimated to receive $40); *Rose v. Bank of Am. Corp.*, 2014 WL

4  4273358, at *10 (N.D. Cal., 2014) (approving TCPA settlement where claimants were estimated

5  to receive $20 to $40); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925, Dkt. No. 229 (N.D.

6  Ill. Feb. 14, 2013) (estimating payments between $50 and $100); *Rinky Dinky v. Elec. Merchant*

7  *Sys.*, No. C13-1347-JCC, Dkt. No. 151 (W.D. Wash. Apr. 19, 2016) ($97 payments); *In re Capital*

8  *One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015)

9  (approving settlement where each class member received $34.60 per claimant).

10       The large per Eligible Claimant payment is particularly notable when considered with

11  the unusually high claims rate in this case.

12       1.    <u>The relief provided by the Settlement is adequate taking into account the risks of</u>

13           <u>continued litigation.</u>

14       Williams is confident in the strength of his case but also pragmatic about the risks

15  inherent in litigation and PillPack's various defenses. Williams believes the evidence discussed

16  in his responses to PillPack's two motions for summary judgment (*see* Dkt. Nos. 130, 254)

17  presents a strong case for PillPack's vicarious liability for the prerecorded calls placed by

18  Performance Media or its agents. Williams believes that PillPack would not have prevailed on

19  its prior express written consent defense because neither PillPack nor the third-parties it

20  subpoenaed produced evidence that consumers agreed to receive calls from PillPack.

21       But success on these scores was certainly not guaranteed. Proving vicarious liability can

22  be challenging in TCPA cases. *See Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014-

23  15 (9th Cir. 2018) (affirming summary judgment where plaintiff failed to provide sufficient

24  evidence of vicarious liability); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 453 (9th Cir.

25  2018) (same). And PillPack intended to present evidence at trial of online opt-ins that it

26  contends conferred sufficient consent for Performance Media or its agents to place calls on

27  PillPack's behalf.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 9
Case No. 3:19-cv-05282-DGE

1    The certified class had additional hurdles to clear before any recovery. Williams and the

2  class would not only have to prevail at trial, but also retain any favorable judgment through

3  appeal. Litigating this case to trial and through any appeals would be expensive and time-

4  consuming and would present risk to both parties. There are two recent examples of TCPA

5  cases where a certified class prevailed at trial but the cases dragged on through lengthy

6  appeals. *See Krakauer v. DISH Network*, 925 F.3d 643(4th Cir. 2019) (affirming judgment for

7  Class); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) (vacating judgment on due

8  process grounds and remanding for further proceedings).

9    The high Claimant Award amounts compared to the risks faced supports approval under

10  Rule 23(e)(2)(C)(i).

11    2.    The Class Members' reaction to the Settlement has been extremely positive and

12        the Settlement Fund will be effectively distributed to claimants.

13    The Notice of the Settlement approved by the Court has been extremely effective. The

14  total number of claims received reflects a claims rate of 60%, and a minimum valid claims rate

15  of over 35%. That is an unusually high rate of claims for a consumer class action. It

16  demonstrates both that the notice was effective and that the Class Members support the

17  Settlement.

18    Two recent studies of class settlements reflect that the at least 35% valid claims rate is

19  high. In 2019, the Federal Trade Commission compiled a report on claims rates in consumer

20  class actions based on data about more than 100 cases. FTC Staff Report, *Consumers and Class*

21  *Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019).[3] The report found

22  that the median claims rate was 10% and that a claims rate of 34% put a case in the 90th

23  percentile. *Id.* at 21; *see also* Scott Dodson et al., *Preliminary Report on Class-Action*

24  *Distributions in the Northern District of California* at 8 (May 30, 2023)[4] (finding median

25

26  [3] *Available at* www.ftc.gov/system/files/documents/reports/consumers-class-actions-
retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

27  [4] Available at: https://works.bepress.com/scott_dodson/79/.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 10
Case No. 3:19-cv-05282-DGE

1  participation rate in class settlements requiring claims is 12%). The total claims rate of 60%—

2  and valid claims rate of at least 35%—is high and reflects Class Members enthusiastic support

3  for the settlement.

4          The method of processing the claims has also been efficient and fair. Settlement Class

5  Members could submit claims either online or using the tear-off claim form attached to their

6  postcard notices. The claim form required only that the Settlement Class Member enter a

7  cellular telephone number included in the call records for the case, and sign the form

8  confirming that they owned the number at the time of the violation calls. The more than 10,700

9  claims already validated reflects that this process was not difficult.

