UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AARON WILLIAMS,

                    Plaintiff,

      v.

PILLPACK LLC,

                 Defendant.

CASE NO. 3:19-cv-05282-DGE

ORDER ON MOTION FOR
ATTORNEY FEES (DKT. NO. 348)
AND MOTION FOR FINAL
APPROVAL OF SETTLEMENT
(DKT. NO. 355)

## I       INTRODUCTION

      This matter comes before the Court on Plaintiff's motions for attorney fees (Dkt. No. 348) and final approval of settlement (Dkt. No. 355). The Court previously granted preliminary approval to the settlement. (Dkt. No. 342.) For the foregoing reasons, the Court GRANTS plaintiffs' motions.

## II     BACKGROUND

The procedural and factual history of this case has been covered extensively in prior orders.  (*See* Dkt. Nos. 258, 259, 348.)  Accordingly, the Court only briefly summarizes the relevant background.

Plaintiff originally filed this suit on April 12, 2019.  (Dkt. No. 1.)  Defendant PillPack LLC is a full-service pharmacy that delivers medications in multi-dose packaging to patients' homes.  (Dkt. No. 62 at 1.)  In 2018, Defendant engaged Performance Media Strategies, Inc. ("Performance Media") to telemarket its services.  (Dkt. No. 63 at 1–2.)  Plaintiff alleged that on March 14 and April 10, 2019, he received calls from a telemarketer using a prerecorded voice message asking if he was interested in a pharmacy service that would ship medications directly to his house.  (Dkt. No. 6 at 1.)  When Plaintiff expressed interest, the call was transferred to a PillPack sales representative.  (*Id*. at 3.)  Plaintiff alleged the calls were made in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. ("TCPA").  (*See* Dkt. No. 6 at 7–8.)  Plaintiff sued PillPack personally and as the representative of a class of similarly situated persons.  (*Id*. at 5.)  He claimed PillPack was vicariously liable for the telemarketer's violations of the TCPA because PillPack knowingly or willfully caused the autodialed calls to be made to his cell phone despite his lack of consent.  (*Id*. at 3–4.)  Plaintiff sought statutory damages under the TCPA.  (*Id*. at 8.)

Plaintiff first moved for class certification on July 24, 2020.  (Dkt. No. 29.)  The Court certified a class of all consumers called as part of the Pillpack-Performance Media campaign. (Dkt. No. 140.)  As a result of new information gained through discovery, however, the Court decertified the class on November 3, 2021.  (Dkt. No. 220.)  On December 23, 2022, the Court granted Plaintiff's motion to recertify a narrower class of people who received the prerecorded

voice calls and were transferred to PillPack. (Dkt. No. 259.) Having already taken extensive discovery and litigated two summary judgement motions (Dkt. Nos. 126, 258), the Parties further litigated the adequacy of Plaintiff's proposed notice plan (Dkt. No. 279). A jury trial was set for September 3, 2024. (Dkt. No. 298.) On June 5, 2024, the Parties participated in a full-day mediation with Robert Meyer of JAMS. (Dkt. No. 340 at 7.) Although the Parties did not reach a settlement agreement, they continued to work with Meyer and ultimately reached a settlement in principle. (*Id*. at 7–8.) The Parties then informed the Court that they had reached a settlement agreement. (Dkt. No. 335.)

On August 8, 2024, Plaintiff filed an unopposed motion for preliminary approval of the settlement agreement, which creates a fund of $6,500,000 that will be used for court-approved attorney fees and costs, any service award to Williams, costs of settlement notice and settlement administration, and payments to class members who submit valid claims. (Dkt. No. 341-1 at 5; Dkt. No. 340.) The Court granted the motion and approved the proposed class notice plan with minimal changes. (Dkt. No. 348.) The settlement administrator then executed the notice program. There were 18,246 claims filed, of which 10,786 were validated. (Dkt. No. 356 at 2.) An additional 122 claims were submitted late but are otherwise valid. (*Id*.) An additional 7,356 claimants made timely claims that had some deficiency; the settlement administrator sent deficiency letters those claimants, providing them the opportunity to cure and validate the claims. (*Id*.) If attorney fees are approved as requested and only the already validated and late but otherwise valid claims submitted to date are accepted, Class Counsel estimate that each claimant will receive a payment of approximately $355. (*Id*.) If all the deficient claims are cured and validated, each claimant would receive approximately $212. (*Id*.) No class members opted out or objected to the settlement. (Dkt. No. 358 at 12.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## III     DISCUSSION

### A.  The Requested Attorney Fees Are Reasonable

1.  <u>Attorney Fees</u>

Plaintiff seeks approval for attorney fees in the amount of $2,166,450—one third of the settlement fund.  (Dkt. No. 348 at 7.)  The Court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Courts have discretion to choose between one of two methods for calculating a reasonable rate for a class action settlement like this: the lodestar method, or the percentage-of-recovery method.  *Id.* at 942.  The lodestar figure is calculated by "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *Id.* at 941.  Under the percentage of recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."  *Id.* at 942.