10         Class Counsel's staff took calls from 190 people with questions about the claims process.

11  Chandler Decl. ¶ 15. Class Counsel's staff assisted the heirs of deceased Settlement Class

12  Members in completing declarations that allowed them to file claims, helped claimants to

13  correct incomplete or incorrect claim forms, and mailed copies of the claim form to people who

14  requested them. *Id.*

15         Nonetheless, some submitted claim forms were deficient. Settlement Class Members

16  submitted 122 claims that are valid except that they were submitted late. Class Counsel

17  recommends that all otherwise valid late claims received on or before March 18, 2025, be

18  accepted. Class Counsel respectfully submit that Settlement Class Members who simply filed

19  their claim late should not be denied the benefits of the Settlement. Class Counsel requests

20  that the Court direct that any claims submitted after March 18, 2025, and any claims that were

21  late and contained other deficiencies, be denied as untimely.

22         The other deficiencies include claims where the claim form is unsigned, the number

23  submitted is not in the call records, or where multiple people claimed ownership of the same

24  phone number that is in the call records. Chandler Decl. ¶ 12. Claimants whose timely claims

25  were deficient were sent a deficiency letter explaining the problem with their claim and giving

26  the claimant an opportunity to cure the deficiency. *Id.*  Williams will report on the number of

27

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 11
Case No. 3:19-cv-05282-DGE

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  deficiencies cured in a supplemental report on April 4 and again shortly before the final

2  approval hearing.

3        Finally, the settlement fund will be distributed to Eligible Claimants fairly—every class

4  member who submits a valid claim or cures a deficient form will receive the same payment

5  amount. Rule 23(e)(2)(C)(ii) supports approval of the Settlement.

6        3.    <u>The proposed attorneys' fee is calculated as a percentage of the Settlement
7              fund. There are no subtle signs of collusion.</u>

8        The Ninth Circuit has identified "red flags" that may suggest plaintiff's counsel allowed

9  pursuit of their own self-interest to infect settlement negotiations, including when counsel

10  receive a disproportionate portion of the settlement, the parties agree to a "clear sailing"

11  arrangement providing for the payment of attorneys' fees separate and apart from class funds,

12  or the parties agree that any fees not awarded will revert to defendants rather than be added

13  to the class fund. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 569 (9th Cir. 2019). None

14  is present in this settlement. Because Class Counsel will be paid from the same Settlement Fund

15  as Settlement Class Members, they were incentivized to negotiate the largest fund possible.

16  Both PillPack and Settlement Class Members were free to object to Class Counsel's request, and

17  Class Counsel's motion for fees was available on the Settlement website throughout the claims,

18  opt-out, and objection period. Yet no objections were made. Class Counsel request a

19  reasonable fee, as explained in their motion (Dkt. No. 348). Rule 23(e)(2)(C)(iii) therefore favors

20  approval.

21        Finally, there are no separate agreements to be disclosed under Rule 23(e)(2)(C)(iv).

22  **D.    The Settlement treats class members the same.**

23        Rule 23(e)(2)(D) requires the Court to consider whether a proposed Settlement treats

24  class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Under the

25  Settlement, all members of the class certified by the Court had an opportunity to file a claim.

26  Each Settlement Class Member was entitled to file a single claim and every Eligible Claimant will

27  be paid the same amount. This factor is easily satisfied.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 12
Case No. 3:19-cv-05282-DGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**IV.    CONCLUSION**

For the foregoing reasons, Williams requests that the Court grant final approval of the Settlement, direct that all late but otherwise valid claims be accepted, and award his counsel $2,166,450 in attorneys' fees and $338,016 in litigation costs to paid from the Settlement, and direct that he receive a service award of $20,000 paid from the Settlement.

RESPECTFULLY SUBMITTED AND DATED this 18th day of March, 2025.

TERRELL MARSHALL LAW GROUP PLLC

*I certify that this memorandum contains 4,130 words, in compliance with the Local Civil Rules.*

By: */s/ Blythe H. Chandler*
    Beth E. Terrell, WSBA #26759
    Email: bterrell@terrellmarshall.com
    Jennifer Rust Murray, WSBA #36983
    Email: jmurray@terrellmarshall.com
    Adrienne D. McEntee, WSBA #34061
    Email: amcentee@terrellmarshall.com
    Blythe H. Chandler, WSBA #43387
    Email: bchandler@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603

    Walter M. Smith, WSBA #46695
    Email: walter@smithdietrich.com
    Steve E. Dietrich, WSBA #21897
    Email: steved@smithdietrich.com
    SMITH & DIETRICH LAW OFFICES PLLC
    1226 State Avenue N.E., Suite 205
    Olympia, Washington 98506
    Telephone: (360) 915-6952

    Anthony I. Paronich, *Admitted Pro Hac Vice*
    Email: anthony@paronichlaw.com
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, Massachusetts 02043
    Telephone: (617) 485-0018

    *Attorneys for Plaintiff and the Class*

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT - 13
Case No. 3:19-cv-05282-DGE

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com