The "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Courts often consider a number of factors to determine whether the requested fee is reasonable, including: (1) the results achieved for the class; (2) the risk of continued litigation; (3) counsel's performance; (4) the contingent nature of the fee and financial burden carried by the plaintiff; and (5) awards in similar cases.  *Vizcaino*, 290 F.3d 1043, 1048–50, (9th Cir. 2002).  Courts may also cross check

1   the percentage of recovery with the lodestar.  *Id*. at 1050.  Ultimately, "[t]he touchstone for

2   determining the reasonableness of attorneys' fees in a class action is the benefit to the class."

3   *Lowery v. Rhapsody Int'l*, 75 F.4th 985, 988 (9th Cir. 2023).

4          Here, Class Counsel asserts that "[a]n upward adjustment from the 25% benchmark is

5   appropriate not only because of the exceptional result for the class, but also because the

6   requested award represents a negative multiplier of 0.72 on Class Counsel's lodestar of over

7   $2,991,553."  (Dkt. No. 348 at 7.)  They further note that Class Counsel "devoted five years to

8   litigating this case against a well-defended opponent, persisting in efforts to obtain discovery

9   from PillPack and numerous third parties, defeating two summary judgment motions, and

10  developing a strategy to restore certification of a class of consumers who were robocalled about

11  PillPack's services."  (*Id*.)

12         Class counsel anticipates that each eligible claimant will receive between $212 and $350,

13  depending on how many deficient claims are corrected.  (*Id*.)  The $212 to $350 range falls in the

14  middle to higher range of recovery for TCPA class action settlements.  *See Rose v. Bank of Am.*

15  *Corp*., No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014)

16  (identifying "$20 to $40" as the "lower range of recovery" in TCPA settlements); *Steinfeld v.*

17  *Discover Fin. Servs*., No. C 12-01118, Dkt. No. 96 (N.D. Cal. Mar. 10, 2014) (awards of

18  approximately $50 per claimant); *Thomas v. Dun & Bradstreet Credibility Corp.,* No.

19  CV1503194BROGJSX, 2017 WL 11633508, *2 (C.D. Cal. Mar. 22, 2017) (awards of

20  approximately $100 per claimant); *Rinky Dinky v. Elec. Merchant Sys*., No. C13-1347-JCC, Dkt.

21  No. 151 (W.D. Wash. Apr. 19, 2016) (awards of approximately $97 per claimant); *Grannan v.*

22  *Alliant L. Grp., P.C.,* No. C10-02803 HRL, 2012 WL 216522, *7 (N.D. Cal. Jan. 24, 2012)

23  ("each class member will be in the range of $300–325").  Additionally, no class member

24

1   objected to the settlement, including the attorney fee award, the terms of which were stated in the

2   notice. (Dkt. No. 358 at 12.)  Accordingly, the Court concludes that the settlement sum provides

3   the class members with meaningful recovery as compared to the awards achieved in similar

4   cases.  Moreover, there is inherent risk in continuing this litigation—including through a

5   potentially years-long appeal process.  *See, e.g., Schaffer v. Litton Loan Servicing, LP,* 2012 WL

6   10274679, *11 (C.D. Cal. 2012) ("Estimates of what constitutes a fair settlement figure are

7   tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the

8   expected delay in recovery (often measured in years).").

9          Next, the Court finds that Class Counsel litigated the case effectively, surviving multiple

10  summary judgement motions on vicarious liability and deftly negotiating a settlement agreement.

11  Class Counsel proved more than competent in the face of capable opposing counsel.  *Destefano*

12  *v. Zynga*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("The quality of opposing counsel

13  is also relevant to the quality and skill that class counsel provided.").  As Class counsel points

14  out, "they litigated this case on a contingency basis and risked recovering no fees."  (Dkt. No.

15  348 at 13.)

16         Finally, courts in this circuit have commented that "fee awards of approximately 33⅓%

17  are typical for settlements up to $10 million."  *Zamora v. Lyft*, 2018 WL 4657308, at *3 (N.D.

18  Cal. Sept. 26, 2018); *see also Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13 Civ.

19  04960, 2015 WL 12976106, at *4 (N.D. Cal Aug. 20, 2015) (33 1/3% fee, $10 million fund);

20  *Bennett v. SimplexGrinnell LP*, No. 11 Civ. 01854, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3,

21  2015) (38.8% fee, $4.9 million fund).  The lodestar multiplier of 0.72x strongly supports the fee

22  award.  For these reasons, the Court finds the requested attorney fees in the amount of

23  $2,166,450 reasonable.

24

1

  2.  <u>Incentive Award</u>

2

  "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*,

3 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards are designed "to compensate class

4 representatives for work done on behalf of the class, to make up for financial or reputational risk

5 undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a

6 private attorney general." *Id*. at 958–59. "Courts have discretion to approve service awards

7 based on the amount of time and effort spent, the duration of the litigation, and the personal

8 benefit (or lack thereof as a result of the litigation)." *Gutierrez*, 2023 WL 6370233, at *8. Here,

9 Williams requests a service award of $20,000, which is .31% of the total settlement fund. (Dkt.

10 No. 340 at 9.) Williams reports time spent responding to four sets of written discovery,

11 providing a declaration in support of the motion for class certification, preparing for deposition

12 and being deposed for over three hours, and addressing Defendant's request to inspect his

13 personal devices. (Dkt. No. 352 at 2.) He remained an active participant in the litigation for

14 over five years. Accordingly, based on Plaintiff's long-term involvement in the litigation, the

15 time spent in providing discovery, and the comparative size of the settlement, the Court

16 concludes that a class representative service award of $20,000 is reasonable.

17

  3.  <u>Litigation Cost Reimbursement</u>

18

  "The common fund doctrine provides that a private plaintiff, or his attorney, whose

19 efforts create, discover, increase or preserve a fund to which others also have a claim is entitled

20 to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes*

21 *Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115,

22 1121 (9th Cir. 2002). Put simply, in the Ninth Circuit, "the reasonable expenses of acquiring the

23 fund can be reimbursed to counsel who has incurred the expense." *In re High-Tech Emp.*

24

ORDER ON MOTION FOR ATTORNEY FEES (DKT. NO. 348) AND MOTION FOR FINAL APPROVAL OF
SETTLEMENT (DKT. NO. 355) - 7

*Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, *16 (N.D. Cal. Sept. 2, 2015).  The Court has reviewed the submissions of Class Counsel and finds that their requests for unreimbursed expenses are reasonable.  Class Counsel's declarations provide their litigation costs by category, including over $69,791 for expert work, $14,639.82 for cell phone carrier records, $12,500 for mediation fees, class notice costs of $142,110.12, and nearly $45,000 for depositions, totaling $338,016.  (*See* Dkt. Nos. 349 at 16, 350 at 5, 351 at 4.)  Accordingly, the Court will award Class Counsel $338,016.

For the reasons described above, the Court GRANTS the motion for attorney fees.

**B.  The Court Gives Final Approval to the Settlement**

1.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 23(e) establishes that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  "The purpose of the Rule is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  In determining whether to approve a settlement that would bind class members, a court must conclude "that it is fair, reasonable, and adequate" based on a consideration of the following four factors:

A.  the class representatives and class counsel have adequately represented the class;

B.  the proposal was negotiated at arm's length;

C.  the relief provided for the class is adequate, taking into account:

i.  the costs, risks, and delay of trial and appeal;

ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii.  the terms of any proposed award of attorney's fees, including timing of payment; and

   iv.  any agreement required to be identified under Rule 23(e)(3); and

  D. the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

  Before the 2018 amendments to the Federal Rules of Civil Procedure, Rule 23(e)(2) did not include the four factors set out *supra* to guide courts in determining whether a settlement was "fair, reasonable, and adequate." Accordingly, district courts looked to eight fairness factors, often called the *Stanton* factors, developed in Ninth Circuit precedent.[1] *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In amending the Rules, the Advisory Committee stated that it did not intend to "displace any factor [developed in circuit law], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. However, the Ninth Circuit has made it clear that courts must carefully attend to every step of analysis mandated by Rule 23(e)(2)(A–D), as the requirements of the amended rule go "beyond" the judicially created *Stanton* factors:

> [M]any of the *Stanton* factors fall within the ambit of the revised Rule 23(e). But Congress provided district courts with new instructions — such as analyzing the 'terms of the settlement' and 'terms of any proposed award of attorney's fees' — that require them to go beyond our precedent. Although we need not decide whether a district court always abuses its discretion by applying the judicially manufactured factors . . . we must follow the law that Congress enacted.

---

[1] The factors include: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Bluetooth* 654 F.3d at 946.

*Briseño v. Henderson*, 998 F.3d 1014, 1026–1027 (9th Cir. 2021) (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)).  Accordingly, this analysis primarily tracks the factors listed in Federal Rule 23(e)(2) while also heeding the requirement to scrutinize post-certification settlements for potentially unfair collusion, as outlined in *Bluetooth* and affirmed in *Henderson*.  *See Henderson*, 998 F.3d at 1025 (holding that "courts must apply *Bluetooth's* heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate'" under Rule 23(e)(2)(C)).

Despite the "lengthy but non-exhaustive list of factors that a district court may consider when weighing a proposed settlement," "there are few, if any hard-and-fast rules about what makes a settlement 'fair' or 'reasonable.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig*., 895 F. 3d 597, 610 (9th Cir. 2018).  Thus, the "decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting *Offs. for Just. v. Civ. Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982)).

   2.  <u>Analysis</u>

The approval process takes place in two stages.  During preliminary approval, the Court conducts a cursory fairness analysis, as some of the factors cannot be fully assessed before the final fairness hearing.  *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2023 WL 3296155, at *5 (S.D. Cal. May 5, 2023) (citing *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008)).  At the first stage, this Court granted preliminary approval of the settlement class and found that Plaintiff and Plaintiff's counsel were adequate representatives of the class. (Dkt. No. 342 at 9.)  It further concluded that "[t]he lengthy adversarial litigation period, significant discovery, and involvement of an experienced and neutral mediator supports a preliminary

finding that the settlement negotiations occurred at arm's length." (*Id*. at 8, 10–11.)  It also

determined it would likely find the terms of the proposed attorney fees award non-collusive, the

service award not excessive, and the treatment of class members equitable.  (*Id*. at 14–15.)

The Court briefly revisits the four fairness factors here.  First, it affirms its prior finding

that "the class representatives and class counsel have adequately represented the class."  Fed. R.

Civ. P. 23(e)(2)(A).  (See Dkt. Nos. 259 at 19; 342 at 9.)  It also concludes that the settlement

was negotiated at arm's length for the reasons discussed in the prior order.  (*See* Dkt. No. 342 at

9–10.)

Next, Rule 23(e)(2)(C) requires the Court to determine "whether the relief provided for

the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  In conducting this analysis, the Court keeps in mind that

"[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery does not per se render the settlement inadequate or unfair."  *Officers for Just. v. Civ.

Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982).  The

instruction to weigh the costs, risks, and delay of trial and appeal dovetails with the traditional

inquiry into "the strength of the plaintiff's case [and] the risk, expense, complexity, and likely

duration of further litigation" made by courts in this circuit.  *Bluetooth*, 654 F.3d at 947.

Plaintiff asserts that "[t]he Settlement Fund of $6,500,000 is an excellent result for the

Class" as "[o]nce settlement expenses, a service award, and attorneys' fees and costs are paid,

the remainder of the Settlement Fund—approximately $3,874,000—will be distributed to each

1    Settlement Class Member who submitted a valid claim form." (Dkt. No. 355 at 13.)  Class

2    counsel anticipates that each eligible claimant will receive between $212 and $350, depending on

3    how many deficient claims are corrected.  (*Id*.)  As noted *supra*, the $212 to $350 range falls in

4    the middle to higher range of recovery for TCPA class action settlements.  For the reasons

5    described above, the Court agrees that the settlement sum provides the class members with

6    meaningful recovery.

7        Additionally, Plaintiff recognizes the inherent risk in continuing litigation, including

8    through an appeal.  (Dkt. No. 348 at 12.)  Defendant would continue to vigorously challenge

9    vicarious liability, and as Plaintiff notes, "[p]roving vicarious liability can be challenging in

10   TCPA cases." (*Id*.)  Moreover, litigating the case to trial and through appeal would be costly and

11   time consuming, substantially delaying any recovery for the class.  *See, e.g.*, *Schaffer v. Litton*

12   *Loan Servicing, LP,* 2012 WL 10274679, *11 (C.D. Cal. 2012) ("Estimates of what constitutes a

13   fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of

14   litigating the case, and the expected delay in recovery (often measured in years).").  Accordingly,

15   the Court finds that the claimant award sum compared to the risks faced supports approval under

16   Rule 23(e)(2)(C)(i).

17       Plaintiff asserts that the notice of settlement has been "extremely effective"—noting that

18   the total number of claims rate of 60% and minimum valid claims rate of over 35% represents

19   "an unusually high rate of claims for a consumer class action." (Dkt. No. 355 at 25.)  Plaintiff

20   also suggests the validation of 10,700 claims supports a finding that the method of processing

21   class-member claims has been more than adequate.  (*Id*. at 16.)  The Court agrees; this sub factor

22   supports settlement approval under Rule 23(e)(2)(C)(ii).

23

24

1    Finally, the "[C]ourt[] must balance the 'proposed award of attorney's fees' vis-à-vis the

2    'relief provided for the class' in determining whether the settlement is 'adequate' for class

3    members" under Rule 23(e)(2)(C)(iii).  *Henderson*, 998 F.3d at 1024 (quoting Fed. R. Civ. P.

4    23(e)).  In doing so, courts must be mindful of the fact that "[e]ven after a court has certified a

5    class, class counsel still has the incentive to conspire with the defendant to reduce compensation

6    for class members in exchange for a larger fee."  *Id.* at 1025.  Courts "must be particularly

7    vigilant not only for explicit collusion, but also for more subtle signs that class counsel have

8    allowed pursuit of their own self-interests and that of certain class members to infect the

9    negotiations."  *Bluetooth*, 654 F.3d at 947.  Such signs include: 1) "when counsel receive a

10   disproportionate distribution of the settlement"; 2) "when the parties negotiate a 'clear sailing'

11   arrangement providing for the payment of attorneys' fees separate and apart from class funds";

12   and 3) "when the parties arrange for fees not awarded to revert to defendants rather than be

13   added to the class fund."  *Id.*  Courts must also evaluate any incentive payments (often called

14   "service awards") to named plaintiffs to ensure that they are not excessive and thus unfair.

15   *Staton v. Boeing, Co*., 327 F.3d 938, 977 (9th Cir. 2003).

16   For the reasons discussed *supra* Section III.A, the Court concludes that the award of

17   $2,166,450 is reasonable and does not weigh against approval under Rule 23(e)(2)(C)(iii).  As

18   the two other *Bluetooth* factors are not present—there is neither a clear sailing provision nor

19   arrangement for fees to revert to defendants in the Settlement Agreement—the Court concludes

20   that the terms of the proposed attorney fee award are non-collusive.

21   To assess whether an incentive payment to a named plaintiff is excessive, district courts

22   balance "the number of named plaintiffs receiving incentive payments, the proportion of the

23   payments relative to the settlement amount, and the size of each payment."  *Stanton*, 372 F.3d at

24

977.  The Ninth Circuit has placed particular emphasis on evaluating the proportion of the total

settlement fund represented by service awards.  *In re Online DVD-Rental Antitrust Litig.*, 779

F.3d 934, 947 (9th Cir. 2015).  Here, Williams requests a service award of $20,000, which is

.31% of the total settlement fund.  (Dkt. No. 340 at 9.)  The award is approximately sixty-five

times as much as the individual class members will receive.  Additionally, the service award to

the class representative was disclosed in the notice terms, and there were no objections.

Considering Williams' long-term involvement in the litigation and the time spent in responding

to discovery, and preparing for and responding to depositions, the Court concludes that the award

is not excessive. (*See* Dkt. No. 352 at 2.)

The Court therefore GRANTS the motion (Dkt. No. 355) for final settlement approval.

## IV     CONCLUSION

Accordingly, IT IS SO ORDERED that:

1.     This action is a class action against Defendant on behalf a class of persons defined

as follows (the "Settlement Class"): All persons or entities within the United States who between

March 13, 2018, and June 16, 2019, received a non-emergency telephone call promoting goods

and services on behalf of PillPack LLC as part of the PillPack Performance Media Campaign: (i)

to a cellular telephone number through the use of an artificial or prerecorded voice; and (ii)

Performance Media or its agents live transferred the call to a PillPack call center on the DNIS

866-298-0058; and (iii) Performance Media or its agents did not obtain the cellular telephone

number through Rewardzoneusa.com, Nationalconsumercenter.com, finddreamjobs.com,

instantplaysweepstakes.com, startacareertoday.com, samplesandsavings.com,

sweepstakesaday.com, Surveyvoices.com, or Financedoneright.com between June 19, 2017, and

May 3, 2019, before the date(s) of the call(s). The Settlement Class does not include Defendant,

any entity that has a controlling interest in Defendant, and Defendant's current or former

directors, officers, counsel, and their immediate families. The Settlement Class also does not

include any person who validly requests exclusion from the Settlement Class, or Melvin Tyson, who validly requested exclusion from the certified class. (*See* Dkt. No. 320).

2.      The Court finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) as set forth in its earlier order certifying the class. (*See* Dkt. No. 259.)

3.      The Settlement Agreement submitted by the parties for the Settlement Class is finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable, and adequate and in the best interests of the Settlement Class. The Settlement Agreement shall be deemed incorporated herein and shall be consummated in accordance with the terms and provisions thereof, except as amended or clarified by any subsequent order issued by this Court.

4.      As agreed by the parties in the Settlement Agreement, upon Final Approval, the relevant parties shall be released and discharged in accordance with the Settlement Agreement.

5.      By operation of this Final Judgment, the Plaintiff and PillPack expressly waive, and each Settlement Class Member is deemed to have waived, any and all claims, rights, or benefits they may have under California Civil Code § 1542 and any similar federal or state law, right, rule, or legal principle that may apply. California Civil Code § 1542 provides as follows:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

6.      As agreed by the parties in the Settlement Agreement, upon Final Approval, Representative Plaintiff, all Settlement Class Members, and any person or entity allegedly acting on behalf of Settlement Class Members, either directly, representatively or in any other capacity, are permanently enjoined from commencing or prosecuting against the Released Parties any action or proceeding in any court or tribunal asserting any of the Released Claims, provided, however, that this injunction shall not apply to individual claims of any Settlement Class Members who timely requested exclusion from the Settlement Class. This is necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and

to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. § 1651(a).

7. The Court approves acceptance of the late, but otherwise valid claims submitted by Settlement Class Members on or before March 18, 2025. No other late claims will be accepted.

8. The Court directs the Settlement Administrator and the Parties to ensure that all deficient claims that are corrected so that they comply with the requirements of the Settlement Agreement be accepted and paid. Deficient claims that were not corrected as required under the Settlement Agreement on or before April 11, 2025, are denied.

9. Upon consideration of Class Counsel's application for fees and costs and other expenses, the Court awards $2,166,450 as reasonable attorney fees and $338,016 as reimbursement for reasonable out-of-pocket expenses, which shall be paid from the Settlement Fund. (*See* discussion *supra* Section III).

10. Upon consideration of the application for approval of a service award, Class Representative Aaron Williams is awarded the sum of $20,000 to be paid from the Settlement Fund, for the service he has performed for and on behalf of the Settlement Class.

11. The Court authorizes Class Counsel and defense counsel to authorize payment to the Settlement Administrator from the Settlement Fund as set forth in the Settlement Agreement.

12. There are no objections to the Settlement and no Settlement Class Members have requested exclusion from the Settlement.

13. Neither this Final Judgment and Order, nor the Settlement Agreement, shall be construed or used as an admission or concession by or against Defendant or any of the Released parties of any fault, omission, liability, or wrongdoing, or the validity of any of the Released Claims. This Final Judgment and Order is not a finding of the validity or invalidity of any claims in this lawsuit. The final approval of the Settlement Agreement does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of the Class Representative, Settlement Class Members, or Defendant. This Final Judgment and the Agreement do not constitute a concession and shall not be used as an admission

or indication of any wrongdoing, fault, or omission by Defendant or any other person in connection with any transaction, event or occurrence, and neither this Final Judgment nor the Agreement nor any related documents in this proceeding, nor any reports or accounts thereof, shall be offered or received in evidence in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to consummate or enforce this Final Judgment, the Agreement, and all releases given thereunder, or to establish the affirmative defenses of *res judicata* or collateral estoppel barring the pursuit of claims released in the Agreement.

14.     This action is HEREBY DISMISSED on the merits, in its entirety, with prejudice and without costs except as provided elsewhere in this order, including without limitation all Released Claims of Settlement Class Members against the Released Parties.

15.     The Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay, and directs the Clerk to enter final judgment.

16.     Melvin Tyson validly excluded themself from the Class and is thus excluded from the terms of this Order.

Dated this 18th day of April, 2025.



David G. Estudillo
United States District Judge